THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION OF THE PLAN MAY NOT BE SOLICITED UNTIL THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN AND THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THE DEBTOR MAY AMEND, SUPPLEMENT, OR OTHERWISE MODIFY THIS DISCLOSURE STATEMENT PRIOR TO THE DISCLOSURE STATEMENT HEARING.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x
                   :
In re:                   :     Chapter 11
                   :
AIG FINANCIAL PRODUCTS CORP.,[1]  :     Case No. 22-11309 (_____)
                   :
                   :
       Debtor.         :
                   :
----------------------------------------------------------- x

## DISCLOSURE STATEMENT FOR THE PLAN OF REORGANIZATION FOR
## AIG FINANCIAL PRODUCTS CORP. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Shane M. Reil (No. 6195)
Catherine C. Lyons (No. 6854)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**LATHAM & WATKINS LLP**
George A. Davis (*pro hac vice* admission pending)
Keith A. Simon (*pro hac vice* admission pending)
David Hammerman (*pro hac vice* admission pending)
Annemarie V. Reilly (*pro hac vice* admission pending)
Madeleine C. Parish (*pro hac vice* admission pending)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Proposed Co-Counsel for Debtor and Debtor-in-Possession*

Dated: December 14, 2022

---

[1]   The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number, is: AIG Financial Products Corp. (9410). The Debtor's address is 50 Danbury Road, Wilton, Connecticut 06897.

# TABLE OF CONTENTS

I.    EXECUTIVE SUMMARY ..................................................................................................9

      A.    Purpose and Effect of the Plan.................................................................................10

      B.    Solicitation Procedures ...........................................................................................11

      C.    Voting Procedures....................................................................................................15

      D.    Confirmation of the Plan.........................................................................................17

      E.    Consummation of the Plan.......................................................................................19

      F.    Risk Factors .............................................................................................................19

      G.    363 Sale Alternative.................................................................................................19

II.   BACKGROUND TO THE CHAPTER 11 CASE....................................................................20

III.  EVENTS DURING THE CHAPTER 11 CASE ...................................................................22

      A.    First Day Motions and Certain Related Relief.........................................................22

      B.    Second Day Motions and Certain Related Relief .....................................................22

      C.    Filing of the Schedules.............................................................................................23

IV.   SUMMARY OF THE PLAN ...............................................................................................24

      A.    Administrative and Priority Tax Claims ..................................................................24

      B.    Classification and Treatment of Claims and Interests Under the Plan .....................26

      C.    Acceptance or Rejection of the Plan........................................................................30

      D.    Exit Facility Credit Agreement ...............................................................................31

      E.    Global Settlement.....................................................................................................31

      F.    Treatment of Executory Contracts and Unexpired Leases .......................................32

      G.    Conditions Precedent to Confirmation and Consummation of the Plan....................37

      H.    Release, Discharge, Injunction And Related Provisions ..........................................38

V.    CONFIRMATION AND CONSUMMATION PROCEDURES................................................45

      A.    Confirmation objection Procedures .........................................................................45

      B.    Statutory Requirements for Confirmation of the Plan ..............................................45

      C.    Consummation of the Plan........................................................................................52

VI.   PLAN-RELATED RISK FACTORS ...................................................................................53

      A.    Certain Bankruptcy Law Considerations .................................................................53

B.      Risk Factors That May Affect the Value of the Reorganized Debtor Under the Plan and/or Recoveries Under the Plan ........................................................56

C.      Risk Factors that Could Negatively Impact the Debtor And Reorganized Debtor ....................................................................................................57

D.      Risks Associated with Forward-Looking Statements ...................................58

E.      Disclaimers ...................................................................................................59

**VII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN.............................................................................................................61**

A.      363 Sale Alternative....................................................................................61

B.      Liquidation Under Chapter 7 of the Bankruptcy Code ................................61

C.      Filing of an Alternative Plan of Reorganization .........................................62

**VIII. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.............................................................................................................62**

A.      Introduction.................................................................................................62

B.      U.S. Federal Income Tax Consequences to the Debtor ...............................63

C.      U.S. Federal Income Tax Consequences to Holders of Class 7 Claims ......64

**RECOMMENDATION ............................................................................................66**

## <u>EXHIBITS</u>

EXHIBIT A     Plan of Reorganization

EXHIBIT B     Financial Projections

EXHIBIT C     Liquidation Analysis

THE DEBTOR HEREBY ADOPTS AND INCORPORATES EACH EXHIBIT ATTACHED
TO THIS DISCLOSURE STATEMENT BY REFERENCE AS THOUGH FULLY SET
FORTH HEREIN.

**THE VOTING DEADLINE IS 5:00 P.M. PREVAILING EASTERN TIME ON [FEBRUARY 22], 2023**

**(UNLESS THE DEBTOR EXTENDS THE VOTING DEADLINE).**

**TO BE COUNTED AS A VOTE TO ACCEPT OR REJECT THE PLAN, THE VOTING AND CLAIMS AGENT MUST <u>ACTUALLY</u> <u>RECEIVE</u> YOUR BALLOT ON OR BEFORE THE VOTING DEADLINE AS SET FORTH IN THE DISCLOSURE STATEMENT ORDER.**

| IMPORTANT INFORMATION FOR YOU TO READ |
|---|

THE DEBTOR IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTOR URGES EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IT IS THE DEBTOR'S POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER. RATHER, THIS DISCLOSURE STATEMENT SHALL CONSTITUTE A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THIS DISCLOSURE STATEMENT. THE DEBTOR OR THE REORGANIZED DEBTOR MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THIS DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTOR'S CHAPTER 11 CASE, AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY CONFLICT, INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN AND CONTROL FOR ALL PURPOSES. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR'S MANAGEMENT. THE DEBTOR DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE DEBTOR'S MANAGEMENT HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THE DEBTOR HAS USED ITS REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED (UNLESS EXPRESSLY PROVIDED HEREIN).

THE DEBTOR IS GENERALLY MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF WHERE FEASIBLE, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTOR MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTOR HAS NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THIS DISCLOSURE STATEMENT WAS FILED. THE DEBTOR HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF ITS PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

**HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTOR AND THEIR OWN ANALYSES OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. IMPORTANTLY, PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD REVIEW THE PLAN IN ITS ENTIRETY AND CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN SECTION VI HEREIN, "PLAN-RELATED RISK FACTORS."**

# I.
## EXECUTIVE SUMMARY

AIG Financial Products Corp., as debtor and debtor-in-possession ("**AIG FP**" or the "**Debtor**"), submits this Disclosure Statement pursuant to section 1125 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended from time to time, the "**Bankruptcy Code**") in connection with the solicitation of votes on the *Plan of Reorganization for AIG Financial Products Corp. Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, the "**Plan**"),[2] which was filed by the Debtor with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") on December 14, 2022.  A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") is scheduled to commence at [●] prevailing Eastern Time on [March 1] 2023 before the Bankruptcy Court.  A copy of the Plan is attached hereto as <u>Exhibit A</u>.

Prior to soliciting votes on a proposed plan of reorganization, section 1125 of the Bankruptcy Code requires debtors to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance or rejection of the plan of reorganization.  As such, this Disclosure Statement is being submitted in accordance with the requirements of section 1125 of the Bankruptcy Code.

On [●], 2023, the Bankruptcy Court entered the [●] (the  "**Disclosure Statement Order**") which, among other things, (a) approved the dates, procedures and forms applicable to the process of soliciting votes on and providing notice of the Plan, as well as certain vote tabulation procedures and (b) established the deadline for filing objections to the Plan and scheduling the hearing to consider confirmation of the Plan.

This Executive Summary is being provided as an overview of the material items addressed in this Disclosure Statement and the Plan, which is qualified by reference to the entire Disclosure Statement and by the actual terms of the Plan (and including all exhibits attached hereto and to the Plan), and should not be relied upon for a comprehensive discussion of this Disclosure Statement and/or the Plan.  This Disclosure Statement includes, without limitation, information about:

- the Debtor's prepetition financial history;[3]

- the events leading up to the commencement of the above-captioned chapter 11 case (the "**Chapter 11 Case**");

- the significant events that the Debtor anticipates will occur during the Chapter 11 Case;

---

[2]  All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan. To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the Plan are inconsistent, the definition included in the Plan shall control and govern.

[3]  Additional details regarding the Debtor and the Chapter 11 Case can be found in the *Declaration of William C. Kosturos, Chief Restructuring Officer of the Debtor, in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), filed concurrently herewith.

- the solicitation procedures for voting on the Plan;

- the Confirmation process and the voting procedures that Holders of Claims who are entitled to vote on the Plan must follow for their votes to be counted;

- certain terms and provisions of the Plan, including certain effects of confirmation of the Plan, certain risk factors relating to the Debtor or the Reorganized Debtor, the Plan and the manner in which distributions will be made under the Plan; and

- the proposed reorganization of the Reorganized Debtor if the Plan is confirmed and becomes effective.

## A. PURPOSE AND EFFECT OF THE PLAN

### 1. Plan of Reorganization Under Chapter 11 of the Bankruptcy Code

The Debtor is reorganizing pursuant to chapter 11 of the Bankruptcy Code, which is the principal business reorganization chapter of the Bankruptcy Code. As a result, the confirmation of the Plan means that the Reorganized Debtor will continue to operate going forward and conduct an orderly wind down of its business. Additionally, as discussed in greater detail in Article X.H of the Plan, titled "Binding Nature of Plan," a bankruptcy court's confirmation of a plan binds debtors, any entity acquiring property under the plan, any holder of a claim or equity interest in a debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code to the terms and conditions of the confirmed plan, whether or not such entity voted on the particular plan or affirmatively voted to reject the plan.

### 2. Financial Restructurings Under the Plan

As of the date hereof, American International Group, Inc. (the "**Parent**" or **AIG Inc.**") is the Holder of (a) the Prepetition Revolving Loan Claim in the Allowed amount of $37.4 billion and (b) 100% of the Existing AIG FP Interests. The Plan provides for the full satisfaction, settlement, discharge, and release of the Parent's Prepetition Revolving Loan Claim in exchange for the Parent's retention of its Existing AIG FP Interests. Under the Plan, the Parent will not retain any Existing AIG FP Interests or receive any other distribution on account of its Allowed Existing AIG FP Interests.

As of the date hereof, the Prepetition Revolving Loan Claim is an unsecured Claim against the Debtor and, therefore, ranks *pari passu* with the General Unsecured Claims and Intercompany Claims against the Debtor. The Prepetition Revolving Loan Claim is, however, senior to the Subordinated Claims against the Debtor because such Subordinated Claims are expressly subordinated and junior to all other obligations of the Debtor under the terms of the DCP Plans.

US-DOCS\135657088

With respect to the Subordinated Claims, the Plan provides as follows:

- If and only if Class 7 (Subordinated Claims) votes to accept the Plan, each DCP Claimant will receive, on or as soon as reasonably practicable after the Effective Date, in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim, an equal share of the Class 7 Cash Pool, based on the number of Holders in Class 7, after payment therefrom of any taxes due with respect to the Class 7 Cash Pool (including, but not limited to, any employer taxes paid or payable by the Debtor or any affiliate of the Debtor with respect to distributions of the Class 7 Cash Pool, as determined by the Debtor), which equals $1,000,000 in the aggregate.

- If any only if Class 7 (Subordinated Claims) votes to reject the Plan, to the extent Confirmation and Consummation of the Plan occurs, each DCP Claimant will not receive any distribution nor retain any property on account of its Class 7 Claim and, on the Effective Date, the Class 7 Claims will be discharged without further notice to, approval of, or action by any Person or Entity.

Concurrently with its solicitation of votes on the Plan, the Debtor is conducting a marketing process for the sale of all or substantially all of the Debtor's assets under section 363 of the Bankruptcy Code (the "**363 Sale**"). In the event that the Debtor does not receive the requisite votes to confirm the Plan or otherwise fails to meet the requirements for confirmation under section 1129 of the Bankruptcy Code, the Debtor intends to pursue and consummate a 363 Sale to the highest and best bidder pursuant to Court-approved bidding and auction procedures, and the Debtor reserves all rights to seek such Sale. In furtherance of the foregoing, the Debtor intends to file one or more motions with this Court requesting approval of (a) bidding and auction procedures in connection with the proposed 363 Sale, and, should the Debtor fail to receive the requisite votes to confirm the Plan or otherwise fail to meet the requirements for confirmation, (b) the consummation of the 363 Sale. The Debtor anticipates that Parent will bid at such auction, and if Parent is determined to be the highest and best bidder, the Debtor will seek Court approval of the consummation of the 363 Sale to Parent in exchange for the satisfaction, settlement, discharge, and release of a portion of the Parent's Prepetition Revolving Loan Claim. The Debtor further reserves all rights to object to and seek the disallowance of the Subordinated Claims in their entirety if Confirmation and Consummation of the Plan does not occur.

## B.    SOLICITATION PROCEDURES

### 1.    The Solicitation and Voting Procedures

**The discussion of the procedures below is a summary of the solicitation and voting process**. Detailed voting instructions will be provided with each Ballot and are also set forth in greater detail in the Disclosure Statement Order.

PLEASE REFER TO THE INSTRUCTIONS ACCOMPANYING
THE BALLOTS AND THE DISCLOSURE STATEMENT
ORDER FOR MORE INFORMATION REGARDING VOTING
REQUIREMENTS TO ENSURE THAT YOUR BALLOT IS PROPERLY
AND TIMELY SUBMITTED SUCH THAT YOUR VOTE MAY BE COUNTED.

## 2. The Voting and Claims Agent

The Debtor has employed and plans to seek authority to formally retain Epiq Corporate Restructuring, LLC ("**Epiq**" or the "**Voting and Claims Agent**") to, among other things, act as Voting and Claims Agent.

Specifically, the Voting and Claims Agent will assist the Debtor with: (a) mailing Confirmation Hearing Notices (as defined in the Disclosure Statement Order); (b) mailing Solicitation Packages (as defined below); (c) soliciting votes on the Plan; (d) receiving, tabulating, and reporting on Ballots cast for or against the Plan by Holders of Claims against the Debtor; (e) responding to inquiries from creditors and stakeholders relating to the Plan, this Disclosure Statement, the Ballots and matters related thereto, including, without limitation, the procedures and requirements for voting to accept or reject the Plan and objecting to the Plan; and (f) if necessary, contacting creditors regarding the Plan and their Ballots.

## 3. Holders of Claims Entitled to Vote on the Plan

Under the provisions of the Bankruptcy Code, not all holders of claims against and equity interests in a debtor are entitled to vote on a chapter 11 plan. The following table provides a summary of the status and voting rights of each Class (and, therefore, of each Holder of a Claim or Equity Interest within such Class) under the Plan:

## SUMMARY OF STATUS AND VOTING RIGHTS

| Class | Claim/Equity Interest | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| *4* | *Prepetition Revolving Loan Claims* | *Impaired* | *Entitled to Vote* |
| 5 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 6 | Intercompany Claims | Unimpaired | Deemed to Accept |

## SUMMARY OF STATUS AND VOTING RIGHTS

| Class | Claim/Equity Interest | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 7 | *Subordinated Claims*[4] | *Impaired* | *Entitled to Vote* |
| 8 | Existing AIG FP Interests | Impaired | Deemed to Reject |

Based on the foregoing, the Debtor is soliciting votes to accept the Plan only from Holders of Claims in Classes 4 and 7 (the "**Voting Classes**") because Holders of Claims in the Voting Classes are Impaired under the Plan and, therefore, have the right to vote to accept or reject the Plan. The Debtor is **not** soliciting votes from (a) Holders of Claims in Classes 1, 2, 3, 5, and 6 because such parties are conclusively presumed to have accepted the Plan and (b) the Holder of Equity Interests in Class 8 because such party is conclusively presumed to have rejected the Plan (collectively, the "**Non-Voting Classes**"). In lieu of a Solicitation Package, Holders of Claims in the Non-Voting Classes will receive a Notice of Non-Voting Status and a notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**"); *provided, however*, that with respect to Class 6 (Intercompany Claims) and Class 8 (Existing AIG FP Interests), the Disclosure Statement Order waives any requirement for the Debtor to serve a Notice of Non-Voting Status or any other type of notice in connection with the Plan because such Claims and Equity Interests are held by Affiliates of the Debtor.

Because the Subordinated Claims in Class 7 are contingent, unliquidated, and disputed, such Claims are being temporarily allowed solely for the purpose of voting to accept or reject the Plan in the amount of $1.00 each. The temporary allowance of Claims in Class 7 (Subordinated Claims) is solely for voting purposes and does not constitute an allowance of such Subordinated Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Holders or Claims in Class 7 or the rights of the Debtor and any other party in interest in any other context.

4. **The Voting Record Date**

[January 18], 2023 is the Voting Record Date with respect to all Claims and Equity Interests. The Voting Record Date is the date on which it will be determined: (a) which Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan and receive Solicitation Packages in accordance with the Disclosure Statement Order and (b) which Holders of Claims and Equity Interests in the Non-Voting Classes are entitled to receive the Confirmation Hearing Notice, including notice of such Holder's non-voting status, in accordance with the Disclosure Statement Order.

---

[4] For the avoidance of doubt, the Debtor's description or classification in this Disclosure Statement, the Plan, or the First Day Declaration of any obligations arising under or related to the DCP Plans as Claims is not an admission that such obligations are debt, and the Debtor reserves the right to object to the allowance of such Claims and to classify any such obligations as Equity Interests.

US-DOCS\135657088

5.     **Contents of the Solicitation Package**

The following documents and materials will collectively constitute the solicitation package (the "**Solicitation Package**"):

- a cover letter from the Debtor explaining the solicitation process, describing the contents of the Solicitation Package, and urging Holders of Claims in the Voting Classes to vote to accept the Plan;

- the Confirmation Hearing Notice, attached to the Disclosure Statement Order;

- this Disclosure Statement (and exhibits annexed thereto, including the Plan);

- the Disclosure Statement Order;

- the First Day Declaration;

- to the extent applicable, a Ballot and/or notice, appropriate for the specific creditor, in substantially the forms attached as Exhibits 2, 3, 4, and 5 to the Disclosure Statement Order (as may be modified for particular classes and with instruction attached thereto); and

- such other materials as the Bankruptcy Court may direct.

6.     **Distribution of the Solicitation Package to Holders of Claims Entitled to Vote on the Plan**

With the assistance of the Voting and Claims Agent, the Debtor intends to distribute the Solicitation Packages on or before [January 23], 2023 (the "**Solicitation Mailing Date**"). The Debtor submits that such schedule will provide such Holders of Claims with adequate time within which to review the materials required to allow such parties to make informed decisions with respect to voting on the Plan in accordance with Bankruptcy Rules 3017(d) and 2002(b).

7.     **Distribution of Notices to Holders of Claims and Equity Interests in Non-Voting Classes**

As set forth above, certain Holders of Claims and Equity Interests are **not** entitled to vote on the Plan. As a result, such parties will not receive Solicitation Packages and, instead, will receive the appropriate form of notice as follows:

- Unimpaired Claims – Deemed to Accept. Administrative Claims and Priority Tax Claims are unclassified, non-voting Claims, and Claims in Classes 1, 2, 3, 5, and 6 are Unimpaired under the Plan and, therefore, are presumed to have accepted the Plan. As such, Holders of such Claims in Classes 1, 2, 3, and 5 will receive, in lieu of a Solicitation Package, an "Unimpaired Claims Notice" in the form attached as Exhibit 4 to the Disclosure Statement Order. Although Class 6 (Intercompany Claims) is also Unimpaired and presumed to have accepted the Plan, the Disclosure Statement Order waives any requirement for the Debtor to serve a Notice of Non-Voting Status or any

14

other type of notice in connection with the Plan on Holders of Intercompany Claims in Class 7 because such Claims are held by Affiliates of the Debtor.

- <u>Impaired Claims – Deemed to Reject</u>. The Holder of Equity Interests in Class 8 is receiving no distribution under the Plan on account of such Equity Interests and, therefore, is conclusively deemed to reject the Plan. Nevertheless, the Disclosure Statement Order waives any requirement for the Debtor to serve a Notice of Non-Voting Status or any other type of notice in connection with the Plan on the Holder of Existing AIG FP Interests because such Equity Interests are held by an Affiliate of the Debtor.

### 8. **Filing of the Plan Supplement**

The Debtor will file the Plan Supplement at least seven (7) days prior to the Plan Objection Deadline. The Debtor will transmit a copy of the Plan Supplement to the Distribution List, as defined below. Additionally, parties may request (and obtain at the Debtor's expense) a copy of the Plan Supplement by: (a) emailing AIGFPinfo@epiqglobal.com; (b) writing to AIG Financial Products Corp., c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, Oregon 97005, and requesting a copy; or (c) by visiting the Debtor's restructuring website at: https://dm.epiq11.com/AIGFP. Parties may also obtain any documents filed in the Chapter 11 Case <u>for a fee</u> via PACER at http://www.deb.uscourts.gov.

The Plan Supplement will include all Exhibits and Plan Schedules that were not already filed as exhibits to the Plan or this Disclosure Statement, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, supplemented, or modified from time to time.

As used herein, the term "**Distribution List**" means (a) the Office of the United States Trustee (the "**U.S. Trustee**"), (b) the Internal Revenue Service, (c) AIG Inc., and (d) all parties that, as of the applicable date of determination, may file requests for notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.

## C. **VOTING PROCEDURES**

Holders of Claims entitled to vote on the Plan are advised to read the Disclosure Statement Order, which sets forth in greater detail the voting instructions summarized herein.

### 1. **The Voting Deadline**

The Bankruptcy Court has approved 5:00 p.m. (prevailing Eastern Time) on [February 22], 2023 as the Voting Deadline. The Voting Deadline is the date by which all Ballots must be properly executed, completed and delivered to the Voting and Claims Agent in order to be counted as votes to accept or reject the Plan.

US-DOCS\135657088

2. **Ballots**

The Debtor, through the Voting and Claims Agent, will provide Ballots to Holders of Claims in the Voting Classes (*i.e.*, Classes 4 and 7), the forms of which are attached to the Disclosure Statement Order as Exhibit 2 and Exhibit 3, respectively.

3. **Voting Instructions**

Under the Plan, Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan. Those Holders may so vote by completing a Ballot and returning it to the Voting and Claims Agent prior to the Voting Deadline.

---

**PLEASE REFER TO THE INSTRUCTIONS ATTACHED TO THE BALLOTS FOR MORE DETAILED INFORMATION REGARDING THE VOTING REQUIREMENTS, RULES, AND PROCEDURES APPLICABLE TO VOTING YOUR CLAIM.**

---

**To be counted as votes to accept or reject the Plan, all Ballots (which will clearly indicate the appropriate return address) must be properly executed, completed, dated and delivered by following the instructions set forth on the Ballot, so that they are actually received on or before the Voting Deadline by the Voting and Claims Agent. If you have any questions about the procedures for voting on the Plan, you may contact the Debtor's Voting and Claims Agent by (1) calling the Voting and Claims Agent at (855) 929-4075 (U.S./Canada) or +1 (971) 407-1066 (International), (2) emailing AIGFPinfo@epiqglobal.com, or (3) writing to AIG Financial Products Corp., c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, Oregon 97005.**

4. **Tabulation of Votes**

---

**THE FOLLOWING IS IMPORTANT INFORMATION REGARDING VOTING THAT SHOULD BE READ CAREFULLY BY ALL HOLDERS OF CLAIMS IN THE VOTING CLASSES.**

---

- FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY EXECUTED, COMPLETED, DATED, AND DELIVERED/SUBMITTED SUCH THAT IT IS **ACTUALLY RECEIVED** ON OR BEFORE THE VOTING DEADLINE BY THE VOTING AND CLAIMS AGENT.

- THERE ARE TWO WAYS BY WHICH HOLDERS OF CLAIMS IN THE VOTING CLASSES MAY SUBMIT THEIR BALLOTS: (1) YOU MAY RETURN YOUR BALLOT TO THE VOTING AND CLAIMS AGENT VIA MAIL BY FOLLOWING THE INSTRUCTIONS ATTACHED TO YOUR BALLOT OR (2) YOU MAY SUBMIT YOUR BALLOT VIA THE VOTING AND CLAIMS AGENT'S ONLINE BALLOTING PORTAL. TO SUBMIT YOUR BALLOT VIA THE VOTING AND CLAIMS AGENT'S ONLINE PORTAL, PLEASE VISIT https://dm.epiq11.com/aigfp. CLICK ON THE "E-BALLOT" SECTION OF THE CASE WEBSITE AND FOLLOW THE INSTRUCTIONS TO SUBMIT YOUR BALLOT.

- A HOLDER OF A CLAIM MAY CAST ONLY ONE VOTE PER EACH CLAIM SO HELD. BY SIGNING AND RETURNING A BALLOT, EACH HOLDER OF A CLAIM WILL CERTIFY TO THE BANKRUPTCY COURT AND THE DEBTOR THAT NO OTHER BALLOTS WITH RESPECT TO SUCH CLAIM HAVE BEEN CAST OR, IF ANY OTHER BALLOTS HAVE BEEN CAST WITH RESPECT TO SUCH CLAIM, SUCH EARLIER BALLOTS ARE THEREBY SUPERSEDED AND REVOKED.

- **ANY BALLOT THAT IS RECEIVED <u>AFTER</u> THE VOTING DEADLINE WILL <u>NOT</u> BE COUNTED TOWARD CONFIRMATION OF THE PLAN UNLESS THE DEBTOR HAS GRANTED AN EXTENSION OF THE VOTING DEADLINE IN WRITING WITH RESPECT TO SUCH BALLOT.**

- **ADDITIONALLY, THE FOLLOWING BALLOTS WILL <u>NOT</u> BE COUNTED:**

  - any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

  - any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

  - any Ballot that is properly completed, executed, and timely filed, but (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, or (c) partially accepts and partially rejects the Plan;

  - any Ballot sent to the Debtor, the Debtor's agents/representatives (other than the Voting and Claims Agent), any administrative agent, or the Debtor's financial or legal advisors;

  - any unsigned Ballot; or

  - any Ballot not cast in accordance with the procedures described herein and in the Disclosure Statement Order.

## D.    CONFIRMATION OF THE PLAN

### 1.    The Confirmation Hearing

The Confirmation Hearing will commence at [●] prevailing Eastern Time on [March 1], 2023 before the Honorable [●], United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market Street, [●] Floor, Courtroom [●], Wilmington, DE 19801.

US-DOCS\135657088

The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtor without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties in interest.

2. **The Deadline for Objecting to Confirmation of the Plan**

The Plan Objection Deadline is 4:00 p.m. (prevailing Eastern Time) on [February 22], 2023. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan of reorganization. Any objection to confirmation of the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the Claim or Equity Interest of such Entity; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Plan Objection Deadline by the parties specified below (the "**Notice Parties**").

(a) Proposed Co-Counsel to the Debtor: Latham & Watkins LLP, 1270 Avenue of the Americas, New York, New York 10020 (Attn: Keith Simon (keith.simon@lw.com); Annemarie Reilly (annemarie.reilly@lw.com); Madeleine C. Parish (madeleine.parish@lw.com)) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor (mnestor@ycst.com) (No. 3526), Kara Hammond Coyle (kcoyle@ycst.com) (No. 4410), Shane M. Reil (sreil@ycst.com) (No. 6195), and Catherine C. Lyons (clyons@ycst.com) (No. 6854));

(b) Counsel to any statutory committee appointed in the Chapter 11 Case; and.

(c) The Office of the U.S. Trustee: 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane M. Leamy (jane.m.leamy@usdoj.gov)).

CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

3. **Effect of Confirmation of the Plan**

Article X of the Plan contains certain provisions relating to (a) the compromise and settlement of Claims, (b) the release of the Released Parties by the Debtor and its Related Persons, and (c) exculpation of certain parties. **It is important to read such provisions carefully so that you understand the implications of these provisions with respect to your Claim such that you may cast your vote accordingly**.

US-DOCS\135657088

THE PLAN WILL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (B) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE, OR (C) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## E.      CONSUMMATION OF THE PLAN

It will be a condition to confirmation of the Plan that all provisions, terms and conditions of the Plan are approved in the Confirmation Order unless otherwise satisfied or waived pursuant to the provisions of <u>Article IX</u> of the Plan.  Following confirmation, the Plan will be consummated on the Effective Date.

## F.      RISK FACTORS

**PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN SECTION VI HEREIN TITLED, "PLAN-RELATED RISK FACTORS."**

## G.      363 SALE ALTERNATIVE

Concurrently with its solicitation of votes on the Plan, the Debtor is conducting a marketing process for a 363 Sale.  The Debtor intends to file one or more motions with the Bankruptcy Court requesting approval of (a) bidding procedures in connection with the proposed 363 Sale, and (b) the consummation of the 363 Sale.  In the event that the Debtor does not receive the requisite votes to confirm the Plan or otherwise fails to meet the requirements for confirmation under section 1129 of the Bankruptcy Code, the Debtor intends to pursue and consummate the 363 Sale.  The Debtor anticipates that Parent will bid at such auction, and if Parent is determined to be the highest and best bidder, the Debtor will seek Court approval of the consummation of the 363 Sale to Parent in exchange for the satisfaction, settlement, discharge, and release of a portion of the Parent's Prepetition Revolving Loan Claim.  The Debtor further reserves all rights to object to and seek the disallowance of the Subordinated Claims in their entirety if Confirmation and Consummation of the Plan does not occur.

US-DOCS\135657088

## II.
## BACKGROUND TO THE CHAPTER 11 CASE

AIG FP is a wholly-owned, direct subsidiary of AIG Inc. AIG FP, a Delaware corporation founded in 1987 and based in Wilton, Connecticut, is a financial products company. As discussed more fully in Part I of the First Day Declaration, AIG FP was founded for the purpose of trading in the capital markets and offering corporate finance, structured finance, and financial risk management products, including complex derivatives transactions. While initially profitable, AIG FP suffered billions of dollars of losses from its derivatives trading positions during the financial crisis of 2008–2009 (the "**Financial Crisis**"). AIG FP has never recovered those losses.

Following the Financial Crisis, AIG FP predominantly operated to manage and wind down the remaining transactions in its portfolio. As of the Petition Date, AIG FP had assets totaling $315 million in book value, comprised of $216 million of intra- and intercompany receivables and investments in subsidiaries and the remaining $99 million consists primarily of a credit linked note and $10 million in cash on hand. It has liabilities of $37.7 billion in book value, comprised primarily of the AIG FP Revolver in the amount of $37.4 billion and $269 million of intra- and intercompany payables. Thus, AIG FP is balance sheet insolvent by approximately $37.4 billion.

Despite its insolvency, AIG FP has been subject to various lawsuits related to its Financial Crisis losses. In 2014, former London-based executives of AIG FP brought a case against AIG FP in an English trial court seeking to recoup their deferred compensation account balances that were wiped out by AIG FP's Financial Crisis losses.[5] That case was resolved in favor of AIG FP in 2020. In 2019, a group of similarly situated executives filed suit against AIG FP in Connecticut seeking to recover deferred compensation that was wiped out by AIG FP's performance during the Financial Crisis. As discussed more fully in Part III.B of the First Day Declaration, AIG FP successfully defended the English trial, which was dismissed, and AIG FP is continuing to vigorously defend the Connecticut litigation to date, but the defense has been, and will continue to be, costly, and time-consuming.

After winding down for over 14 years, and with billions in valid liabilities, as well as additional costs to continue to defend the most recent Connecticut state court litigation (as discussed in Part III of the First Day Declaration), AIG FP determined that it was prudent to address its capital structure holistically. To that end, in January 2022, AIG FP appointed an independent Special Committee (as defined in the First Day Declaration) tasked with assessing the assets and liabilities of AIG FP and exploring potential strategic alternatives. As a result, AIG FP, under the direction of the Special Committee, commenced the Chapter 11 Case to reorganize in order to maximize the value of its estate for the benefit of its creditors in order of contractual and statutory priority.

Additional information regarding the Debtor's (i) business and organizational structure, (ii) prepetition capital structure and indebtedness, and (iii) the circumstances leading to the

---

[5] The plaintiffs in the United Kingdom litigation sought, in connection with Plan Balances reduced and not restored, amounts totaling $90,799,648.00, £4,346,315.00 and €893,916.00, due to the fact that plaintiffs had elected to receive compensation in different currencies.

commencement of the Chapter 11 Case can be found in the First Day Declaration filed concurrently herewith.

US-DOCS\135657088

# III.
# EVENTS DURING THE CHAPTER 11 CASE

## A.   FIRST DAY MOTIONS AND CERTAIN RELATED RELIEF

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 14, 2022 (the "**Petition Date**").  The filing of the petition commenced the Chapter 11 Case, during which the Debtor is afforded the benefits and subject to the limitations of the Bankruptcy Code.

On the Petition Date, the Debtor filed certain motions (collectively referred to herein as the "**First Day Motions**") with the Bankruptcy Court.  At a hearing conducted on [●], 2022 (the "**First Day Hearing**"), the Bankruptcy Court entered certain orders in connection with the First Day Motions to, among other things, prevent interruptions to the Debtor's ongoing business and wind down and allow the Debtor to retain certain advisors to assist with the administration of the Chapter 11 Case.

### 1.   Cash Management Motion

On the Petition Date, the Debtor filed a First Day Motion seeking to obtain an interim order granting the Debtor authority to maintain its cash management system (subject to certain modifications) to help facilitate the stabilization of its business and effectuate, as much as possible, a smooth transition into operation as a debtor-in-possession.  The Bankruptcy Court entered an order granting the relief requested on an interim basis at the First Day Hearing [Docket No. [●]].  At a hearing held on [●], 2023, the Bankruptcy Court entered an order granting such relief on a final basis. [Docket No. [●]].

### 2.   Epiq Retention Application

To facilitate the efficient administration of the Chapter 11 Case, on the Petition Date, the Debtor filed a First Day Motion seeking entry of an order from the Bankruptcy Court authorizing the retention and appointment of Epiq as its Voting and Claims Agent.  The Bankruptcy Court entered an order granting the relief requested at the First Day Hearing [Docket No. [●]].

## B.   SECOND DAY MOTIONS AND CERTAIN RELATED RELIEF

In addition to the First Day Motions, shortly after the Petition Date, the Debtor filed motions seeking additional relief, including the following:

### 1.   Professional Retention Applications

To assist the Debtor in carrying out its duties as debtor-in-possession and to represent its interests in the Chapter 11 Case, on [●], 2022, the Debtor filed  applications seeking authority to retain and employ the following advisors: (a) Latham & Watkins LLP and Young Conaway Stargatt & Taylor, LLP, as restructuring co-counsel; (b) Alvarez & Marsal North America, LLC

US-DOCS\135657088

("**A&M**"), as financial advisor, and William Kosturos of A&M as Chief Restructuring Officer of the Debtor; and (c) Epiq as Administrative Advisor.

## C.     FILING OF THE SCHEDULES

The Debtor intends to file its schedules of assets and liabilities, schedules of executory contracts, and statements of financial affairs (collectively, the "**Schedules**") with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code on [●], 2022.

US-DOCS\135657088

# IV.
## SUMMARY OF THE PLAN

**THIS SECTION IV IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE MATERIAL TERMS OF THE PLAN AND IS QUALIFIED BY REFERENCE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN AND SHOULD NOT BE RELIED ON FOR A COMPREHENSIVE DISCUSSION OF THE PLAN. TO THE EXTENT THERE ARE ANY INCONSISTENCIES OR CONFLICTS BETWEEN THIS SECTION IV AND THE PLAN, THE TERMS AND CONDITIONS SET FORTH IN THE PLAN SHALL CONTROL AND GOVERN.**

## A.      ADMINISTRATIVE AND PRIORITY TAX CLAIMS

The following is a summary of the treatment of Administrative and Priority Tax Claims under the Plan. For a more detailed description of the treatment of such Claims under the Plan, please see Article II of the Plan.

### 1.      **Administrative Claims**

On the later of the Effective Date or the date on which an Administrative Claim becomes an Allowed Administrative Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Claim (other than an Allowed Professional Fee Claim) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) Cash equal to the amount of such Allowed Administrative Claim; or (ii) such other less favorable treatment as to which the Debtor or Reorganized Debtor, as applicable, and the Holder of such Allowed Administrative Claim will have agreed upon in writing; *provided*, *however*, that Administrative Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or Reorganized Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.

Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtor and such other Persons and Entities who are designated in the Confirmation Order an application for final allowance of such Professional Fee Claim no later than the Professional Fees Bar Date; *provided* that the Reorganized Debtor will pay the reasonable fees, costs, and out-of-pocket expenses of the Debtor's Professionals in the ordinary course of business for any work performed after the Effective Date, including those reasonable and documented fees, costs, and expenses incurred by such Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court; *provided, further*, that any Debtor Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses from the Debtor and Reorganized Debtor for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order, in each case without further application or notice to or order of the Bankruptcy Court. If the Debtor or Reorganized Debtor, as applicable, disputes the reasonableness of any Professionals' post-Effective Date fees,

24

costs, or expenses, the Debtor or Reorganized Debtor, as applicable, or the affected Professional, may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice will not be paid until the dispute is resolved.

Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtor and the requesting party by no later than thirty (30) days after the Filing of the applicable final request for payment of the Professional Fee Claim. Each Holder of an Allowed Professional Fee Claim will be paid in full in Cash by the Reorganized Debtor, including from the Professional Fee Reserve, within five (5) Business Days after entry of the order approving such Allowed Professional Fee Claim. The Reorganized Debtor will use such funds to pay only the Professional Fee Claims, as and when allowed by order of the Bankruptcy Court (except that the Unused Professional Fee Reserve Amount may be distributed from the Professional Fee Reserve as and when provided in the Plan). Notwithstanding anything to the contrary contained in the Plan, the failure of the Professional Fee Reserve to satisfy in full the Professional Fee Claims will not, in any way, operate or be construed as a cap or limitation on the amount of Professional Fee Claims due and payable by the Reorganized Debtor.

2.      **Priority Tax Claims**

Subject to **<u>Error! Reference source not found.</u>** of the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor or Reorganized Debtor, as applicable: (A) Cash equal to the amount of such Allowed Priority Tax Claim; (B) such other less favorable treatment as to which the Debtor or Reorganized Debtor, as applicable, and the Holder of such Allowed Priority Tax Claim will have agreed upon in writing; (C) such other treatment such that it will not be Impaired pursuant to section 1124 of the Bankruptcy Code or (D) pursuant to and in accordance with sections 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in regular installment payments over a period ending not more than five (5) years after the Petition Date, plus simple interest at the rate required by applicable non-bankruptcy law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to in writing by a particular taxing authority and the Debtor or Reorganized Debtor, as applicable, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; *provided*, *however*, that Priority Tax Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or Reorganized Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court. Any installment payments to be made under clause (C) or (D) above will be made in equal quarterly Cash payments beginning on the Effective Date (or as soon as reasonably practicable thereafter) and continuing on a quarterly basis until payment in full of the applicable Allowed Priority Tax Claim.

## B. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The following table provides a summary of the classification and treatment of Claims and Equity Interests and the potential distributions to Holders of Allowed Claims and Equity Interests under the Plan.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, for voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remaining portion of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released, disallowed or otherwise settled prior to the Effective Date.

Except as otherwise provided herein, nothing under the Plan will affect or limit the Debtor's or the Reorganized Debtor's rights and defenses (whether legal or equitable) in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE. FOR A COMPLETE DESCRIPTION OF THE DEBTOR'S CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN AND THE RISK FACTORS DESCRIBED IN <u>ARTICLE VI</u> BELOW. THE TABLE IS INTENDED FOR ILLUSTRATIVE PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR A REVIEW OF THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY. FOR CERTAIN CLASSES OF CLAIMS, THE ACTUAL AMOUNT OF ALLOWED CLAIMS COULD BE MATERIALLY DIFFERENT THAN THE ESTIMATED AMOUNTS SHOWN IN THE TABLE BELOW**.

US-DOCS\135657088

**SUMMARY OF EXPECTED RECOVERIES**

| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest | Voting | Projected Recovery Under the Plan |
|-------|----------------------|-----------------------------------|--------|----------------------------------|
| 1 | Other Priority Claims | Subject to <u>Article VIII</u> of the Plan, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor or Reorganized Debtor, as applicable: (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor or Reorganized Debtor, as applicable, and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; *provided*, *however*, that Class 1 Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or Reorganized Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court. | Unimpaired; Deemed to Accept | 100% |
| 2 | Other Secured Claims | Subject to <u>Article VIII</u> of the Plan, on the Effective Date, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim, at the election of the Debtor or Reorganized Debtor, as applicable: (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) such other less favorable treatment as to which the Debtor or Reorganized Debtor, as applicable, and the Holder of such Allowed Class 2 Claim will have agreed upon in writing; (C) the Collateral securing such Allowed Class 2 Claim; or (D) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; *provided*, *however*, that Class 2 Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or Reorganized Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court. | Unimpaired; Deemed to Accept | 100% |
| 3 | Secured Tax Claims | Subject to <u>Article VIII</u> of the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 3 Claim, at the election of the Debtor or Reorganized Debtor, as applicable: (A) Cash equal to the amount of such Allowed Class 3 Claim; (B) such other less favorable treatment as to which | Unimpaired; Deemed to Accept | 100% |

27

| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest | Voting | Projected Recovery Under the Plan |
|---|---|---|---|---|
| | | the Debtor or Reorganized Debtor, as applicable, and the Holder of such Allowed Class 3 Claim will have agreed upon in writing; (C) the Collateral securing such Allowed Class 3 Claim; (D) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code or (E) pursuant to and in accordance with sections 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, Cash in an aggregate amount of such Allowed Class 3 Claim payable in regular installment payments over a period ending not more than five (5) years after the Petition Date, plus simple interest at the rate required by applicable non-bankruptcy law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to in writing by a particular taxing authority and the Debtor or Reorganized Debtor, as applicable, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; *provided*, *however*, that Class 3 Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or Reorganized Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court. Any installment payments to be made under clause (D) or (E) above will be made in equal quarterly Cash payments beginning on the Effective Date (or as soon as reasonably practicable thereafter), and continuing on a quarterly basis until payment in full of the applicable Allowed Class 3 Claim. | | |
| 4 | Prepetition Revolving Loan Claims | The Existing AIG FP Interests will remain effective and outstanding on the Effective Date. The Prepetition Revolving Loan Claims are deemed Allowed Claims in the aggregate principal amount of $37,438,254,000, plus any accrued and unpaid fees, expenses, charges, indemnities and other obligations incurred in connection therewith through the Effective Date. The Parent, as the sole Holder of the Allowed Class 4 Prepetition Revolving Loan Claim, will retain the Existing AIG FP Interests in exchange for, and in full satisfaction, settlement, discharge and release of, such Allowed Class 4 Claim. For the avoidance of doubt, the Parent will be entitled to retain the Existing AIG FP Interests solely on account of the Parent's Allowed Class 4 Claim, and not on account of the Parent's Allowed Class 8 Existing AIG FP Interests. | *Impaired; Entitled to Vote* | [●]% |

| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest | Voting | Projected Recovery Under the Plan |
|---|---|---|---|---|
| 5 | General Unsecured Claims | Subject to Article VIII of the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 5 Claim will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 5 Claim, at the election of the Debtor or Reorganized Debtor, as applicable: (A) Cash equal to the amount of such Allowed Class 5 Claim; (B) such other less favorable treatment as to which the Debtor or Reorganized Debtor, as applicable, and the Holder of such Allowed Class 5 Claim will have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; *provided*, *however*, that Class 5 Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or Reorganized Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court. | Unimpaired; Deemed to Accept | 100% |
| 6 | Intercompany Claims | The Intercompany Claims will be paid, adjusted, reinstated, compromised, or cancelled, in each case at the option of the relevant Holder of such Intercompany Claims. | Unimpaired; Deemed to Accept | N/A |
| 7 | Subordinated Claims | **(i) IF AND ONLY IF CLASS 7 VOTES TO ACCEPT THE PLAN:**<br><br>Each Holder of a Class 7 Claim will receive, on or as soon as reasonably practicable after the Effective Date, in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim, an equal share of the Class 7 Cash Pool based on the number of Holders in Class 7 after payment therefrom of any taxes due with respect to the Class 7 Cash Pool (including, but not limited to, any employer taxes payable by the Debtor or any affiliate of the Debtor with respect to distributions of the Class 7 Cash Pool, as determined by the Debtor).<br><br>**(ii) IF AND ONLY IF CLASS 7 VOTES TO REJECT THE PLAN:**<br><br>Each Holder of a Class 7 Claim will not receive any distribution nor retain any property on account of such Class 7 Claim and, on the Effective Date, the Class 7 Claims will be discharged without further notice to, approval of, or action by any Person or Entity. | *Impaired; Entitled to Vote* | [●]% |

| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest | Voting | Projected Recovery Under the Plan |
|---|---|---|---|---|
| 8 | Existing AIG FP Interests | The Existing AIG FP Interests will remain effective and outstanding on the Effective Date. In accordance with Article III.B.4 of the Plan, the Parent, as the sole Holder of the Allowed Class 4 Prepetition Revolving Loan Claim, will retain the Existing AIG FP Interests in exchange for, and in full satisfaction, settlement, discharge and release of, such Allowed Class 4 Claim. The Parent will not retain any Existing AIG FP Interests or receive any other distribution on account of its Allowed Class 9 Existing AIG FP Interests. | Impaired; Deemed to Reject[6] | 0% |

## C.  ACCEPTANCE OR REJECTION OF THE PLAN

### 1.  Presumed Acceptance of Plan

Classes 1, 2, 3, 5, and 6 are Unimpaired under the Plan. Therefore, the Holders of Claims in such Classes are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

### 2.  Presumed Rejection of Plan

Class 8 is Impaired, and the Holder of Equity Interests in such Class will receive no distribution under the Plan on account of such Equity Interests. Therefore, such Holder is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

### 3.  Voting Classes

Classes 4 and 7 are Impaired under the Plan. The Holders of Claims in such Classes as of the Voting Record Date are entitled to vote to accept or reject the Plan.

### 4.  Acceptance by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

---

[6]  Class 8 is an Impaired Class and the Parent, in its capacity as Holder of the Allowed Existing AIG FP Interests in Class 8, is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Parent is not entitled to vote to accept or reject the Plan in its capacity as Holder of the Allowed Class 8 Existing AIG FP Interests.

5. **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code will be satisfied for purposes of Confirmation by acceptance of the Plan by Class 7. The Debtor requests confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to the Impaired Classes that do not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor reserves the right to modify the Plan or any Exhibit or Plan Schedule in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

6. **Votes Solicited in Good Faith**

The Debtor is soliciting, and upon the Confirmation Date will be deemed to have solicited, votes on the Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation. Accordingly, the Debtor, the Reorganized Debtor, and each of their respective Related Persons will be entitled to, and upon the Confirmation Date will be granted, the protections of section 1125(e) of the Bankruptcy Code.

## D.  EXIT FACILITY CREDIT AGREEMENT

On the Effective Date, the Debtor and the Reorganized Debtor, as applicable, will be authorized to execute and deliver, and to consummate the transactions contemplated by, the Exit Facility Credit Agreement and any related loan documents, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity (other than as expressly required by the Exit Facility Credit Agreement or any related loan documents). On the Effective Date, the Exit Facility Credit Agreement and any related loan documents will constitute legal, valid, binding and authorized indebtedness and obligations of the Reorganized Debtor, enforceable in accordance with their respective terms and such indebtedness and obligations will not be, and will not be deemed to be, enjoined or subject to discharge, impairment, release or avoidance under the Plan, the Confirmation Order or on account of the Confirmation or Consummation of the Plan.

## E.  GLOBAL SETTLEMENT

The Plan incorporates a compromise and settlement of the Released and Settled Claims held by the DCP Claimants in the form of a "**Global Settlement**," which the Parent supports. Pursuant to the Global Settlement, solely in the event that Class 7 votes to accept the Plan, the Parent has agreed to permit each DCP Claimant to receive, in full satisfaction, settlement, discharge and release of, and in exchange for, its Class 7 Subordinated Claim, an equal share of the Class 7 Cash Pool based on the number of Holders in Class 7, after payment therefrom of any taxes due with respect to the Class 7 Cash Pool (including, but not limited to, any employer taxes paid or payable by the Debtor or any affiliate of the Debtor with respect to distributions of the Class 7 Cash Pool, as determined by the Debtor). The Parent has consented to the funding of the Class 7 Cash Pool with Cash, the value of which the Parent would otherwise be entitled to receive as part of its recovery on account of its Class 4 Prepetition Revolving Loan Claims pursuant to

section 1129(b)(2) of the Bankruptcy Code. All taxes paid or payable by the Debtor or any affiliate of the Debtor with respect to distributions of the Class 7 Cash Pool will be deducted from the Class 7 Cash Pool prior to the payment to each DCP Claimant of any distribution from the Class 7 Cash Pool. Any distribution of the Class 7 Cash Pool to each DCP Claimant will be subject to any withholding or deduction for taxes required by applicable law.

The Global Settlement is a cornerstone of the Plan and necessary to achieve a beneficial and efficient resolution of the Chapter 11 Case for all parties-in-interest. The Plan will be deemed to constitute a motion seeking approval of the Global Settlement, and the entry of the Confirmation Order will constitute the Bankruptcy Court's approval of such motion and each of the compromises or settlements that comprise the Global Settlement, and the Bankruptcy Court's findings will constitute its determination that such compromises and settlements are within the range of reasonableness, in the best interests of the Debtor, its Estate, its creditors, and other parties-in-interest, and fair and equitable.

## F.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1.    Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, the Reorganized Debtor will assume all Executory Contracts and Unexpired Leases of the Debtor in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts and Unexpired Leases that:

     i.     have been assumed or rejected by the Debtor by prior order of the Bankruptcy Court;

     ii.     previously expired or terminated pursuant to its own terms;

     iii.     are the subject of a motion to reject filed by the Debtor that is pending on the Effective Date;

     iv.     are identified in the Plan Supplement, which Plan Supplement may be amended by the Debtor to add or remove Executory Contracts and Unexpired Leases by filing with the Bankruptcy Court an amended Plan Schedule and serving it on the affected non-Debtor contract parties at least seven (7) days prior to the Plan Objection Deadline or as soon as reasonably practicable thereafter, provided that any such non-Debtor counterparty will have seven (7) days to object to the inclusion of their Executory Contract and/or Unexpired Lease on such schedule; or

     v.     are rejected by the Debtor or terminated pursuant to the terms of the Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

US-DOCS\135657088

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to the Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change in control" provision, "change of control" provision, or provision with words of similar import) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of this Chapter 11 Case or the insolvency or financial condition of the Debtor at any time before the closing of its Chapter 11 Case, (ii) the Debtor's or the Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the Confirmation or Consummation of the Plan, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease will be deemed satisfied by the Confirmation of the Plan.

Each Executory Contract and Unexpired Lease assumed and/or assigned pursuant to the Plan will revest in and be fully enforceable by the Reorganized Debtor or the applicable assignee in accordance with its terms and conditions, except as modified by the provisions of the Plan, any order of the Bankruptcy Court approving its assumption and/or assignment, or applicable law.

Neither the assumption of any Executory Contract or Unexpired Lease pursuant to the Plan nor the inclusion or exclusion of any contract or lease on any schedule or exhibit nor anything contained in the Plan or Plan Supplement, will constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or the Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or the Reorganized Debtor, as applicable, will have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date. The deemed assumption provided for in the Plan will not apply to any such contract or lease, and any such contract or lease will be assumed or rejected only upon motion of the Debtor following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

2.    **Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases**

Any defaults under each Executory Contract and Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan will be satisfied, pursuant to and to the extent required by section 365(b)(1) of the Bankruptcy Code, by payment of the applicable default amount in Cash on or in connection with the Effective Date or on such other terms as the Bankruptcy Court may order or the parties to such Executory Contracts or Unexpired Leases may otherwise agree in writing (the "**Cure Claim Amount**").

US-DOCS\135657088

In the event of an assumption, or an assumption and assignment, of an Executory Contract or Unexpired Lease under the Plan, at least fourteen (14) days prior to the Plan Objection Deadline, the Debtor will File and serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, or proposed assumption and assignment, which will: (a) list the applicable Cure Claim Amount, if any; (b) if applicable, identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption, or proposed assumption and assignment under the Plan, or any related cure amount, must be Filed, served and actually received by the Debtor prior to the Plan Objection Deadline (notwithstanding anything in the Schedules or a proof of Claim to the contrary). Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, or proposed assumption and assignment, or cure amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and cure amount. The Confirmation Order will constitute an order of the Bankruptcy Court approving each proposed assumption, or proposed assumption and assignment, of Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of the Debtor or assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, or (c) any other matter pertaining to assumption or assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving such assumption, or assumption and assignment. If such objection is sustained by Final Order of the Bankruptcy Court, the Debtor or the Reorganized Debtor, as applicable, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming or assigning it. The Debtor or the Reorganized Debtor, as applicable, will be authorized to effect such rejection by filing a written notice of rejection with the Bankruptcy Court and serving such notice on the applicable counterparty within ten (10) days of the entry of such Final Order.

Subject to any cure claims Filed with respect thereto, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan will result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code. Any proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned by Final Order will be deemed disallowed and expunged (subject to any cure claims Filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

US-DOCS\135657088

With respect to any Executory Contract or Unexpired Lease assumed and assigned pursuant to the Plan, upon and as of the Effective Date, the applicable assignee will be deemed to be substituted as a party thereto for the Debtor party to such assigned Executory Contract or Unexpired Lease and, accordingly, the Debtor and the Reorganized Debtor will be relieved, pursuant to and to the extent set forth in section 365(k) of the Bankruptcy Code, from any further liability under such assigned Executory Contract or Unexpired Lease.

3.     **Rejection of Executory Contracts and Unexpired Leases**

The Debtor reserves the right, at any time prior to the Effective Date, except as otherwise specifically provided herein, to seek to reject any Executory Contract or Unexpired Lease and to file a motion requesting authorization for the rejection of any such contract or lease. All Executory Contracts and Unexpired Leases listed in the Plan Schedule**s** will be deemed rejected as of the Effective Date. The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejections described in <u>Article VI</u> of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise will not constitute a termination of any preexisting obligations owed to the Debtor or the Reorganized Debtor, as applicable, under such Executory Contracts or Unexpired Leases.

4.     **Claims on Account of the Rejection of Executory Contracts or Unexpired Leases**

All proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Person or Entity that is required to file a proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtor, the Reorganized Debtor or the Estate, and the Debtor, the Reorganized Debtor and their Estate and their respective assets and property will be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in <u>Article X.G</u> of the Plan.

5.     **D&O Liability Insurance Policies**

On the Effective Date, each D&O Liability Insurance Policy (including any "tail policy") will be deemed and treated as an Executory Contract that is and will be assumed by the Debtor (and assigned to the Reorganized Debtor, if necessary) pursuant to section 365(a) and section 1123 of the Bankruptcy Code as to which no proof of Claim, request for administrative expense, or cure claim need be Filed, and all Claims arising from the D&O Liability Insurance Policies will survive the Effective Date and be Unimpaired. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtor's assumption of each of the D&O Liability Insurance Policies (including

35

any "tail policies"). After the Effective Date, neither the Debtor nor the Reorganized Debtor will terminate or otherwise reduce the coverage under any such policies (including any "tail policies") with respect to conduct occurring prior to the Effective Date, and all officers and directors of the Debtor who served in such capacity at any time before the Effective Date will be entitled to the full benefits of any such policies regardless of whether such officers or directors remain in such positions after the Effective Date. Confirmation and Consummation of the Plan will not impair or otherwise modify any available defenses of the Reorganized Debtor under the D&O Liability Insurance Policies. For the avoidance of doubt, the D&O Liability Insurance Policies will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the D&O Liability Insurance Policies. The Debtor is further authorized to take such actions, and to execute and deliver such documents, as may be reasonably necessary or appropriate to implement, maintain, cause the binding of, satisfy any terms or conditions of, or otherwise secure for the insureds the benefits of the D&O Liability Insurance Policies (including any "tail policies"), without further notice to or order of the Bankruptcy Court or approval or consent of any Person or Entity.

6.      **Indemnification Provisions**

On the Effective Date, all Indemnification Provisions will be deemed and treated as Executory Contracts that are and will be assumed by the Debtor (and assigned to the Reorganized Debtor, if necessary) pursuant to section 365(a) and section 1123 of the Bankruptcy Code as to which no proof of Claim, request for administrative expense, or cure claim need be Filed, and all Claims arising from the Indemnification Provisions will survive the Effective Date and be Unimpaired. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtor's assumption of such Indemnification Provisions. Confirmation and Consummation of the Plan will not impair or otherwise modify any available defenses of the Reorganized Debtor or other applicable parties under the Indemnification Provisions. For the avoidance of doubt, the Indemnification Provisions will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the Indemnification Provisions.

7.      **Extension of Time to Assume or Reject**

Notwithstanding anything to the contrary set forth in Article VI of the Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the right of the Reorganized Debtor to move to assume or reject such contract or lease will be extended until the date that is ten (10) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired. The deemed assumption provided for in Article VI.A of the Plan will not apply to any such contract or lease, and any such contract or lease will be assumed or rejected only upon motion of the Reorganized Debtor following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

US-DOCS\135657088

8.      **Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed by the Debtor or the Reorganized Debtor will include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing has been previously rejected or repudiated or is rejected or repudiated pursuant to the Plan. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case will not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

## G.      CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

1.      **Conditions Precedent to Confirmation**

It will be a condition to Confirmation of the Plan that the following conditions will have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

- The Plan and the Restructuring Documents will be in form and substance acceptable to the Debtor and the Parent; and

- The Confirmation Order, which will be in form and substance acceptable to the Debtor and the Parent, will have been entered by the Bankruptcy Court.

2.      **Conditions Precedent to Consummation**

It will be a condition to Consummation of the Plan that the following conditions will have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

- The Confirmation Order will have become a Final Order and such order will not have been amended, modified, vacated, stayed, or reversed;

- The Bankruptcy Court will have entered one or more Final Orders (which may include the Confirmation Order) authorizing the assumption, assumption and assignment, and/or rejection of the Executory Contracts and Unexpired Leases by the Debtor as contemplated in the Plan and the Plan Supplement;

- The Plan and the Restructuring Documents will not have been amended or modified other than in a manner in form and substance acceptable to the Debtor and the Parent;

- The Restructuring Documents will have been filed, tendered for delivery, and been effectuated or executed by all Persons or Entities party thereto (as appropriate), and in each case in full force and effect. All conditions precedent

37

to the effectiveness of such Restructuring Documents will have been satisfied or waived pursuant to the terms of such applicable Restructuring Documents (or will be satisfied concurrently with the occurrence of the Effective Date);

- All consents, actions, documents, certificates and agreements necessary to implement the Plan and the transactions contemplated by the Plan will have been, as applicable, obtained and not otherwise subject to unfulfilled conditions, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws, and in each case in full force and effect;

- All governmental approvals and consents, including Bankruptcy Court approval, that are applicable and legally required for the consummation of the Plan will have been obtained, not be subject to unfulfilled conditions and be in full force and effect; and

- The Professional Fee Reserve will have been funded in full in Cash by the Debtor in accordance with the terms and conditions of the Plan.

### 3. Waiver of Conditions

Subject to section 1127 of the Bankruptcy Code, the conditions to Confirmation and Consummation of the Plan set forth in IV.F of the Plan may be waived by the Debtor, with the consent of the Parent, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan. The failure of the Debtor or Reorganized Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

### 4. Effect of Non-Occurrence of Conditions to Confirmation or Consummation

If the Confirmation or the Consummation of the Plan does not occur, then the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Person or Entity; (3) constitute an Allowance of any Claim or Equity Interest; or (4) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders or any other Person or Entity in any respect.

## H. RELEASE, DISCHARGE, INJUNCTION AND RELATED PROVISIONS

### 1. General

With respect to Class 7 Claims only, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith compromise and settlement of such Class 7 Claims.

US-DOCS\135657088

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise. As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; *provided*, *however*, that nothing contained in Article X of the Plan will preclude any Person or Entity from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan.

2.      **Release by the Debtor and its Estate**

**Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor, in its capacity as debtor-in-possession, and the Reorganized Debtor, on behalf of themselves and the Estate, including, without limitation, any successor to the Debtor or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "Debtor Releasing Parties") will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released will be deemed forever released, waived and discharged by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtor or its Affiliates, including, without limitation, (i) the Chapter 11 Case, the Disclosure Statement, the Plan, the Restructuring Documents, or the Prepetition Revolving Loan  Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (iii) the business or contractual arrangements between the Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the Prepetition Revolving Loan Documents or related settlements, agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Case, (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtor or the Reorganized Debtor, and/or (vii) the Confirmation or Consummation of the Plan or the solicitation of votes on the Plan that such Debtor Releasing Party would have been legally entitled to assert**

(whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Person or Entity would have been legally entitled to assert for, or on behalf or in the name of, the Debtor, its Estate or the Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided*, *however*, that the foregoing provisions of this Debtor Release will not operate to waive or release the rights of such Debtor Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan (including, without limitation, the Exit Facility Credit Agreement) or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court.

The foregoing release will be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in **Article X.B** of the Plan will or will be deemed to (i) prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person or Entity that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in the Plan.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and **Article X.B** thereof, and further, will constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (iii) in the best interest of the Debtor and its Estate; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

3. **Waiver of Statutory Limitations on Debtor Release**

Each of the Debtor Releasing Parties in each of the releases contained above expressly acknowledges that although ordinarily a general release may not extend to Claims which the Debtor Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each Debtor Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the released party. Except as otherwise provided in the Plan, the releases contained in the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

US-DOCS\135657088

4. **Discharge of Claims and Equity Interests**

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan (including, without limitation, <u>Article V.E</u> and <u>Article V.F</u> of the Plan) or the Confirmation Order, effective as of the Effective Date, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Equity Interests and Causes of Action of any kind or nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims, Equity Interests or Causes of Action.

Except as otherwise expressly provided by the Plan (including, without limitation, <u>Article V.E</u> and <u>Article V.F</u> of the Plan) or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge will void any judgment obtained against the Debtor or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

Except as otherwise expressly provided by the Plan (including, without limitation, <u>Article V.E</u> and <u>Article V.F</u> of the Plan) or the Confirmation Order, upon the Effective Date: (i) the rights afforded in <u>Article X.D</u> of the Plan and the treatment of all Claims and Equity Interests will be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (ii) all Claims and Equity Interests will be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto will be extinguished completely without further notice or action; and (iii) all Persons and Entities will be precluded from asserting against the Debtor, the Estate, the Reorganized Debtor, each of their respective successors and assigns, and each of their respective assets and properties, any such Claims or Equity Interests, whether based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or otherwise.

5. **Exculpation**

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties will neither have nor incur any liability to any Person or Entity for any Claims, Causes of Action, or Released and Settled Claims for any act taken or omitted to be taken on or after the Petition Date and on or before the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of the Plan, the Disclosure Statement, the Restructuring Documents, or any contract, instrument, release or other settlement, agreement or document created or entered into in connection with the Plan or

any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the approval of the Disclosure Statement or Confirmation or Consummation of the Plan; *provided*, *however*, that the foregoing provisions of this exculpation will not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; *provided*, *further*, that each Exculpated Party will be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing exculpation will be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity. Notwithstanding the foregoing, nothing in <u>Article X.E</u> of the Plan will or will be deemed to prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person or Entity that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, in each case unless otherwise expressly provided for in the Plan.

6. **Preservation of Causes of Action**

    (a) <u>Maintenance of Causes of Action</u>

Except as otherwise provided in **Error! Reference source not found.** of the Plan (including, without limitation, and for the avoidance of doubt, the Debtor Release contained in <u>IV.H.2</u> of the Plan, and Exculpation contained in <u>Article X.E</u> of the Plan) or elsewhere in the Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtor will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Litigation Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case. The Reorganized Debtor, as the successor-in-interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of such Litigation Claims without notice to or approval from the Bankruptcy Court.

    (b) <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>

Except as expressly set forth in the Plan, the Debtor expressly reserves all Causes of Action and Litigation Claims for later adjudication by the Debtor or the Reorganized Debtor (including, without limitation, Causes of Action and Litigation Claims not specifically identified or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion,

42

claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action or Litigation Claims upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except in each case where such Causes of Action or Litigation Claims have been expressly waived, relinquished, released, compromised or settled in the Plan (including, without limitation, and for the avoidance of doubt, the Debtor Release contained in IV.H.2 and Exculpation contained in Article X.E of the Plan) or any other Final Order (including, without limitation, the Confirmation Order). In addition, the Debtor and the Reorganized Debtor expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action or Litigation Claim against them as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action or Litigation Claims against them. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action and Litigation Claims against any Person or Entity, except as otherwise expressly provided in the Plan or the Confirmation Order (including, without limitation, and for the avoidance of doubt, the Debtor Release contained in Article X.B and the Exculpation contained in Article X.E).

7.     **Injunction**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

8.     *Released and Settled Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates an integrated compromise, settlement, and release of the Released and Settled Claims, to achieve a beneficial and efficient resolution of this Chapter 11 Case for all parties in interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Released and Settled Claims and the Bankruptcy Court's determination that such compromises and settlements are in the best interests of the Debtor, its Estate, the Reorganized Debtor, creditors, and all other parties in interest, and are fair, equitable, and within the range of reasonableness. The compromises, settlements, and releases described herein will be deemed nonseverable from each other and from all other terms of the Plan.

US-DOCS\135657088

# V.
## CONFIRMATION AND CONSUMMATION PROCEDURES

## A.    CONFIRMATION OBJECTION PROCEDURES

### 1.    Confirmation Hearing

The Confirmation Hearing will commence at [●] prevailing Eastern Time on [February 28], 2023 before the Honorable [●], United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market Street North, [●] Floor, Wilmington, DE 19801.  The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtor without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order.  Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties in interest.

### 2.    Filing Objections to the Plan

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan of reorganization.  Any objection to confirmation of the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the Claim or Equity Interest of such Entity; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Plan Objection Deadline by the Notice Parties (as defined in Section I.D herein).

> CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

## B.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  The Debtor believes that: (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtor has complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.  Specifically, the Debtor believes that the Plan satisfies or will satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code;

- The Debtor complied with the applicable provisions of the Bankruptcy Code;

- The Plan has been proposed in good faith and not by any means forbidden by law;

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the case, has been or will be disclosed to the Bankruptcy Court, and any such payment: (a) made before the confirmation of the Plan is reasonable; or (b) if it is to be fixed after confirmation of the Plan, is subject to the approval of the Bankruptcy Court for the determination of reasonableness;

- The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in the Plan with the Debtor, or a successor to the Debtor under the Plan. The appointment to, or continuance in, such office by such individual will be consistent with the interests of creditors and equity security holders and with public policy and the Debtor will have disclosed the identity of any insider that the Reorganized Debtor will employ or retain, and the nature of any compensation for such insider;

- Either each Holder of an Impaired Claim or an Impaired Equity Interest has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated on that date under chapter 7 of the Bankruptcy Code;

- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or will not be Impaired under the Plan, or the Plan can be confirmed without the approval of such Voting Class pursuant to section 1129(b) of the Bankruptcy Code;

- Except to the extent that the Holder of a particular Claim agrees to a different treatment of its Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full in Cash on the Effective Date, or as soon thereafter as is reasonably practicable, and that Priority Tax Claims will be paid in accordance with section 1129(a)(9)(C) of the Bankruptcy Code;

- At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class;

- Confirmation of the Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor thereto under the Plan; and

- All outstanding fees payable pursuant to section 1930 of title 28 of the United States Code will be paid when due.

Concurrently with its solicitation of votes on the Plan, the Debtor is conducting a marketing process for a 363 Sale. The Debtor intends to file one or more motions with the Bankruptcy Court requesting approval of (a) bidding procedures in connection with the proposed 363 Sale, and (b)

the consummation of the 363 Sale. In the event that the Debtor does not receive the requisite votes to confirm the Plan or otherwise fails to meet the requirements for confirmation under section 1129 of the Bankruptcy Code, the Debtor intends to pursue and consummate the 363 Sale. The Debtor anticipates that Parent will bid at such auction, and if Parent is determined to be the highest and best bidder, the Debtor will seek Court approval of the consummation of the 363 Sale to Parent in exchange for the satisfaction, settlement, discharge, and release of a portion of the Parent's Prepetition Revolving Loan Claim. The Debtor further reserves all rights to object to and seek the disallowance of the Subordinated Claims in their entirety if Confirmation and Consummation of the Plan does not occur.

1.      **Best Interests of Creditors Test/Liquidation Analysis**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provide, with respect to each class, that each holder of a claim or an equity interest in such class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor or debtors were liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the Bankruptcy Court must: (a) estimate the cash liquidation proceeds that a chapter 7 trustee would generate if the Chapter 11 Case were converted to a chapter 7 case and the assets of the debtor's estate were liquidated; (b) determine the liquidation distribution that each non-accepting holder of a claim or an equity interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare such holder's liquidation distribution to the distribution under the chapter 11 plan that such holder would receive if the chapter 11 plan were confirmed.

In chapter 7 cases, creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid in full: (a) holders of secured claims (to the extent of the value of their collateral); (b) holders of priority claims; (c) holders of unsecured claims; (d) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (e) holders of equity interests.

Accordingly, the cash amount that would be available for satisfaction of claims (other than secured claims) would consist of the proceeds resulting from the disposition of the unencumbered assets of the debtor, augmented by the unencumbered cash held by the debtor at the time of the commencement of the liquidation. Such cash would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative and priority claims that may result from termination of the debtor's business and the use of chapter 7 for purposes of a liquidation.

As described in more detail in the liquidation analysis attached hereto as <u>Exhibit C</u> (the "**Liquidation Analysis**"), the Debtor believes that confirmation of the Plan will provide each Holder of an Allowed Claim or Allowed Equity Interest in each Class with a recovery greater than or equal to the value of any distributions if the Chapter 11 Case were converted to a case under chapter 7 of the Bankruptcy Code because, among other reasons, proceeds received in a chapter 7 liquidation are likely to be significantly discounted due to the distressed nature of the sale of the

47

Debtor's assets and the fees and expenses of a chapter 7 trustee would likely further reduce Cash available for distribution. In addition, distributions in a chapter 7 case may not occur for a longer period of time than distributions under the Plan, thereby reducing the present value of such distributions. In this regard, it is possible that distribution of the proceeds of a liquidation could be delayed for a significant period while the chapter 7 trustee and its advisors become knowledgeable about, among other things, the Chapter 11 Case and the Claims against the Debtor. As set forth in the Liquidation Analysis, Holders of Claims in Class 7 would receive no recovery in respect of their Allowed Subordinated Claims under a chapter 7 liquidation, which is less than the projected [●]% recovery for such Class pursuant to the Plan.

2. **Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that the bankruptcy court find that confirmation is not likely to be followed by the liquidation of the reorganized debtor or the need for further financial reorganization, unless the plan contemplates such liquidation. For purposes of demonstrating that the Plan meets this "feasibility" standard, the Debtor has analyzed the ability of the Reorganized Debtor to meet its obligations under the Plan and to retain sufficient liquidity and capital resources to continue operations while winding down in an efficient and orderly fashion.

The Debtor believes that the Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code. In connection with the development of the Plan and for the purposes of determining whether the Plan satisfies this feasibility standard, the Debtor analyzed the ability of the Reorganized Debtor to satisfy its financial obligations while maintaining sufficient liquidity and capital resources. Financial projections of the Reorganized Debtor (the "**Financial Projections**") are attached hereto as <u>Exhibit B</u>.

In general, as illustrated by the Financial Projections, the Debtor believes that post-Effective Date, the Reorganized Debtor should have sufficient cash flow and availability to make all payments required pursuant to the Plan while conducting its business operations. The Debtor believes that confirmation and consummation is, therefore, not likely to be followed by the liquidation or further reorganization of the Reorganized Debtor. Accordingly, the Debtor believes that the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

THE FINANCIAL PROJECTIONS, INCLUDING THE UNDERLYING ASSUMPTIONS, SHOULD BE CAREFULLY REVIEWED IN EVALUATING THE PLAN. WHILE MANAGEMENT BELIEVES THE ASSUMPTIONS UNDERLYING THE FINANCIAL PROJECTIONS, WHEN CONSIDERED ON AN OVERALL BASIS, ARE REASONABLE IN LIGHT OF CURRENT CIRCUMSTANCES AND EXPECTATIONS, NO ASSURANCE CAN BE GIVEN THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED.

THE FINANCIAL PROJECTIONS HAVE NOT BEEN EXAMINED OR COMPILED BY INDEPENDENT ACCOUNTANTS. THE DEBTOR MAKES NO REPRESENTATION OR WARRANTY AS TO THE ACCURACY OF THE FINANCIAL PROJECTIONS OR ITS ABILITY TO ACHIEVE THE PROJECTED RESULTS. MANY OF THE ASSUMPTIONS ON WHICH THE PROJECTIONS ARE BASED ARE INHERENTLY SUBJECT TO

SIGNIFICANT ECONOMIC UNCERTAINTIES AND CONTINGENCIES THAT ARE BEYOND THE CONTROL OF THE DEBTOR. INEVITABLY, SOME ASSUMPTIONS WILL NOT MATERIALIZE AND UNANTICIPATED EVENTS AND CIRCUMSTANCES MAY AFFECT THE ACTUAL FINANCIAL RESULTS. THEREFORE, THE ACTUAL RESULTS ACHIEVED THROUGHOUT THE PERIOD OF THE FINANCIAL PROJECTIONS MAY VARY FROM THE PROJECTED RESULTS AND THE VARIATIONS MAY BE MATERIAL. ALL HOLDERS OF CLAIMS THAT ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE URGED TO EXAMINE CAREFULLY ALL OF THE ASSUMPTIONS ON WHICH THE FINANCIAL PROJECTIONS ARE BASED IN CONNECTION WITH THEIR EVALUATION OF THE PLAN.

BASED ON THE FINANCIAL PROJECTIONS SET FORTH IN <u>EXHIBIT B</u> HERETO, THE DEBTOR BELIEVES THAT IT WILL BE ABLE TO MAKE ALL DISTRIBUTIONS AND PAYMENTS UNDER THE PLAN AND THAT CONFIRMATION OF THE PLAN IS NOT LIKELY TO BE FOLLOWED BY LIQUIDATION OF THE REORGANIZED DEBTOR OR THE NEED FOR FURTHER FINANCIAL REORGANIZATION OF THE REORGANIZED DEBTOR.

3. **Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (b) cures any default and reinstates the original terms of such obligation; or (c) provides that, on the consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled to any fixed price at which the debtor may redeem the security.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds (2/3) in amount and a majority in number actually voting cast their Ballots in favor of acceptance.

Claims in Classes 1, 2, 3, 5, and 6 are Unimpaired under the Plan, and, as a result, the Holders of such Claims are deemed to have accepted the Plan.

Claims in Classes 4 and 7 are Impaired under the Plan, and as a result, the Holders of Claims in Classes 4 and 7 are entitled to vote on the Plan. Pursuant to section 1129 of the Bankruptcy Code, the Holders of Claims in the Voting Classes must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to Classes 4 and 7 and without considering whether the Plan "discriminates unfairly" with respect to Classes 4 and 7, as both

standards are described herein. As explained above, each of Classes 4 and 7 will have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and a majority in number of the Claims of each of Classes 4 and 7, as applicable (other than any Claims of creditors designated under section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.

Equity Interests in Class 8 are Impaired and deemed to have rejected the Plan. The Debtor, therefore, will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code as more fully described below.

4.      **Confirmation Without Acceptance by All Impaired Classes**

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if less than all impaired classes entitled to vote on the plan have accepted it, provided that the plan has been accepted by at least one impaired class of claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired Class's rejection or deemed rejection of the Plan, the Plan will be confirmed, at the Debtor's request, in a procedure commonly known as "cram down," so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the Plan.

5.      **No Unfair Discrimination**

This test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

6.      **Fair and Equitable Test**

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class:

- Secured Claims. The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that: (a) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the plan; and (b) each holder of a secured claim in the class receives deferred cash payments totaling at least the allowed amount of such claim with a present value, as of the effective date of the plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

- Unsecured Claims. The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the following requirement that either: (a) the plan provides that each holder of a claim of such class receive or retain on account of such

claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (b) the holder of any claim or any equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or junior equity interest any property.

- <u>Equity Interests</u>. The condition that a plan be "fair and equitable" to a non-accepting class of equity interests includes the requirements that either:

  o the plan provides that each holder of an equity interest in that class receives or retains under the plan on account of that equity interest property of a value, as of the effective date of the plan, equal to the greater of: (a) the allowed amount of any fixed liquidation preference to which such holder is entitled; (b) any fixed redemption price to which such holder is entitled; or (c) the value of such interest; <u>or</u>

  o if the class does not receive the amount required in the paragraph directly above, no class of equity interests junior to the non-accepting class may receive a distribution under the plan.

**As noted above, the Debtor will seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code, to the extent applicable, in view of the deemed rejection by Class 8.** To the extent that any of the Voting Classes votes to reject the Plan, the Debtor reserves the right to seek (a) confirmation of the Plan under section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan in accordance with <u>Article XII.D</u> of the Plan.

The vote of the Holder of Equity Interests in Class 8 is not being solicited because, under <u>Articles III and VII</u> of the Plan, there will be no distribution to such Holder and, therefore, such Holder is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Holder of Equity Interests in Class 8 will also not retain any property on account of such Equity Interests.

Notwithstanding the deemed rejection by Class 8, the Debtor does not believe that the Plan discriminates unfairly against any Impaired Class of Claims or Equity Interests. The Debtor believes that the Plan and the treatment of all Classes of Claims and Equity Interests under the Plan satisfy the foregoing requirements for non-consensual confirmation of the Plan.

7. **363 Sale Alternative**

Concurrently with its solicitation of votes on the Plan, the Debtor is conducting a marketing process for a 363 Sale. The Debtor intends to file one or more motions with the Bankruptcy Court requesting approval of (a) bidding procedures in connection with the proposed 363 Sale, and (b) the consummation of the 363 Sale. In the event that the Debtor does not receive the requisite votes to confirm the Plan or otherwise fails to meet the requirements for confirmation under section 1129 of the Bankruptcy Code, the Debtor intends to pursue and consummate the 363 Sale. The Debtor anticipates that Parent will bid at such auction, and if Parent is determined to be the highest and best bidder, the Debtor will seek Court approval of the consummation of the 363 Sale to Parent in exchange for the satisfaction, settlement, discharge, and release of a portion of the Parent's

Prepetition Revolving Loan Claim. The Debtor further reserves all rights to object to and seek the disallowance of the Subordinated Claims in their entirety if Confirmation and Consummation of the Plan does not occur.

## C. CONSUMMATION OF THE PLAN

The Plan will be consummated on the Effective Date. For a more detailed discussion of the conditions precedent to the consummation of the Plan and the impact of failure to meet such conditions, *see* <u>Article IX</u> of the Plan.

US-DOCS\135657088

# VI.
## PLAN-RELATED RISK FACTORS

> PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THESE RISK FACTORS ARE MANY, THESE FACTORS SHOULD <u>NOT</u> BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S BUSINESS, THE PLAN OR THE IMPLEMENTATION OF THE PLAN.

## A.    CERTAIN BANKRUPTCY LAW CONSIDERATIONS

### 1.    General

Although the Plan is designed to minimize the length of the Chapter 11 Case, it is impossible to predict with certainty the amount of time that the Debtor may spend in bankruptcy or to assure parties in interest that the Plan will be confirmed.  Even if confirmed on a timely basis, the Chapter 11 Case could have a material adverse effect on the Debtor's financial condition, liquidity, and anticipated wind down.  So long as the Chapter 11 Case continues, the Debtor's management may be required to spend a significant amount of time and effort managing the bankruptcy process instead of focusing exclusively on the Debtor's business operations.

### 2.    The Debtor Will Be Subject to the Risks and Uncertainties Associated with Chapter 11 Proceedings.

As a consequence of the Debtor's filing for relief under chapter 11 of the Bankruptcy Code, the Debtor's business will be subject to the risks and uncertainties associated with bankruptcy. These risks include the following:

- the Debtor's ability to develop, confirm, and consummate the Plan;

- the Debtor's ability to obtain court approval with respect to motions filed in the Chapter 11 Case from time to time;

- the Debtor's ability to maintain relationships with certain third parties;

- the Debtor's ability to maintain strategic control as debtor-in-possession during the pendency of the Chapter 11 Case;

- the ability of third parties to seek and obtain court approval to terminate contracts and other agreements with the Debtor;

- the ability of third parties to seek and obtain the Bankruptcy Court's approval to terminate or shorten the exclusivity period for the Debtor to propose and confirm the Plan, to appoint a Chapter 11 trustee, or to convert the Chapter 11 Case to a proceeding under chapter 7 of the Bankruptcy Code; and

- the actions and decisions of the Debtor's creditors and other third parties who have interests in the Debtor's Chapter 11 Case that may be inconsistent with the Debtor's plans.

Because of the risks and uncertainties associated with the Chapter 11 Case, the Debtor cannot accurately predict or quantify the ultimate impact of events that will occur during the Chapter 11 Case.

3.    **Risk of Non-Confirmation of the Plan.**

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate re-solicitation of votes.  Moreover, the Debtor can make no assurances that it will receive the requisite acceptances to confirm the Plan, and even if all Voting Classes voted in favor of the Plan or the requirements for "cram down" are met with respect to any Class that rejected the Plan, the Bankruptcy Court could decline to confirm the Plan if it finds that any of the statutory requirements for confirmation are not met.  If the Plan is not confirmed, the Debtor intends to pursue and consummate the 363 Sale.

4.    **Risk of Failing to Satisfy the Vote Requirement.**

In the event that the Debtor is nevertheless unable to obtain sufficient votes from the Voting Classes, the Debtor will seek to accomplish a modified chapter 11 plan or seek to "cram down" (*i.e.*, achieve non-consensual confirmation of) the Plan on non-accepting Classes.  There can be no assurance that the terms of any such modified chapter 11 plan would be similar or as favorable to Holders of Allowed Claims as those proposed in the Plan.

In the event that the Debtor does not receive the requisite votes to confirm the Plan or otherwise fails to meet the requirements for confirmation under section 1129 of the Bankruptcy Code, the Debtor intends to pursue and consummate the 363 Sale.

5.    **Non-Consensual Confirmation of the Plan May be Necessary.**

If any impaired class of claims or equity interests does not accept or is deemed not to accept a plan of reorganization, a bankruptcy court may nevertheless confirm such plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes.  These requirements must be satisfied with respect to the Classes deemed to, and any other Class that may vote to, reject the Plan.

6.    **Risks Related to Parties in Interest Objecting to the Debtor's Classification of Claims and Equity Interests.**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other

claims or equity interests in such class. The Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that a party in interest will not object or that the Bankruptcy Court will approve the classifications.

7.     **Risks Related to Possible Objections to the Plan.**

There is a risk that certain parties could oppose and object to either the entirety of the Plan or specific provisions of the Plan. Although the Debtor believes that the Plan complies with all relevant Bankruptcy Code provisions, there can be no guarantee that a party in interest will not file an objection to the Plan or that the Bankruptcy Court will not sustain such an objection.

8.     **The Debtor May Object to the Amount or Classification of a Claim.**

Except as otherwise provided in the Plan, the Debtor and Reorganized Debtor reserve the right to object to the amount or classification of any Administrative Claim or Claim in Classes 1, 2, 3, 5, 6, and 7 under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is or may become subject to an objection. Any Holder of a Claim that is or may become subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

9.     **The Effective Date May Not Occur.**

As more fully set forth in <u>Article IX</u> of the Plan, the Effective Date is subject to a number of conditions precedent. If such conditions precedent are not met or waived, the Effective Date will not take place. Although the Debtor believes that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur.

10.    **Contingencies May Affect Votes of the Voting Classes to Accept or Reject the Plan.**

The distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies. The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims under the Plan, will not affect the

validity of the vote taken by the Voting Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

11. **The Chapter 11 Case Could Consume a Substantial Portion of the Time and Attention of the Debtor's Management**

Although the Plan is designed to minimize the length of the Debtor's chapter 11 proceedings, it is impossible to predict with certainty the amount of time that the Debtor may spend in bankruptcy or to assure parties in interest that the Plan will be confirmed. The requirements of the Chapter 11 Case could consume a substantial portion of the Debtor's management's time and attention and leave them with less time to devote to the operations and orderly wind down of its business. This diversion of management's attention may have a material adverse effect on the Debtor's financial condition, particularly if the Chapter 11 Case is protracted.

12. **Conversion into Chapter 7 Case.**

If the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, a trustee would be appointed or elected to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. *See* Section IV.B. herein, as well as the Liquidation Analysis attached hereto as <u>Exhibit C</u>, for a discussion of the effects that a chapter 7 liquidation would have on the recoveries of Holders of Claims and Equity Interests. No party in interest would recover more in a case under chapter 7 than in a case under chapter 11.

13. **Releases, Injunctions, and Exculpation Provisions May Not Be Approved.**

The Plan provides for certain releases, injunctions, and exculpations. However, such releases, injunctions, and exculpations are subject to objection by parties in interest and may not be approved. If the releases are not approved, certain Released Parties may not support and may object to the Plan.

B. **RISK FACTORS THAT MAY AFFECT THE VALUE OF THE REORGANIZED DEBTOR UNDER THE PLAN AND/OR RECOVERIES UNDER THE PLAN**

1. **The Valuation of the Reorganized Debtor May Not Be Adopted by the Bankruptcy Court.**

Parties in interest in the Chapter 11 Case may oppose confirmation of the Plan by alleging that the value of the Reorganized Debtor is higher than estimated by the Debtor and that the Plan thereby improperly limits or extinguishes their rights to recoveries under the Plan. At the Confirmation Hearing, the Bankruptcy Court will hear evidence regarding the views of the Debtor and opposing parties, if any, with respect to the valuation of the Reorganized Debtor. Based on that evidence, the Bankruptcy Court will determine the appropriate valuation for the Reorganized Debtor for purposes of the Plan.

2. **The Estimated Valuation of the Reorganized Debtor and the Estimated Recoveries to Holders of Allowed Claims Are Not Intended to Represent the Private or Public Sale Values.**

The Debtor's estimated recoveries to Holders of Allowed Claims are not intended to represent the private or public sale values of the Reorganized Debtor's securities. The estimated recoveries are based on numerous assumptions (the realization of many of which is beyond the control of Reorganized Debtor), including, without limitation: (a) the successful reorganization of the Debtor; (b) an assumed date for the occurrence of the Effective Date; and (c) the Debtor's ability to maintain adequate liquidity to fund operations.

## C. RISK FACTORS THAT COULD NEGATIVELY IMPACT THE DEBTOR AND REORGANIZED DEBTOR

1. **Fluctuation of the currencies in which the Debtor's and Reorganized Debtor's conduct operations could adversely affect financial condition, results of operations and Cash flows.**

The Debtor's and Reorganized Debtor's reporting currency is the U.S. dollar. A portion of assets and liabilities are denominated in currencies other than the U.S. dollar, primarily the British pound. In the Debtor's Consolidated Financial Statements, they translate local currency financial results into U.S. dollars based on the exchange rates prevailing during the reporting period. During times of a strengthening U.S. dollar, the reported revenues and earnings of its international operations will be reduced because the local currencies will translate into fewer U.S. dollars. This could have a material adverse effect on the financial condition of the business, results of operations and cash flow. In addition, changes in the value, relative to the U.S. dollar, of the various currencies in which the Debtor's and Reorganized Debtor's conduct operations, including the British pound, may result in significant changes in the indebtedness of non-U.S. subsidiaries.

2. **The Debtor and Reorganized Debtor may incur additional tax expense as a result of changes to tax laws, regulations and evolving interpretations thereof.**

The Debtor and Reorganized Debtor are subject to the tax laws, regulations, and legal decisions in various tax jurisdictions. The Debtor's worldwide tax provision is based in part on many material judgments and interpretations of these bodies of law. Tax authorities in the various jurisdictions may not agree with the Debtor's judgments and interpretations and may assess additional taxes which could result in material changes to the Debtor's and Reorganized Debtor's tax liabilities and/or significant legal and consulting fees in defense thereof. Additionally, tax laws, regulations and legal precedents may change over time resulting in material changes to the Debtor's and Reorganized Debtor's tax provisions and deferred tax positions. Changes to tax laws, regulations, and legal precedents could contain statutory changes or interpretations that are inconsistent with the Company's application of the law in the absence of such changes and could result in material adjustments to tax liabilities.

3. **Estimates and assumptions that the Debtor and Reorganized Debtor make in accounting for its results from operations are dependent on future results, involve significant judgments, may be imprecise and may differ materially from actual results.**

Several estimates and assumptions are made that affect the accounting for and recognition of assets, liabilities, revenues and expenses. These estimates and assumptions must be made due

57

to certain information used in preparation of the Debtor's financial statements that is dependent on future events, cannot be calculated with a high degree of precision from data available or is not capable of being readily calculated based on generally accepted methodologies. The Debtor believes that accounting for goodwill, intangible assets, contingencies and litigation, and income taxes involves significant judgments and estimates used in the preparation of its Consolidated Financial Statements. Actual results for all estimates could differ materially from the estimates and assumptions that the Debtor uses, which could have a material adverse effect on its financial condition and results of operations.

**D.      RISKS ASSOCIATED WITH FORWARD-LOOKING STATEMENTS**

> **1.      The Financial Information Contained Herein Is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit Was Performed.**

> **The financial information contained in this Disclosure Statement has not been audited.** In preparing this Disclosure Statement, the Debtor relied on financial data derived from its books and records that was available at the time of such preparation. Although the Debtor has used its reasonable business judgment to ensure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtor believes that such financial information fairly reflects the financial condition of the Debtor, the Debtor is unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

> **2.      Financial Projections and Other Forward-Looking Statements Are Not Assured, Are Subject to Inherent Uncertainty Due to the Numerous Assumptions Upon Which They Are Based and, as a Result, Actual Results May Vary.**

> This Disclosure Statement contains various projections concerning the financial results of the Reorganized Debtor's business, including the Financial Projections, which are, by their nature, forward-looking, and which projections are necessarily based on certain assumptions and estimates. Should any or all of these assumptions or estimates ultimately prove to be incorrect, the actual future experiences of the Reorganized Debtor may turn out to be different from the Financial Projections.

> Specifically, the projected financial results contained in this Disclosure Statement reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtor, some of which may not materialize, including, without limitation, assumptions concerning the timing of confirmation and consummation of the Plan in accordance with its terms and general business and economic conditions.

> DUE TO THE INHERENT UNCERTAINTIES ASSOCIATED WITH PROJECTING FINANCIAL RESULTS GENERALLY, THE PROJECTIONS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD <u>NOT</u> BE CONSIDERED ASSURANCES OR GUARANTEES OF THE AMOUNT OF FUNDS OR THE AMOUNT OF CLAIMS THAT MAY BE ALLOWED IN THE VARIOUS CLASSES. WHILE THE DEBTOR BELIEVES THAT THE FINANCIAL PROJECTIONS CONTAINED IN THIS DISCLOSURE STATEMENT ARE REASONABLE, THERE CAN BE NO ASSURANCE THAT THEY WILL BE REALIZED.

## E.  DISCLAIMERS

### 1.  The Information Contained Herein Is for Soliciting Votes Only.

The information contained in this Disclosure Statement is for purposes of soliciting votes on the Plan and may not be relied upon for any other purpose.

### 2.  This Disclosure Statement Was Not Approved by the SEC.

This Disclosure Statement has not been filed with the SEC or any state regulatory authority. Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

### 3.  The Debtor Relied on Certain Exemptions from Registration Under the Securities Act.

This Disclosure Statement has been prepared pursuant to section 1125 of the Bankruptcy Code and Rule 3016(b) of the Federal Rules of Bankruptcy Procedure and is not necessarily in accordance with the requirements of federal or state securities laws or other similar laws.  The Existing AIG FP Interests will remain effective and outstanding on the Effective Date and will continue to be owned and held by the Parent without registration under the Securities Act or any similar federal, state, or local law in reliance on section 1145(a) of the Bankruptcy Code.  To the maximum extent permitted by section 1145 of the Bankruptcy Code, the Securities Act and other applicable nonbankruptcy law, the distribution and issuance, as applicable, of the Plan Securities and Documents will be exempt from registration under the Securities Act by virtue of section 1145 of the Bankruptcy Code or section 4(a)(2) of the Securities Act.

### 4.  This Disclosure Statement Contains Forward-Looking Statements.

This Disclosure Statement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology.  The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.  The Liquidation Analysis, distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted.  Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

### 5.  No Legal or Tax Advice Is Provided to You by this Disclosure Statement.

__This Disclosure Statement is not legal advice to you.__  The contents of this Disclosure Statement should not be construed as legal, business or tax advice.  Each Holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal,

tax and other matters concerning his or her Claim or Equity Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or whether object to confirmation of the Plan.

6.     **No Admissions Are Made by This Disclosure Statement.**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, the Reorganized Debtor, Holders of Allowed Claims or Allowed Equity Interests or any other parties in interest.

7.     **No Reliance Should be Placed on any Failure to Identify Litigation Claims or Projected Objections.**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in this Disclosure Statement. The Debtor or the Reorganized Debtor may seek to investigate, file and prosecute Claims or Causes of Action and may object to Claims after the Confirmation Date or Effective Date of the Plan irrespective of whether this Disclosure Statement identifies such Claims, Causes of Action or objections to Claims.

8.     **Nothing Herein Constitutes a Waiver of any Right to Object to Claims or Recover Transfers and Assets.**

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtor or the Reorganized Debtor (or any party in interest, as the case may be) to object to that Holder's Allowed Claim or recover any preferential, fraudulent or other voidable transfer or assets, regardless of whether any Claims or Causes of Action of the Debtor or its Estate are specifically or generally identified herein.

9.     **The Information Used Herein Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors.**

Counsel to and other advisors retained by the Debtor have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtor have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

10.     **The Potential Exists for Inaccuracies, and the Debtor Has No Duty to Update.**

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtor has used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtor nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Disclosure

US-DOCS\135657088

Statement. Further, although the Debtor may subsequently update the information in this Disclosure Statement, the Debtor has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

11. **No Representations Made Outside this Disclosure Statement Are Authorized.**

No representations concerning or relating to the Debtor, the Chapter 11 Case or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to counsel to the Debtor and the United States Trustee.

# VII.
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.    363 SALE ALTERNATIVE**

Concurrently with its solicitation of votes on the Plan, the Debtor is conducting a marketing process for a 363 Sale. The Debtor intends to file one or more motions with the Bankruptcy Court requesting approval of (a) bidding procedures in connection with the proposed 363 Sale, and (b) the consummation of the 363 Sale. In the event that the Debtor does not receive the requisite votes to confirm the Plan or otherwise fails to meet the requirements for confirmation under section 1129 of the Bankruptcy Code, the Debtor intends to pursue and consummate the 363 Sale. The Debtor anticipates that Parent will bid at such auction, and if Parent is determined to be the highest and best bidder, the Debtor will seek Court approval of the consummation of the 363 Sale to Parent in exchange for the satisfaction, settlement, discharge, and release of a portion of the Parent's Prepetition Revolving Loan Claim. The Debtor further reserves all rights to object to and seek the disallowance of the Subordinated Claims in their entirety if Confirmation and Consummation of the Plan does not occur.

**B.    LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

If the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, a trustee would be elected or appointed to liquidate the Debtor's assets. A discussion of the effect a chapter 7 liquidation would have on the recovery of Holders of Claims is set forth in Section V.B herein, titled "Statutory Requirements for Confirmation of the Plan." The Debtor believes that liquidation under chapter 7 would result in (i) smaller or equal distributions being made to creditors entitled to a recovery than those provided for in the Plan based on the liquidation value of the Debtor's assets and because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee, (ii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of unexpired leases and executory contracts in connection with the cessation of the Debtor's operations, and (iii) the failure to realize the greater value of all of the Debtor's assets that would be obtained through continued operations and an orderly wind down. The statutory priority for distributions to holders of claims, including the Bankruptcy Code

61

provision enforcing subordination agreements, applies equally in chapter 7 as it does in chapter 11.

## C.  FILING OF AN ALTERNATIVE PLAN OF REORGANIZATION

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different chapter 11 plan of reorganization. Such a plan might involve different recoveries to Holders of Claims and Interests, including recoveries to certain creditors that are materially less than those recoveries contained in the Plan. Absent consent from Parent, the Subordinated Creditors are not entitled to recover unless and until, among other things, Parent's Prepetition Revolving Loan Claim is satisfied in full.

The Debtor believes that the Plan will enable the Debtor to emerge from chapter 11 successfully and expeditiously and will allow its creditors to realize the highest recoveries under the circumstances. The prolonged continuation of the Chapter 11 Case is likely to adversely affect the Debtor's business and recoveries to creditors. So long as the Chapter 11 Case continues, senior management of the Debtor will be required to spend a significant amount of time and effort dealing with the Debtor's reorganization instead of focusing exclusively on its business. In addition, so long as the Chapter 11 Case continues, the Debtor will be required to incur substantial costs for professional fees and other expenses associated with the proceedings. Under these circumstances, it is unlikely the Debtor could successfully reorganize without material decreases in recoveries for creditors.

**VIII.**
**CERTAIN U.S. FEDERAL INCOME**
**TAX CONSEQUENCES OF THE PLAN**

## A.  INTRODUCTION

The following discussion summarizes certain U.S. federal income tax consequences expected to result from the consummation of the Plan. This discussion is only for general information purposes and only describes the expected tax consequences to the Debtor and to Holders of Class 7 Claims (the "**Holders**"). This discussion does not address the expected tax consequences to the Holder of the Prepetition Revolving Loan Claims because the Parent, as the sole Holder of such Claims, is represented by its own tax advisors. This discussion is not a complete analysis of all potential U.S. federal income tax consequences and does not address any tax consequences arising under any U.S. state, U.S. local or non-U.S. tax laws or U.S. federal estate or gift tax laws. This discussion is based on the U.S. Internal Revenue Code of 1986, as amended (the "**Tax Code**"), regulations promulgated thereunder by the U.S. Department of the Treasury ("**Treasury Regulations**"), judicial decisions, and published rulings and administrative pronouncements of the U.S. Internal Revenue Service (the "**IRS**"), all as in effect on the date of this Disclosure Statement. These authorities may change, possibly retroactively, resulting in U.S. federal income tax consequences different from those discussed below. No ruling has been or will be sought from the IRS, and no legal opinion of counsel will be rendered, with respect to the matters discussed below. There can be no assurance that the IRS will not take a contrary position

US-DOCS\135657088

regarding the U.S. federal income tax consequences resulting from the consummation of the Plan or that any contrary position would not be sustained by a court.

This discussion assumes that each Holder is an individual who is a citizen or resident of the United States for U.S. federal income tax purposes. In addition, this discussion assumes that the Debtor's obligations under the Prepetition Revolving Loan Claims will be treated as debt for U.S. federal income tax purposes and that the DCP Plans comply with the requirements of Section 409A of the Tax Code. Furthermore, this discussion assumes that the consummation of the Plan will not result in an ownership change of the Debtor for purposes of Section 382 of the Tax Code.

This discussion does not address all U.S. federal income tax considerations that may be relevant to a particular Holder in light of that Holder's particular circumstances, including the impact of the tax on net investment income imposed by Section 1411 of the Tax Code. In addition, it does not address considerations relevant to Holders subject to the alternative minimum tax or other special rules under the U.S. federal income tax laws. Furthermore, except where specifically stated, this discussion does not address U.S. federal income tax considerations that may be relevant to the Debtor under the application of the consolidated return rules.

**HOLDERS SHOULD CONSULT THEIR TAX ADVISORS REGARDING THE U.S. FEDERAL INCOME TAX CONSEQUENCES TO THEM OF THE CONSUMMATION OF THE PLAN, AS WELL AS ANY TAX CONSEQUENCES ARISING UNDER ANY U.S. STATE, U.S. LOCAL OR NON-U.S. TAX LAWS, OR ANY OTHER U.S. FEDERAL TAX LAWS. THE DEBTOR AND THE REORGANIZED DEBTOR SHALL NOT BE LIABLE TO ANY PERSON WITH RESPECT TO THE TAX LIABILITY OF A HOLDER OR ITS AFFILIATES.**

B.      **U.S. FEDERAL INCOME TAX CONSEQUENCES TO THE DEBTOR**

The full satisfaction, settlement, discharge and release of the Prepetition Revolving Loan Claims in exchange for retaining the Existing AIG FP Interests pursuant to the Plan would be treated as a contribution by the Parent of the debt underlying such Claims to the Debtor's capital, under which the Debtor would be treated as having satisfied the relevant indebtedness with an amount of money equal to the Parent's adjusted basis in the indebtedness for U.S. federal income tax purposes.

Under this treatment, the Debtor generally should realize cancellation of indebtedness ("**COD**") income to the extent the adjusted issue price of the indebtedness underlying the Prepetition Revolving Loan Claims discharged pursuant to the Plan exceeds the amount by which the Debtor is deemed to have satisfied such indebtedness, as described above.

Under Section 108 of the Tax Code, COD income realized by a debtor will generally be excluded from gross income if the discharge of debt occurs in a case brought under the Bankruptcy Code, the debtor is under the court's jurisdiction in such case and the discharge is granted by the court or is pursuant to a plan approved by the court (the "**Bankruptcy Exception**"). Under Section 108(b) of the Tax Code, a debtor that excludes COD income from gross income under the Bankruptcy Exception generally must reduce certain tax attributes by the amount of the excluded COD income. Attributes subject to reduction include net operating losses ("**NOLs**"), NOL

carryforwards and certain other losses, credits and carryforwards, and the debtor's tax basis in its assets (including stock of subsidiaries). The reduction in tax attributes occurs only after the taxable income (or loss) for the taxable year of the debt discharge has been determined.

Because the Debtor is a member of a consolidated group, the determination of COD income (if any) realized by the Debtor in connection with the discharge of Prepetition Revolving Loan Claims, the treatment of such COD income (if any) and any effect on the Debtor's tax attributes may differ due to the application of the consolidated return rules. For example, the Bankruptcy Exception generally would not be available under Treasury Regulations Section 1.1502-13(g) for the COD income arising from the discharge of Prepetition Revolving Loan Claims, in which case such COD income would be includable in the Debtor's gross income and no reduction in tax attributes would be made. The amount of COD income that would be realized by the Debtor in connection with the discharge of the Prepetition Revolving Loan Claims is not expected to be material.

The U.S. federal income tax considerations relating to the Plan are complex and subject to uncertainties. No assurance can be given that the IRS will agree with the Debtor's interpretation of the tax rules applicable to, or tax positions taken with respect to, the transactions undertaken to effect the Plan. If the IRS were to successfully challenge any such interpretation or position, the Debtor may recognize additional taxable income for U.S. federal income tax purposes.

## C.    U.S. FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLASS 7 CLAIMS

The U.S. federal income tax consequences to a Holder may depend on a number of factors, including the nature of the Class 7 Claim, the Holder's method of accounting, the Holder's own particular circumstances, characterizations of Cash payments received or deemed received by the Holder and how Cash payments are allocated among different characterizations. Because each Holder's particular circumstances may differ, Holders should consult their tax advisors to determine how the consummation of the Plan affects them for U.S. federal income tax purposes based on their particular circumstances.

Among other things, the U.S. federal income tax consequences of the consummation of the Plan may depend on the nature of payments under the DCP Plans pursuant to which the Class 7 Claims arose. Because Class 7 Claims arose in connection with the Holders' former employment by, and provision of personal services to, the Debtor, payment of Cash on the Class 7 Claims generally will be treated as payment of employee compensation for services performed by applicable Holders and a payment by the Debtor of employment taxes (if any) related to such compensation. As a result, payment of Cash on the Class 7 Claims may be subject to applicable employment tax withholding or deduction (including, but not limited to, both the employee and employer portions of applicable employment taxes, as described in Article VII.E of the Plan). The Class 7 Cash Pool will be inclusive of all taxes imposed with respect to the payments to DCP Claimants, including, but not limited to, any employer portion of the employment taxes due with respect to payments on the Class 7 Claims. In addition, if a portion of Cash payment to a Holder is characterized as interest income for U.S. federal income tax purposes (for example, if a portion of the payment on a Class 7 Claim is attributable to implied interest based on the timing of the allowance of the Claim and the receipt of payment), such portion generally will be taxable to the Holder as ordinary income at the time such portion is received. The U.S. federal income tax

consequences of the consummation of the Plan may also depend on whether the item to which the relevant payment relates has previously been included in the Holder's gross income or has previously been subject to a loss or bad debt deduction.

The payment of Cash on the Class 7 Claims under the Plan is subject to all applicable information reporting and withholding, including withholding of employment taxes, if applicable. As a condition of making any distribution to any Holder under the Plan, a Holder will be required to provide a duly completed and executed copy of IRS Form W-4 and IRS Form W-9 and any other applicable documentation.

**THE FOREGOING DISCUSSION OF U.S. FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. EACH HOLDER SHOULD CONSULT ITS TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, AND LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN. NEITHER THE DEBTOR, THE REORGANIZED DEBTOR NOR THEIR PROFESSIONALS WILL HAVE ANY LIABILITY TO ANY PERSON OR HOLDER ARISING FROM OR RELATED TO THE U.S. FEDERAL, STATE, AND LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.**

US-DOCS\135657088

## RECOMMENDATION

In the opinion of the Debtor, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger distribution to Holders of Allowed Claims than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims than that which is proposed under the Plan. Accordingly, the Debtor recommends that Holders of Claims entitled to vote on the Plan support confirmation of the Plan and vote to accept the Plan.

Respectfully submitted,

*/s/ William C. Kosturos*

AIG FINANCIAL PRODUCTS CORP.

By:     William C. Kosturos

Title:   Chief Restructuring Officer

Dated:  December 14, 2022

Prepared by:

| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **LATHAM & WATKINS LLP** |
|---|---|
| Michael R. Nestor (No. 3526) | George A. Davis (*pro hac vice* admission pending) |
| Kara Hammond Coyle (No. 4410) | Keith A. Simon (*pro hac vice* admission pending) |
| Shane M. Reil (No. 6195) | David Hammerman (*pro hac vice* admission pending) |
| Catherine C. Lyons (No. 6854) | Annemarie V. Reilly (*pro hac vice* admission pending) |
| Rodney Square | Madeleine C. Parish (*pro hac vice* admission pending) |
| 1000 North King Street | 1271 Avenue of the Americas |
| Wilmington, Delaware 19801 | New York, New York 10020 |
| Telephone: (302) 571-6600 | Telephone: (212) 906-1200 |
| Facsimile: (302) 571-1253 | Facsimile: (212) 751-4864 |

*Proposed Co-Counsel for the Debtor and Debtor-in-Possession*

US-DOCS\135657088

# Exhibit A

## Plan of Reorganization

THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                        :
In re:                                  :      Chapter 11
                                        :
AIG FINANCIAL PRODUCTS CORP.,[1]        :      Case No. 22-11309 (_____)
                                        :
                                        :
              Debtor.                   :
                                        :
------------------------------------------------------------ x
```

---

**PLAN OF REORGANIZATION
FOR AIG FINANCIAL PRODUCTS CORP.
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Shane M. Reil (No. 6195)
Catherine C. Lyons (No. 6854)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**LATHAM & WATKINS LLP**
George A. Davis (*pro hac vice* admission pending)
Keith A. Simon (*pro hac vice* admission pending)
David Hammerman (*pro hac vice* admission pending)
Annemarie V. Reilly (*pro hac vice* admission pending)
Madeleine C. Parish (*pro hac vice* admission pending)
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

*Proposed Co-Counsel for Debtor and Debtor-in-Possession*

Dated:  December 14, 2022

---

[1]    The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number, is: AIG Financial Products Corp. (9410).  The Debtor's address is 50 Danbury Road, Wilton, Connecticut 06897.

# TABLE OF CONTENTS

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS ..................................................................................1
    A.    Rules of Interpretation; Computation of Time.......................................1
    B.    Defined Terms .......................................................................................2

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS ......................................11
    A.    Administrative Claims ...........................................................................11
    B.    Priority Tax Claims................................................................................12

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS..........................................................................13
    A.    Summary ................................................................................................13
    B.    Classification and Treatment of Claims and Equity Interests................14
    C.    Special Provision Governing Unimpaired Claims .................................18
    D.    Elimination of Vacant Classes ..............................................................18

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN .........................................19
    A.    Presumed Acceptance of Plan................................................................19
    B.    Deemed Rejection of Plan .....................................................................19
    C.    Voting Classes .......................................................................................19
    D.    Acceptance by Impaired Class of Claims ..............................................19
    E.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................................................................................19
    F.    Votes Solicited in Good Faith................................................................19

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .........................................20
    A.    Global Settlement...................................................................................20
    B.    Continued Corporate Existence..............................................................20
    C.    Vesting of Assets in the Reorganized Debtor Free and Clear of Liens and Claims ............................................................................................20
    D.    Exit Facility Credit Agreement..............................................................21
    E.    Existing AIG FP Interests .....................................................................21
    F.    Plan Securities and Related Documentation; Exemption from Securities Laws...................................................................................................21
    G.    Release of Liens and Claims..................................................................22
    H.    Organizational Documents of the Reorganized Debtor .........................23
    I.    Directors and Officers of the Reorganized Debtor ...............................23
    J.    Corporate Action....................................................................................23
    K.    Cancellation of Notes and Instruments..................................................24
    L.    Sources of Cash for Plan Distributions..................................................25
    M.    Continuing Effectiveness of Final Orders..............................................25
    N.    Funding and Use of Professional Fee Reserve ......................................25

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................................................................................26
- A.    Assumption of Executory Contracts and Unexpired Leases...................................26
- B.    Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases................................................................................................................27
- C.    Rejection of Executory Contracts and Unexpired Leases.....................................28
- D.    Claims on Account of the Rejection of Executory Contracts or Unexpired Leases................................................................................................................29
- E.    D&O Liability Insurance Policies........................................................................29
- F.    Indemnification Provisions ................................................................................30
- G.    Extension of Time to Assume or Reject ..............................................................30
- H.    Modifications, Amendments, Supplements, Restatements, or Other Agreements .....................................................................................................30

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS.........................................31
- A.    Distributions for Claims Allowed as of the Effective Date ...................................31
- B.    No Postpetition Interest on Claims .....................................................................31
- C.    Distributions by the Reorganized Debtor or Other Applicable Distribution Agent................................................................................................................31
- D.    Delivery and Distributions; Undeliverable or Unclaimed Distributions ..............31
- E.    Compliance with Tax Requirements....................................................................33
- F.    Allocation of Plan Distributions Between Principal and Interest .........................34
- G.    Means of Cash Payment.....................................................................................34
- H.    Timing and Calculation of Amounts to Be Distributed .......................................34
- I.    Setoffs .............................................................................................................34

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ........................................................35
- A.    Resolution of Disputed Claims ...........................................................................35
- B.    No Distributions Pending Allowance ..................................................................37
- C.    Distributions on Account of Disputed Claims Once They Are Allowed................37
- D.    Reserve for Disputed Claims ..............................................................................37

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN .............................................................................37
- A.    Conditions Precedent to Confirmation................................................................37
- B.    Conditions Precedent to Consummation..............................................................37
- C.    Waiver of Conditions.........................................................................................38
- D.    Effect of Non-Occurrence of Conditions to Confirmation or Consummation ...................................................................................................38

ARTICLE X. RELEASE, DISCHARGE, INJUNCTION AND RELATED PROVISIONS ...........................................................................................................39
- A.    General..............................................................................................................39
- B.    **Release by the Debtor and its Estate** ................................................................39
- C.    Waiver of Statutory Limitations on Debtor Release.............................................41
- D.    **Discharge of Claims and Equity Interests** .......................................................41

E.      **Exculpation** ........................................................................................................42
F.      Preservation of Causes of Action ................................................................42
G.      **Injunction** ..........................................................................................................43
H.      **Binding Nature Of Plan** ..................................................................................44
I.       Released and Settled Claims ........................................................................44
J.      Protection Against Discriminatory Treatment .......................................45
K.      Integral Part of Plan ....................................................................................45

ARTICLE XI. RETENTION OF JURISDICTION ...........................................................45

ARTICLE XII. MISCELLANEOUS PROVISIONS ..........................................................47
A.      Substantial Consummation ..........................................................................47
B.      Payment of Statutory Fees; Post-Effective Date Fees and Expenses ..................47
C.      Conflicts .........................................................................................................47
D.      Modification of Plan ....................................................................................48
E.      Revocation or Withdrawal of Plan ..............................................................48
F.      Successors and Assigns ................................................................................48
G.      Reservation of Rights ..................................................................................48
H.      Further Assurances .......................................................................................49
I.       Severability ...................................................................................................49
J.      Service of Documents ..................................................................................50
K.      Exemption from Transfer Taxes Pursuant to Section 1146(a) of the
Bankruptcy Code ..........................................................................................51
L.      Governing Law ............................................................................................51
M.      Tax Reporting and Compliance ...................................................................51
N.      Schedules .......................................................................................................51
O.      No Strict Construction ..................................................................................51
P.      Entire Agreement .........................................................................................52
Q.      Closing of Chapter 11 Case .........................................................................52
R.      2002 Notice Parties .....................................................................................52

AIG Financial Products Corp., as debtor and debtor-in-possession (the "**Debtor**"), proposes the following plan of reorganization (as has been, or may be, supplemented or amended from time to time, the "**Plan**") for the resolution of the outstanding Claims (as defined below) against and Equity Interests (as defined below) in the Debtor.  The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code (as defined below).  Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a summary and analysis of this Plan.  Other agreements and documents that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Schedules will be filed with the Bankruptcy Court (as defined below).  All such Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein.  The Debtor reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

**ARTICLE I.**

**RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS**

A.      *Rules of Interpretation; Computation of Time*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced item shall be substantially in that form or substantially on those terms and conditions; (c) except as otherwise provided herein, any reference herein to an existing or to be Filed contract, lease, instrument, release, indenture, or other agreement or document shall mean as it may be amended, modified or supplemented from time to time; (d) any reference to a Person or an Entity as a Holder of Claim or Equity Interest includes that Person's or Entity's successors and assigns; (e) unless otherwise specified, all references herein to "Articles", "Sections", "Exhibits" and "Plan Schedules" are references to Articles, Sections, Exhibits and Plan Schedules hereof or hereto; (f) unless otherwise stated, the words ''herein,'' "hereof," "hereunder" and ''hereto'' refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, indenture, or other agreement or document entered into in connection with this Plan and except as expressly provided in <u>Article XII.C</u> of this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan; (j) references to a specific article, section, or subsection of any statute, rule, or regulation expressly referenced herein shall, unless otherwise specified, include any amendments to or successor provisions of such article, section, or subsection; (k) any term used in

capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's Case Management and Electronic Filing system; and (m) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated. Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to "the Debtor" or to "the Reorganized Debtor" shall mean "the Debtor and the Reorganized Debtor", as applicable, to the extent the context requires.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

B.     *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

"*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Case that are Allowed under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) any actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Professional Fee Claims and any other compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred on or after the Petition Date and through the Effective Date; (c) all fees and charges assessed against the Estate under section 1930, chapter 123, of title 28, United States Code, and any interest accruing thereon pursuant to 31 U.S.C. § 3717; and (d) the Cure Claim Amounts.

"*Affiliate*" means an "affiliate", as defined in section 101(2) of the Bankruptcy Code.

"*Allowed*" means (i) any Claim or Equity Interest as to which the Debtor or the Reorganized Debtor, as applicable, and the Holder thereof or the Bankruptcy Court, or another court of competent jurisdiction, has determined such amount by Final Order; (ii) any Claim that is listed in the Schedules as liquidated, non-contingent and undisputed; or (iii) any Claim or Equity Interest expressly allowed hereunder; provided, however, that notwithstanding the foregoing, (x) unless expressly waived by this Plan or Allowed in a specific amount by this Plan, the Allowed amount of Claims and Equity Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including section 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Debtor or the Reorganized Debtor, as applicable, shall retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise Unimpaired pursuant to this Plan.

US-DOCS\135656265

"*Amended/New Organizational Documents*" means, as applicable, the amended and restated or new applicable organizational documents of Reorganized Debtor, in substantially the form Filed with the Plan Supplement and any supplements or amendments thereto.

"*Avoidance Actions*" means any and all avoidance, recovery, subordination or similar actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under chapter 5 of the Bankruptcy Code.

"*Ballots*" means the ballots distributed to Holders of Impaired Claims entitled to vote on this Plan for the purpose of indicating their acceptance or rejection of this Plan, which were approved by the Disclosure Statement Order.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or any other court having jurisdiction over the Chapter 11 Case.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Case.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

"*Chapter 11 Case*" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court being administered under Case No. 22-11309 ([●]).

"*Claim*" means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Debtor.

"*Claims Register*" means the official register of Claims maintained by the Voting and Claims Agent.

"*Class*" means a category of Holders of Claims or Equity Interests as set forth in <u>Article III</u> hereof pursuant to section 1122(a) of the Bankruptcy Code.

"*Class 7 Cash Pool*" means Cash in an aggregate amount equal to $1,000,000.

"*Collateral*" means any property or interest in property of the Debtor's Estate that is subject to a valid and enforceable Lien to secure a Claim.

"*Commission*" means the U.S. Securities and Exchange Commission.

"*Confirmation*" means the occurrence of the Confirmation Date, subject to all conditions specified in <u>Article IX</u> of this Plan having been satisfied or waived pursuant to <u>Article IX</u> of this Plan.

"*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court in the Chapter 11 Case.

"*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"*Consummation*" means the occurrence of the Effective Date.

"*Cure Claim Amount*" has the meaning set forth in <u>Article VI.B</u> of this Plan.

"*D&O Liability Insurance Policies*" means all insurance policies (including, without limitation, that certain directors' and officers' liability insurance policy purchased by the Debtor prior to the Petition Date, any general liability policies, any errors and omissions policies, and, in each case, any agreements, documents, or instruments related thereto) issued at any time and providing coverage for liability of the Debtor's directors, managers, and officers.

"*DCP Claimant*" means any Holder of a Subordinated Claim.

"*DCP Plans*" means, collectively, (i) the AIG Financial Products Corp. Deferred Compensation Plan dated December 29, 2008, (ii) the AIG Financial Products Corp. 2007 Special Incentive Plan dated December 29, 2008, and (iii) the AIG Financial Products Corp. 2008 Employee Retention Plan dated December 1, 2007 (each as amended, supplemented or modified from time to time).

"*Debtor*" means the above-captioned debtor and debtor-in-possession.

"*Debtor Release*" has the meaning set forth in <u>Article X.B</u> hereof.

"*Debtor Releasing Parties*" has the meaning set forth in <u>Article X.B</u> hereof.

US-DOCS\135656265

"*Disclosure Statement*" means that certain *Disclosure Statement for the Plan Of Reorganization For AIG Financial Products Corp. Under Chapter 11 Of The Bankruptcy Code*, dated as of December 14, 2022 (as amended, supplemented, or modified from time to time) that was approved by the Disclosure Statement Order.

"*Disclosure Statement Order*" means that certain *Order (A) Approving the Disclosure Statement; (B) Establishing the Voting Record Date, Voting Deadline and Other Dates; (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan; (D) Approving the Manner and Forms of Notice and Other Related Documents; and (E) Granting Related Relief* entered by the Bankruptcy Court in the Chapter 11 Case, as such order may be amended, supplemented, or modified from time to time.

"*Disputed Claim*" means any Claim or any portion thereof, that has not been Allowed, but has not been disallowed pursuant to this Plan or a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

"*Distribution Agents*" means (a) the Reorganized Debtor or any party designated by the Reorganized Debtor to serve as distribution agent under this Plan, or (b) with respect to distributions on account of Class 7 Subordinated Claims only, counsel to the DCP Claimants or any party designated by the DCP Claimants to serve as distribution agent for Class 7 Subordinated Claims.

"*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the later of the Effective Date or the occurrence of the applicable bar date as established by the Bankruptcy Court.

"*Effective Date*" means the first Business Day on which the conditions specified in <u>Article IX</u> of this Plan have been satisfied or waived in accordance with the terms of <u>Article IX</u>.

"*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

"*Equity Interest*" means any Equity Security in the Debtor, including, without limitation, all issued, unissued, authorized or outstanding shares of stock and other ownership interests in each case, as in existence immediately prior to the Effective Date.

"*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

"*Estate*" means the estate of the Debtor created under section 541 of the Bankruptcy Code.

"*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, as now in effect or hereafter amended, and any similar federal, state or local law.

"*Exculpated Parties*" means, collectively, the Debtor, the Reorganized Debtor, and, in each case, their respective current and former officers, directors, principals, employees, members, managers, attorneys, financial advisors, accountants, and other retained professionals that served in such capacity at any time on or after the Petition Date.

US-DOCS\135656265

"*Exculpation*" means the exculpation provision set forth in <u>Article X.E</u> hereof.

"*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Exhibit*" means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

"*Existing AIG FP Interests*" means the Equity Interests in the Debtor, as in existence immediately prior to the Effective Date.

"*Exit Facility*" means the revolving loan facility contemplated under the Exit Facility Credit Agreement.

"*Exit Facility Credit Agreement*" means the credit agreement, in substantially the form Filed with the Plan Supplement.

"*Exit Facility Loans*" means the loans made under or in connection with the Exit Facility Credit Agreement.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

"*Final Order*" means an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

"*General Unsecured Claim*" means any Claim that is not a/an: Administrative Claim (including Professional Fee Claims); Priority Tax Claim; Other Priority Claim; Other Secured Claim; Secured Tax Claim; Prepetition Revolving Loan Claim; Intercompany Claim; or Subordinated Claim.

"*Global Settlement*" means that certain settlement incorporated into and described in <u>Article V.A</u> of this Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

"*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

"*Holder*" means a Person or an Entity holding a Claim or Equity Interest.

"*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"*Indemnification Provisions*" means, collectively, each of the provisions in existence immediately prior to the Effective Date (whether in bylaws, certificates of formation or incorporation, board resolutions, employment contracts, or otherwise) whereby the Debtor agrees to indemnify, reimburse, provide contribution or advance fees and expenses to or for the benefit of, defend, exculpate, or limit the liability of, any Indemnified Party.

"*Indemnified Parties*" means the Debtor's current and former directors, officers, and managers in their respective capacities as such, and solely to the extent that such Person was serving in such capacity on or any time after the Petition Date.

"*Intercompany Claim*" means any Claim against the Debtor held by a non-Debtor Affiliate, other than an Administrative Claim, or a Prepetition Revolving Loan Claim.

"*Insurance Contract*" means all insurance policies and related agreements of indemnity that have been issued at any time to, or provide coverage to, the Debtor and all agreements, documents, or instruments relating thereto.

"*Insurer*" means any company or other entity that issued any Insurance Contract, and any respective predecessors and/or affiliates thereof.

"*IRC*" means the Internal Revenue Code of 1986, as amended.

"*IRS*" means the Internal Revenue Service of the United States of America.

"*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any property or asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such property or asset.

"*Litigation Claims*" means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person or Entity, including, without limitation, the Causes of Action of the Debtor or its Estate, in each case solely to the extent of the Debtor's or its Estate's interest therein. A non-exclusive list of the Litigation Claims held by the Debtor as of the Effective Date will be Filed with the Plan Supplement, which shall be deemed to include any derivative actions filed against the Debtor or by or on behalf of the Debtor or its Estate as of the Effective Date.

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

"*New Board*" means the initial members of the board of directors of the Reorganized Debtor, to be put in place on and as of the Effective Date. The members of the initial board of directors of Reorganized Debtor shall be identified in the Plan Supplement.

"*Non-Voting Classes*" means, collectively, Classes 1, 2, 3, 5, 6, and 8.

"*Notice*" has the meaning set forth in Article XII.J of this Plan.

"*Ordinary Course Professionals Order*" means that certain *Order Authorizing the Debtor to Employ and Compensate Certain Professionals in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date* entered by the Bankruptcy Court, as amended, supplemented, or modified from time to time.

"*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim, or an Administrative Claim.

"*Other Secured Claim*" means any Secured Claim other than an Administrative Claim or Secured Tax Claim.

"*Parent*" means American International Group, Inc.

"*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

"*Petition Date*" means December 14, 2022, the date on which the Debtor commenced the Chapter 11 Case.

"*Plan*" means this *Plan Of Reorganization For AIG Financial Products Corp. Under Chapter 11 Of The Bankruptcy Code*, dated December 14, 2022, including the Exhibits and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Objection Deadline*" means the date and time by which objections to Confirmation and Consummation of this Plan must be Filed with the Bankruptcy Court and served in accordance with the Disclosure Statement Order.

"*Plan Schedule*" means a schedule annexed to this Plan or an appendix to the Disclosure Statement (as amended, modified or otherwise supplemented from time to time).

"*Plan Securities*" has the meaning set forth in Article V.F of this Plan.

"*Plan Securities and Documents*" has the meaning set forth in Article V.F of this Plan.

"*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, supplemented, or modified from time to time prior to the Effective

Date.  The Exhibits and Plan Schedules (or substantially final forms thereof) shall be Filed with the Bankruptcy Court at least seven (7) days prior to the Plan Objection Deadline.

"*Prepetition Revolving Loan Agreement*" means that certain Revolving Credit Agreement, dated as of September 22, 2008 (as the same may be amended, modified or supplemented) among the Debtor, as borrower, and the Prepetition Revolving Lender.

"*Prepetition Revolving Loan Claims*" means any and all Claims arising from, under or in connection with the Prepetition Revolving Loan Agreement.

"*Prepetition Revolving Lender*" means Parent (as successor to AIG Funding, Inc.) and any of its successors and assigns, in its capacity as lender under the Prepetition Revolving Loan Agreement.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Professional*" means any Person or Entity retained by the Debtor in the Chapter 11 Case pursuant to section 327, 328, 363, and/or 1103 of the Bankruptcy Code (other than an ordinary course professional).

"*Professional Fee Claim*" means all Claims for accrued, contingent, and/or unpaid fees, costs, and expenses incurred by a Professional in the Chapter 11 Case on or after the Petition Date and through and including the Effective Date that the Bankruptcy Court has not denied by Final Order.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees, costs, or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

"*Professional Fees Bar Date*" means the Business Day that is thirty (30) days after the Effective Date or such other date as approved by Final Order of the Bankruptcy Court.

"*Professional Fee Reserve*" means the reserve established and maintained by the Debtor and the Reorganized Debtor from Cash on hand existing immediately prior to the Effective Date or from the Exit Facility Loans pursuant to and in accordance with Article V.N of this Plan.

"*Related Persons*" means, with respect to any Person or Entity, such Person's or Entity's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, traders, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the Petition Date, and any Person or Entity claiming by or through any of them, including such Related Persons' respective heirs, executors, estates, servants, and nominees; *provided*, *however*, that no Insurer of the Debtor or any DCP Claimant shall constitute a Related Person.

"*Released and Settled Claims*" means all Claims and/or Causes of Action made, or which could have been made, by or on behalf of any of the DCP Claimants against the Debtor or any other Released Party, in each case arising at any time prior to or on the Effective Date.

"*Released Party*" means, collectively, the following:

(a) the Debtor;

(b) the Reorganized Debtor;

(c) the Parent;

(d) the Distribution Agents;

(e) with respect to each of the foregoing Persons or Entities in clauses (a) through (d), each current and former Affiliate of each such Person or Entity; and

(f) with respect to the foregoing Persons or Entities in clauses (a) through (e), each Related Person of such Persons or Entities.

"*Reorganized Debtor*" means the Debtor, as reorganized pursuant to this Plan on or after the Effective Date, and its respective successors.

"*Restructuring Documents*" means, collectively, the documents and agreements (and the exhibits, schedules, annexes and supplements thereto) necessary to implement, or entered into in connection with, this Plan, including, without limitation, the Plan Supplement, the Exit Facility Credit Agreement, the Exhibits, and the Plan Schedules.

"*Schedules*" means the schedules of assets and liabilities, schedules of Executory Contracts, and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and the applicable Bankruptcy Rules, as such Schedules they may be amended, modified, or supplemented from time to time, if any such Schedules are required to be Filed by order of the Bankruptcy Court.

"*Secured Claim*" means a Claim that is secured by a Lien on property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

"*Secured Tax Claim*" means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

"*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and any similar federal, state or local law.

"*Stamp or Similar Tax*" means any stamp tax, recording tax, conveyance fee, intangible or similar tax, mortgage tax, personal or real property tax, real estate transfer tax, sales tax, use

tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes or fees imposed or assessed by any Governmental Unit.

"*Subordinated Claim*" means any Claim arising under, in connection with, or relating to any of the DCP Plans, including, without limitation, those Claims asserted in the pending action titled: *Arthurs, et al. v. AIG Fin. Prod. Corp.*, Case No. X08-FST-CV-19-6046057-S (Conn. Super. Ct. Dec. 6, 2019). For the avoidance of doubt, the Debtor's description or classification in this Plan, the Disclosure Statement, or any other document of any obligations arising under or related to the DCP Plans as Claims is not an admission that such obligations are debt, and the Debtor reserves the right to object to the allowance of such Claims and to classify any such obligations as Equity Interests.

"*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is "unimpaired" within the meaning of section 1124 of the Bankruptcy Code.

"*Unused Professional Fee Reserve Amount*" means the remaining Cash, if any, in the Professional Fee Reserve after all obligations and liabilities for which such reserve was established are paid, satisfied, and discharged in full in Cash or are disallowed by Final Order in accordance with this Plan.

"*Voting and Claims Agent*" means Epiq Corporate Restructuring, LLC, in its capacity as solicitation, notice, claims and balloting agent for the Debtor.

"*Voting Classes*" means Classes 4 and 7.

"*Voting Deadline*" means the date and time by which all Ballots must be received by the Voting and Claims Agent in accordance with the Disclosure Statement Order, which date is [February 22], 2023 at 5:00 p.m. (prevailing Eastern Time).

"*Voting Record Date*" means the date for determining which Holders of Claims in the Voting Classes are entitled, as applicable, to receive the Disclosure Statement and to vote to accept or reject this Plan, which date is [January 18], 2023, as set forth in the Disclosure Statement Order.

**ARTICLE II.**

**ADMINISTRATIVE AND PRIORITY TAX CLAIMS**

A.    *Administrative Claims*

On the later of the Effective Date or the date on which an Administrative Claim becomes an Allowed Administrative Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Claim (other than an Allowed Professional Fee Claim) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim

either (i) Cash equal to the amount of such Allowed Administrative Claim; or (ii) such other less favorable treatment as to which the Debtor or Reorganized Debtor, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing; *provided*, *however*, that Administrative Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or the Reorganized Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.

Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtor and such other Persons and Entities who are designated in the Confirmation Order an application for final allowance of such Professional Fee Claim no later than the Professional Fees Bar Date; *provided* that the Reorganized Debtor shall pay the reasonable fees, costs, and out-of-pocket expenses of the Debtor's Professionals in the ordinary course of business for any work performed after the Effective Date, including those reasonable and documented fees, costs, and expenses incurred by such Professionals in connection with the implementation and consummation of this Plan, in each case without further application or notice to or order of the Bankruptcy Court; *provided, further*, that any Debtor Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses from the Debtor and the Reorganized Debtor for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order, in each case without further application or notice to or order of the Bankruptcy Court.

Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtor and the requesting party by no later than thirty (30) days after the Filing of the applicable final request for payment of the Professional Fee Claim. Each Holder of an Allowed Professional Fee Claim shall be paid in full in Cash by the Reorganized Debtor, including from the Professional Fee Reserve, within five (5) Business Days after entry of the order approving such Allowed Professional Fee Claim. The Reorganized Debtor shall use such funds to pay only the Professional Fee Claims, as and when allowed by order of the Bankruptcy Court (except that the Unused Professional Fee Reserve Amount may be distributed from the Professional Fee Reserve as and when provided in this Plan). Notwithstanding anything to the contrary contained in this Plan, the failure of the Professional Fee Reserve to satisfy in full the Professional Fee Claims shall not, in any way, operate or be construed as a cap or limitation on the amount of Professional Fee Claims due and payable by the Reorganized Debtor.

B.      *Priority Tax Claims*

Subject to <u>Article VIII</u> hereof, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor or the Reorganized Debtor, as applicable: (A) Cash equal to the amount of such Allowed Priority Tax Claim; (B) such other less favorable treatment as to which the Debtor or the Reorganized Debtor, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing; (C) such other treatment such that it will not be Impaired pursuant to section 1124 of the Bankruptcy Code, or (D) pursuant to and in accordance with sections 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, Cash in an aggregate amount of such

US-DOCS\135656265

Allowed Priority Tax Claim payable in regular installment payments over a period ending not more than five (5) years after the Petition Date, plus simple interest at the rate required by applicable non-bankruptcy law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to in writing by a particular taxing authority and the Debtor or the Reorganized Debtor, as applicable, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; *provided*, *however*, that Priority Tax Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or the Reorganized Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court. Any installment payments to be made under clause (C) or (D) above shall be made in equal quarterly Cash payments beginning on the Effective Date (or as soon as reasonably practicable thereafter) and continuing on a quarterly basis until payment in full of the applicable Allowed Priority Tax Claim.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.    *Summary*

All Claims and Equity Interests, except Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, are placed in the Classes set forth below. Any Class that is vacant will be treated in accordance with Article III.D below.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, for voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. This Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remaining portion of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released, disallowed or otherwise settled prior to the Effective Date.

Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim/Equity Interest | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1. | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2. | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3. | Secured Tax Claims | Unimpaired | Deemed to Accept |
| *4.* | *Prepetition Revolving Loan Claims* | *Impaired* | *Entitled to Vote* |
| 5. | General Unsecured Claims | Unimpaired | Deemed to Accept |

13

| Class | Claim/Equity Interest | Status | Voting Rights |
|---|---|---|---|
| 6. | Intercompany Claims | Unimpaired | Deemed to Accept |
| *7.* | ***Subordinated Claims*** | ***Impaired*** | ***Entitled to Vote*** |
| 8. | Existing AIG FP Interests | Impaired | Deemed to Reject |

B.   *Classification and Treatment of Claims and Equity Interests*

1.   <u>Class 1 - Other Priority Claims</u>

   (a)   *Classification*: Class 1 consists of the Other Priority Claims.

   (b)   *Treatment*:  Subject to <u>Article VIII</u> hereof, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 1 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor or Reorganized Debtor, as applicable: (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor or Reorganized Debtor, as applicable, and the Holder of such Allowed Class 1 Claim shall have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; *provided*, *however*, that Class 1 Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or Reorganized Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

   (c)   *Voting*: Class 1 is an Unimpaired Class, and the Holders of Claims in Class 1 are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject this Plan.

2.   <u>Class 2 - Other Secured Claims</u>

   (a)   *Classification*:  Class 2 consists of the Other Secured Claims.  Class 2 consists of separate subclasses for each Other Secured Claim.

   (b)   *Treatment*:  Subject to <u>Article VIII</u> hereof, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 2 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim, at the election of the Debtor or Reorganized Debtor, as applicable: (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) such other less favorable treatment as to which the Debtor or Reorganized Debtor, as applicable, and the Holder

of such Allowed Class 2 Claim shall have agreed upon in writing; (C) the Collateral securing such Allowed Class 2 Claim; or (D) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; *provided*, *however*, that Class 2 Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or Reorganized Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

(c) *Voting*: Class 2 is an Unimpaired Class, and the Holders of Claims in Class 2 are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Class 2 are not entitled to vote to accept or reject this Plan.

3. <u>Class 3 – Secured Tax Claims</u>

(a) *Classification:* Class 3 consists of the Secured Tax Claims.

(b) *Treatment:* Subject to <u>Article VIII</u> hereof, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 3 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 3 Claim, at the election of the Debtor or Reorganized Debtor, as applicable: (A) Cash equal to the amount of such Allowed Class 3 Claim; (B) such other less favorable treatment as to which the Debtor or Reorganized Debtor, as applicable, and the Holder of such Allowed Class 3 Claim shall have agreed upon in writing; (C) the Collateral securing such Allowed Class 3 Claim; (D) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code or (E) pursuant to and in accordance with sections 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, Cash in an aggregate amount of such Allowed Class 3 Claim payable in regular installment payments over a period ending not more than five (5) years after the Petition Date, plus simple interest at the rate required by applicable non-bankruptcy law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to in writing by a particular taxing authority and the Debtor or Reorganized Debtor, as applicable, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; *provided*, *however*, that Class 3 Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or Reorganized Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court. Any installment payments to be made under clause (D) or (E) above shall be made in equal quarterly Cash payments beginning on the Effective Date (or as soon as reasonably practicable thereafter), and continuing on a quarterly basis until payment in full of the applicable Allowed Class 3 Claim.

US-DOCS\135656265

(c)    *Voting:* Class 3 is an Unimpaired Class, and the Holders of Claims in Class 3 shall be conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Class 3 are not entitled to vote to accept or reject this Plan.

4.    Class 4 - Prepetition Revolving Loan Claims

(a)    *Classification*:  Class 4 consists of the Prepetition Revolving Loan Claims.

(b)    *Allowance*:  The Prepetition Revolving Loan Claims are deemed Allowed Claims in the aggregate principal amount of $37,438,254,000, plus any accrued and unpaid fees, expenses, charges, indemnities and other obligations incurred in connection therewith through the Effective Date.

(c)    *Treatment*:    The Parent, as the sole Holder of the Allowed Class 4 Prepetition Revolving Loan Claim, shall retain the Existing AIG FP Interests in exchange for, and in full satisfaction, settlement, discharge and release of, such Allowed Class 4 Claim.  For the avoidance of doubt, the Parent shall be entitled to retain the Existing AIG FP Interests solely on account of the Parent's Allowed Class 4 Claim, and not on account of the Parent's Allowed Class 8 Existing AIG FP Interests.

(d)    *Voting*: Class 4 is Impaired, and the Parent is entitled to vote to accept or reject this Plan in its capacity as the Holder of the Allowed Class 4 Prepetition Revolving Loan Claim.

5.    Class 5 - General Unsecured Claims

(a)    *Classification*: Class 5 consists of the General Unsecured Claims.

(b)    *Treatment*:  Subject to Article VIII hereof, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 5 Claim shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 5 Claim, at the election of the Debtor or Reorganized Debtor, as applicable: (A) Cash equal to the amount of such Allowed Class 5 Claim; (B) such other less favorable treatment as to which the Debtor or Reorganized Debtor, as applicable, and the Holder of such Allowed Class 5 Claim shall have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; *provided*, *however*, that Class 5 Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business by the Debtor or Reorganized Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

(c)    *Voting*:  Class 5 is an Unimpaired Class, and the Holders of Claims in Class 5 are conclusively deemed to have accepted this Plan pursuant to section

1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Class 5 are not entitled to vote to accept or reject this Plan.

6. Class 6 – Intercompany Claims

    (a)    *Classification*: Class 6 consists of the Intercompany Claims.

    (b)    *Treatment:* The Intercompany Claims shall be paid, adjusted, reinstated, compromised, or cancelled, in each case at the option of the relevant Holder of such Intercompany Claims.

    (c)    *Voting:* Class 6 is an Unimpaired Class and the Holders of Claims in Class 6 are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Class 6 are not entitled to vote to accept or reject this Plan.

7. Class 7 – Subordinated Claims

    (a)    *Classification:* Class 7 consists of the Subordinated Claims.[2]

    (b)    *Treatment:*

        (i)    **IF AND ONLY IF CLASS 7 VOTES TO ACCEPT THIS PLAN**:

            Each Holder of a Class 7 Claim shall receive, on or as soon as reasonably practicable after the Effective Date, in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim, an equal share of the Class 7 Cash Pool based on the number of Holders in Class 7 after payment therefrom of any taxes due with respect to the Class 7 Cash Pool (including, but not limited to, any employer taxes payable by the Debtor or any affiliate of the Debtor with respect to distributions of the Class 7 Cash Pool, as determined by the Debtor).

        (ii)    **IF AND ONLY IF CLASS 7 VOTES TO REJECT THIS PLAN**:

            Each Holder of a Class 7 Claim shall not receive any distribution nor retain any property on account of such Class 7 Claim and, on the

---

[2] For the avoidance of doubt, the Debtor's description or classification in this Plan, the Disclosure Statement, or any other document of any obligations arising under or related to the DCP Plans as Claims is not an admission that such obligations are debt, and the Debtor reserves the right to object to the allowance of such Claims and to classify any such obligations as Equity Interests.

US-DOCS\135656265

Effective Date, the Class 7 Claims shall be discharged without further notice to, approval of, or action by any Person or Entity.

    (c)    *Voting*: Class 7 is an Impaired, and Holders of Claims in Class 7 are entitled to vote to accept or reject this Plan.

8.    <u>Class 8 – Existing AIG FP Interests</u>

    (a)    *Classification*: Class 8 consists of the Existing AIG FP Interests.

    (b)    *Treatment*: The Existing AIG FP Interests shall remain effective and outstanding on the Effective Date. In accordance with <u>Article III.B.4</u> hereof, the Parent, as the sole Holder of the Allowed Class 4 Prepetition Revolving Loan Claim, shall retain the Existing AIG FP Interests in exchange for, and in full satisfaction, settlement, discharge and release of, such Allowed Class 4 Claim. The Parent shall not retain any Existing AIG FP Interests or receive any other distribution on account of its Allowed Class 8 Existing AIG FP Interests.

    (c)    *Voting*: Class 8 is an Impaired Class and the Parent, in its capacity as Holder of the Allowed Existing AIG FP Interests in Class 8, is conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Parent is not entitled to vote to accept or reject this Plan in its capacity as Holder of the Allowed Class 8 Existing AIG FP Interests.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided herein, nothing under this Plan shall affect or limit the Debtor's or the Reorganized Debtor's rights and defenses (whether legal or equitable) in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

US-DOCS\135656265

# ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.      *Presumed Acceptance of Plan*

Classes 1, 2, 3, 5, and 6 are Unimpaired under this Plan. Therefore, the Holders of Claims in such Classes are deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

B.      *Deemed Rejection of Plan*

Class 8 is Impaired, and the Holder of Equity Interests in such Class shall receive no distribution under this Plan on account of such Equity Interests. Therefore, such Holder is deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject this Plan.

C.      *Voting Classes*

Classes 4 and 7 are Impaired under this Plan. The Holders of Claims in such Classes as of the Voting Record Date are entitled to vote to accept or reject this Plan.

D.      *Acceptance by Impaired Class of Claims*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted this Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class actually voting have voted to accept this Plan.

E.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by Class 7. The Debtor requests confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor reserves the right to modify this Plan or any Exhibit or Plan Schedule in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

F.      *Votes Solicited in Good Faith*

The Debtor has, and upon the Confirmation Date shall be deemed to have, solicited votes on this Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation. Accordingly, the Debtor, the Reorganized Debtor, and each of their respective Related Persons shall be entitled to, and upon the Confirmation Date are hereby granted, the protections of section 1125(e) of the Bankruptcy Code.

US-DOCS\135656265

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Global Settlement*

This Plan incorporates a compromise and settlement of the Released and Settled Claims held by the DCP Claimants in the form of a "**Global Settlement**," which the Parent supports. Pursuant to the Global Settlement, solely in the event that Class 7 votes to accept this Plan, the Parent has agreed to permit each DCP Claimant to receive, in full satisfaction, settlement, discharge and release of, and in exchange for, its Class 7 Subordinated Claim, an equal share of the Class 7 Cash Pool based on the number of Holders in Class 7, after payment therefrom of any taxes due with respect to the Class 7 Cash Pool (including, but not limited to, any employer taxes paid or payable by the Debtor or any affiliate of the Debtor with respect to distributions of the Class 7 Cash Pool, as determined by the Debtor). The Parent has consented to the funding of the Class 7 Cash Pool with Cash, the value of which the Parent would otherwise be entitled to receive as part of its recovery on account of its Class 4 Prepetition Revolving Loan Claims pursuant to section 1129(b)(2) of the Bankruptcy Code. All taxes paid or payable by the Debtor or any affiliate of the Debtor with respect to distributions of the Class 7 Cash Pool shall be deducted from the Class 7 Cash Pool prior to the payment to each DCP Claimant of any distribution from the Class 7 Cash Pool. Any distribution of the Class 7 Cash Pool to each DCP Claimant will be subject to any withholding or deduction for taxes required by applicable law.

The Global Settlement is a cornerstone of the Plan and necessary to achieve a beneficial and efficient resolution of the Chapter 11 Case for all parties-in-interest. This Plan shall be deemed to constitute a motion seeking approval of the Global Settlement, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such motion and each of the compromises or settlements that comprise the Global Settlement, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are within the range of reasonableness, in the best interests of the Debtor, its Estate, its creditors, and other parties-in-interest, and fair and equitable.

B.    *Continued Corporate Existence*

After the Effective Date, the Reorganized Debtor shall continue to exist as a legal entity in accordance with the applicable law in the jurisdiction in which it is incorporated or formed and pursuant to its certificate or articles of incorporation and by-laws, or other applicable organizational documents, in effect immediately prior to the Effective Date, except to the extent such certificate or articles of incorporation and by-laws, or other applicable organizational documents, are amended, restated or otherwise modified under this Plan.

C.    *Vesting of Assets in the Reorganized Debtor Free and Clear of Liens and Claims*

Except as otherwise expressly provided in this Plan, the Confirmation Order, or any Restructuring Document, pursuant to sections 1123(a)(5), 1123(b)(3), 1141(b) and (c) and other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estate of the Debtor, including all claims and rights of the Debtor, and any other assets

or property acquired by the Debtor or the Reorganized Debtor during the Chapter 11 Case or under or in connection with this Plan (other than any rejected Executory Contracts and/or Unexpired Leases and the Professional Fee Reserve, but including the Unused Professional Fee Reserve Amount), shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Liens that survive the occurrence of the Effective Date as described in <u>Article III</u> of this Plan. On and after the Effective Date, the Reorganized Debtor may (i) operate its business, (ii) use, acquire, and dispose of its property and (iii) compromise or settle any Claims, in each case without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

D.     *Exit Facility Credit Agreement*

On the Effective Date, the Debtor and the Reorganized Debtor, as applicable, shall be authorized to execute and deliver, and to consummate the transactions contemplated by, the Exit Facility Credit Agreement and any related loan documents, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity (other than as expressly required by the Exit Facility Credit Agreement or any related loan documents). On the Effective Date, the Exit Facility Credit Agreement and any related loan documents shall constitute legal, valid, binding and authorized indebtedness and obligations of the Reorganized Debtor, enforceable in accordance with their respective terms and such indebtedness and obligations shall not be, and shall not be deemed to be, enjoined or subject to discharge, impairment, release or avoidance under this Plan, the Confirmation Order or on account of the Confirmation or Consummation of this Plan.

E.     *Existing AIG FP Interests*

The Existing AIG FP Interests shall remain effective and outstanding on the Effective Date and shall continue to be owned and held by the Parent. In accordance with <u>Article III.B.4</u> hereof, the Parent shall be entitled to retain the Existing AIG FP Interests in exchange for, and in full satisfaction, settlement, discharge and release of, its Allowed Class 4 Prepetition Revolving Loan Claims only. For the avoidance of doubt, in accordance with <u>Article III.B.8</u> hereof, the Parent shall not retain any Existing AIG FP Interests or receive any other distribution on account of its Allowed Class 8 Existing AIG FP Interests.

F.     *Plan Securities and Related Documentation; Exemption from Securities Laws*

To the extent applicable, on and after the Effective Date, the Debtor and the Reorganized Debtor, as applicable, are authorized to and shall provide, any and all securities to be distributed or issued under this Plan (collectively, the "**<u>Plan Securities</u>**") and any and all other notes, stock, instruments, certificates, and other documents or agreements required to be distributed, issued, executed or delivered pursuant to or in connection with this Plan (collectively, the "**<u>Plan Securities and Documents</u>**"), without further notice to or order of the Bankruptcy Court, act or action under

applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity.

To the extent applicable, the offer, distribution, and issuance, as applicable, of the Plan Securities and Documents under this Plan shall be exempt from registration and prospectus delivery requirements under applicable securities laws (including Section 5 of the Securities Act or any similar state or local law requiring the registration and/or delivery of a prospectus for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to section 1145(a) of the Bankruptcy Code, Section 4(a)(2) of the Securities Act and/or other applicable exemptions. An offering of Plan Securities provided in reliance on the exemption from registration under the Securities Act pursuant to section 1145(a) of the Bankruptcy Code may be sold without registration to the extent permitted under section 1145 of the Bankruptcy Code and is deemed to be a public offering, and such Plan Securities may be resold without registration to the extent permitted under section 1145 of the Bankruptcy Code. Any Plan Securities and Documents provided in reliance on the exemption from registration under the Securities Act provided by Section 4(a)(2) of such act will be provided in a private placement.

Persons or Entities who purchase securities pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will hold "restricted securities." Resales of such restricted securities would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law. Holders of restricted securities would, however, be permitted to resell Plan Securities without registration if they are able to comply with the applicable provisions of Rule 144 or Rule 144A or any other applicable registration exemption under the Securities Act, or if such securities are registered with the Commission.

G.    *Release of Liens and Claims*

To the fullest extent provided under section 1141(c) and other applicable provisions of the Bankruptcy Code, except as otherwise provided herein (including, without limitation, Article V.E and Article V.F of this Plan) or in any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII hereof, all Liens, Claims, mortgages, deeds of trust, or other security interests against the assets or property of the Debtor or the Estate shall be fully released, canceled, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity. The filing of the Confirmation Order with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, Claims and other interests to the extent provided in the immediately preceding sentence. Any Person or Entity holding such Liens, Claims or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtor such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtor.

US-DOCS\135656265

H.    *Organizational Documents of the Reorganized Debtor*

The organizational documents of the Debtor shall be amended and restated or replaced (as applicable) in form and substance satisfactory to the Debtor and as necessary to satisfy the provisions of this Plan and the Bankruptcy Code.  Such organizational documents shall: (i) to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity securities; (ii) to the extent necessary or appropriate, include restrictions on the transfer of the Existing AIG FP Interests; and (iii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate this Plan and the transactions contemplated herein.  After the Effective Date, the Reorganized Debtor may, subject to the terms and conditions of the Restructuring Documents, amend and restate its organizational documents as permitted by applicable law.

I.    *Directors and Officers of the Reorganized Debtor*

Each of the members of the Debtor's existing board of directors shall continue to serve on the board of directors of the Reorganized Debtor after the Effective Date, subject to approval of the Bankruptcy Court pursuant to section 1129(a)(5) of the Bankruptcy Code.

Pursuant to and to the extent required by section 1129(a)(5) of the Bankruptcy Code, the Debtor will disclose, at or prior to the Confirmation Hearing, the identity and affiliations of the existing members of the board of directors proposed to serve on the initial board of directors of the Reorganized Debtor and any Person proposed to be an officer of the Reorganized Debtor, and, to the extent such Person is an insider other than by virtue of being a director or an officer, the nature of any compensation for such Person.  Each such director and officer shall serve from and after the Effective Date pursuant to applicable law and the terms of the Amended/New Organizational Documents and the other constituent and organizational documents of the Reorganized Debtor.

J.    *Corporate Action*

The Debtor and the Reorganized Debtor may take any and all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtor or the Reorganized Debtor or by any other Person or Entity (except for those expressly required pursuant hereto or by the Restructuring Documents).

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the stockholders, directors, officers, managers, members or partners of the Debtor (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, officers, managers, members or partners of the Debtor or the Reorganized Debtor, or the need for any approvals, authorizations, actions or consents of any Person or Entity.

US-DOCS\135656265

As of the Effective Date, all matters provided for in this Plan involving the legal or corporate structure of the Debtor or the Reorganized Debtor (including, without limitation, the adoption of the Amended/New Organization Documents and similar constituent and organizational documents, and the selection of directors and officers for, the Reorganized Debtor), and any legal or corporate action required by the Debtor or the Reorganized Debtor in connection with this Plan, shall be deemed to have occurred and shall be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the stockholders, directors, officers, managers, members or partners of the Debtor or the Reorganized Debtor or by any other Person or Entity.

On and after the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person or Entity. Any officer of the Debtor or Reorganized Debtor shall be authorized to certify or attest to any of the foregoing actions.

K.   *Cancellation of Notes and Instruments*

On the Effective Date, except to the extent otherwise provided herein (including, without limitation, Article V.E and Article V.F), all notes, indentures, instruments, agreements and other documents evidencing or relating to any Impaired Claim or any Claim being paid in full in Cash under this Plan, shall be canceled, and the obligations of the Debtor thereunder or in any way related thereto shall be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person or Entity and, in the case of any Claim being paid in full in Cash, upon the indefeasible payment of such Claim in full in Cash as contemplated by this Plan; *provided*, *that*, any credit document or loan agreement that governs the rights of the Holder of a Claim shall continue in effect for the limited purposes of allowing Holders of Claims to receive  distributions under this Plan, *provided*, *further*, however, that (a) the preceding proviso shall not affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan, or result in any expense or liability to the Debtor or Reorganized Debtor, as applicable, except as expressly provided for in this Plan, and (b) except as otherwise provided in this Plan, the terms and provisions of this Plan shall not modify any existing credit document or loan agreement that would in any way be inconsistent with distributions under this Plan.  Except to the extent otherwise provided herein (including, without limitation, Article V.E and Article V.F) and the Restructuring Documents, upon completion of all such distributions in accordance with this Plan, the loan agreements, credit documents, indentures, instruments, agreements and other documents evidencing or relating to Impaired Claims against the Debtor and/or Claims that have been paid in full in Cash shall terminate completely without further notice or action and be deemed surrendered.

L.     *Sources of Cash for Plan Distributions*

Except as otherwise provided in this Plan or the Confirmation Order, all Cash necessary for the Debtor or the Reorganized Debtor, as applicable, to make payments required pursuant to this Plan will be obtained from their respective Cash balances and the Exit Facility. The Debtor and the Reorganized Debtor, as applicable, may also make such payments using Cash received from their subsidiaries through their respective consolidated cash management systems and the incurrence of intercompany transactions, but in all cases subject to the terms and conditions of the Restructuring Documents.

M.     *Continuing Effectiveness of Final Orders*

Payment authorization granted to the Debtor under any prior Final Order entered by the Bankruptcy Court shall continue in effect after the Effective Date. Accordingly, the Debtor or the Reorganized Debtor may pay or otherwise satisfy any Claim to the extent permitted by, and subject to, the applicable Final Order without regard to the treatment that would otherwise be applicable to such Claim under this Plan.

N.     *Funding and Use of Professional Fee Reserve*

Each Professional shall provide the Debtor with a reasonable and good-faith estimate of its fees, costs, and expenses expected to be incurred between the Confirmation Date and the Effective Date, and shall deliver such estimate to the Debtor no later than five (5) days before the anticipated Effective Date; *provided* that such estimate shall not limit the amount of Allowed Professional Fee Claims payable or to be paid by the Debtor or the Reorganized Debtor. As soon as reasonably practicable prior to the Effective Date, and no later than the Effective Date, the Debtor shall fund the Professional Fee Reserve with Cash in the aggregate amount of (i) the aggregate unpaid Professional Fee Claims incurred prior to and as of the Confirmation Date, plus (ii) the Professionals' good-faith estimate of their fees, costs, and expenses expected to be incurred between the Confirmation Date and the Effective Date; *provided* that the foregoing shall not limit the amount of Allowed Professional Fee Claims payable or to be paid by the Debtor or the Reorganized Debtor.

The Cash contained in the Professional Fee Reserve shall be used solely to pay the Allowed Professional Fee Claims, with the Unused Professional Fee Reserve Amount (if any) being returned to the Reorganized Debtor. The Debtor and the Reorganized Debtor, as applicable, shall maintain detailed records of all payments made from the Professional Fee Reserve, such that all payments and transactions shall be adequately and promptly documented in, and readily ascertainable from, their respective books and records. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall include any other funds or property within the Professional Fee Reserve without further order of the Bankruptcy Court. To the extent the Professional Fee Reserve is insufficient to pay in full in Cash the obligations and liabilities for which such reserve was established, then the Reorganized Debtor shall, within five (5) Business Days, pay such obligations and liabilities from Cash on hand or by drawing under the Exit Facility Credit Agreement.

The Professional Fee Reserve shall be maintained in trust for the Professionals and shall not be considered property of the Debtor's Estate; *provided* that the Reorganized Debtor shall have

a reversionary interest in the Unused Professional Fee Reserve Amount. To the extent that funds held in the Professional Fee Reserve do not or are unable to satisfy the full amount of the Allowed Professional Fee Claims, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in full in Cash in accordance with Article II.A of this Plan.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption of Executory Contracts and Unexpired Leases*

On the Effective Date, the Reorganized Debtor shall assume all Executory Contracts and Unexpired Leases of the Debtor in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts and Unexpired Leases that:

(i)    have been assumed or rejected by the Debtor by prior order of the Bankruptcy Court;

(ii)    previously expired or terminated pursuant to its own terms;

(iii)    are the subject of a motion to reject filed by the Debtor that is pending on the Effective Date;

(iv)    are identified in the Plan Supplement, which Plan Supplement may be amended by the Debtor to add or remove Executory Contracts and Unexpired Leases by filing with the Bankruptcy Court an amended Plan Schedule and serving it on the affected non-Debtor contract parties at least seven (7) days prior to the Plan Objection Deadline or as soon as reasonably practicable thereafter, provided that any such non-Debtor counterparty shall have seven (7) days to object to the inclusion of their Executory Contract and/or Unexpired Lease on such schedule; or

(v)    are rejected by the Debtor or terminated pursuant to the terms of this Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to this Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change in control" provision, "change of control" provision, or provision with words of similar import) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of this Chapter 11 Case or the insolvency or financial condition of the Debtor at any time before the closing of its Chapter 11 Case, (ii) the Debtor's or the Reorganized Debtor's assumption or

assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the Confirmation or Consummation of this Plan, then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of this Plan.

Each Executory Contract and Unexpired Lease assumed and/or assigned pursuant to this Plan shall revest in and be fully enforceable by the Reorganized Debtor or the applicable assignee in accordance with its terms and conditions, except as modified by the provisions of this Plan, any order of the Bankruptcy Court approving its assumption and/or assignment, or applicable law.

Neither the assumption of any Executory Contract or Unexpired Lease pursuant to this Plan nor the inclusion or exclusion of any contract or lease on any schedule or exhibit nor anything contained in this Plan or Plan Supplement, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or the Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or the Reorganized Debtor, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date. The deemed assumption provided for herein shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Debtor following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

B.   *Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases*

Any defaults under each Executory Contract and Unexpired Lease to be assumed, or assumed and assigned, pursuant to this Plan shall be satisfied, pursuant to and to the extent required by section 365(b)(1) of the Bankruptcy Code, by payment of the applicable default amount in Cash on or in connection with the Effective Date or on such other terms as the Bankruptcy Court may order or the parties to such Executory Contracts or Unexpired Leases may otherwise agree in writing (the "**Cure Claim Amount**").

In the event of an assumption, or an assumption and assignment, of an Executory Contract or Unexpired Lease under this Plan, at least fourteen (14) days prior to the Plan Objection Deadline, the Debtor shall File and serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, or proposed assumption and assignment, which will: (a) list the applicable Cure Claim Amount, if any; (b) if applicable, identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption, or proposed assumption and assignment under this Plan, or any related cure amount, must be Filed, served and actually received by the Debtor prior to the Plan Objection Deadline (notwithstanding anything in the Schedules or a proof of Claim to the contrary). Any

counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, or proposed assumption and assignment, or cure amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and cure amount. The Confirmation Order shall constitute an order of the Bankruptcy Court approving each proposed assumption, or proposed assumption and assignment, of Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of the Debtor or assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, or (c) any other matter pertaining to assumption or assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving such assumption, or assumption and assignment. If such objection is sustained by Final Order of the Bankruptcy Court, the Debtor or the Reorganized Debtor, as applicable, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming or assigning it. The Debtor or the Reorganized Debtor, as applicable, shall be authorized to effect such rejection by filing a written notice of rejection with the Bankruptcy Court and serving such notice on the applicable counterparty within ten (10) days of the entry of such Final Order.

Subject to any cure claims Filed with respect thereto, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to this Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code. Any proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned by Final Order shall be deemed disallowed and expunged (subject to any cure claims Filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

With respect to any Executory Contract or Unexpired Lease assumed and assigned pursuant to this Plan, upon and as of the Effective Date, the applicable assignee shall be deemed to be substituted as a party thereto for the Debtor party to such assigned Executory Contract or Unexpired Lease and, accordingly, the Debtor and the Reorganized Debtor shall be relieved, pursuant to and to the extent set forth in section 365(k) of the Bankruptcy Code, from any further liability under such assigned Executory Contract or Unexpired Lease.

C.      *Rejection of Executory Contracts and Unexpired Leases*

The Debtor reserves the right, at any time prior to the Effective Date, except as otherwise specifically provided herein, to seek to reject any Executory Contract or Unexpired Lease and to file a motion requesting authorization for the rejection of any such contract or lease. All Executory Contracts and Unexpired Leases listed on Plan Schedule A shall be deemed rejected as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court

approving the rejections described in this <u>Article VI</u> pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of any preexisting obligations owed to the Debtor or the Reorganized Debtor, as applicable, under such Executory Contracts or Unexpired Leases.

D. *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

All proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Person or Entity that is required to file a proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtor, the Reorganized Debtor or the Estate, and the Debtor, the Reorganized Debtor and their Estate and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in <u>Article X.G</u> hereof.

E. *D&O Liability Insurance Policies*

On the Effective Date, each D&O Liability Insurance Policy (including any "tail policy") shall be deemed and treated as an Executory Contract that is and shall be assumed by the Debtor (and assigned to the Reorganized Debtor, if necessary) pursuant to section 365(a) and section 1123 of the Bankruptcy Code as to which no proof of Claim, request for administrative expense, or cure claim need be Filed, and all Claims arising from the D&O Liability Insurance Policies shall survive the Effective Date and be Unimpaired. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's assumption of each of the D&O Liability Insurance Policies (including any "tail policies"). After the Effective Date, neither the Debtor nor the Reorganized Debtor shall terminate or otherwise reduce the coverage under any such policies (including any "tail policies") with respect to conduct occurring prior to and including the Effective Date, and all officers and directors of the Debtor who served in such capacity at any time before or on the Effective Date shall be entitled to the full benefits of any such policies regardless of whether such officers or directors remain in such positions after the Effective Date. Confirmation and Consummation of this Plan shall not impair or otherwise modify any available defenses of the Reorganized Debtor under the D&O Liability Insurance Policies. For the avoidance of doubt, the D&O Liability Insurance Policies shall continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the D&O Liability Insurance Policies. The Debtor is further authorized to take such actions, and to execute and deliver such documents, as may be reasonably necessary or appropriate to implement, maintain, cause the binding of, satisfy any terms or conditions of, or otherwise secure for the insureds the benefits of the D&O Liability Insurance Policies (including any "tail policies"), without further notice to or order of the Bankruptcy Court or approval or consent of any Person or Entity.

F.    *Indemnification Provisions*

On the Effective Date, all Indemnification Provisions shall be deemed and treated as Executory Contracts that are and shall be assumed by the Debtor (and assigned to the Reorganized Debtor, if necessary) pursuant to section 365(a) and section 1123 of the Bankruptcy Code as to which no proof of Claim, request for administrative expense, or cure claim need be Filed, and all Claims arising from the Indemnification Provisions shall survive the Effective Date and be Unimpaired.  Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's assumption of such Indemnification Provisions.  Confirmation and Consummation of this Plan shall not impair or otherwise modify any available defenses of the Reorganized Debtor or other applicable parties under the Indemnification Provisions.  For the avoidance of doubt, the Indemnification Provisions shall continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the Indemnification Provisions.

G.    *Extension of Time to Assume or Reject*

Notwithstanding anything to the contrary set forth in <u>Article VI</u> of this Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the right of the Reorganized Debtor to move to assume or reject such contract or lease shall be extended until the date that is ten (10) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.  The deemed assumption provided for in <u>Article VI.A</u> of this Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Reorganized Debtor following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

H.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed by the Debtor or the Reorganized Debtor shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

US-DOCS\135656265

**ARTICLE VII.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

A.  *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided in the "Treatment" sections in Article III hereof or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon as reasonably practicable thereafter.  Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Distributions on account of Disputed Claims that first become Allowed Claims after the Effective Date shall be made pursuant to Article VIII hereof.

B.  *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in this Plan, the Confirmation Order, or Final Order of the Bankruptcy Court, or required by applicable bankruptcy law (including, without limitation, as required pursuant to section 506(b) or section 511 of the Bankruptcy Code), postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

C.  *Distributions by the Reorganized Debtor or Other Applicable Distribution Agent*

The Reorganized Debtor or other applicable Distribution Agent shall make all distributions required to be distributed under this Plan.  The Reorganized Debtor may employ or contract with other entities to assist in or make the distributions required by this Plan and may pay the reasonable fees and expenses of such entities and the Distribution Agents in the ordinary course of business. No Distribution Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

D.  *Delivery and Distributions; Undeliverable or Unclaimed Distributions*

1.  Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed.  Accordingly, the Debtor, the Reorganized Debtor or other applicable Distribution Agent will have no obligation to recognize the assignment, transfer or other disposition of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute securities, property, notices and other documents only to those Holders of Allowed Claims who are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.  The Reorganized Debtor or other applicable Distribution Agent shall be entitled to recognize and transact with, for all purposes under this Plan, only those record holders stated on the Claims Register, or their books and records, as of the close of business on the Distribution Record Date.

2.  Delivery of Distributions in General

Except as otherwise provided herein, the Debtor, the Reorganized Debtor or other applicable Distribution Agent, as applicable, shall make distributions to Holders of Allowed Claims, or in care of their authorized agents, as appropriate, at the address for each such Holder or agent as indicated on the Debtor's or other applicable Distribution Agent's books and records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined in the discretion of the applicable Distribution Agent; *provided further,* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in the latest proof of Claim, if any, Filed by such Holder pursuant to Bankruptcy Rule 3001 as of the Distribution Record Date.

3.  Minimum Distributions

Notwithstanding anything herein to the contrary, no Distribution Agent shall be required to make distributions or payments of less than $10.00 (whether in Cash or otherwise) or to make partial distributions or payments of fractions of dollars, in each case with respect to Impaired Claims. With respect to Impaired Claims, whenever any payment or distribution of a fraction of a dollar under this Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or more being rounded up to the next higher whole number and with less than half dollars being rounded down to the next lower whole number.

4.  Undeliverable Distributions

(a)     Holding of Certain Undeliverable Distributions

If the distribution to any Holder of an Allowed Claim is returned to the Distribution Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Distribution Agent is notified in writing of such Holder's then current address, at which time (or as soon as reasonably practicable thereafter) all currently due but outstanding distributions shall be made to such Holder. Undeliverable distributions shall remain in the possession of the Reorganized Debtor or in the applicable reserve, subject to Article VII.D.4(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution being undeliverable.

(b)     Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim (or any successor or assignee or other Person or Entity claiming by, through, or on behalf of, such Holder) that does not assert a right pursuant to this Plan for an undeliverable or unclaimed distribution within ninety (90) days after the later of the Effective Date or the date such distribution is due shall be deemed to have forfeited its rights for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such rights for an undeliverable or unclaimed distribution against the Debtor or its Estate, the Reorganized Debtor or its assets or property, or any Distribution Agent. In such case, any Cash, Plan Securities and Documents, and/or other property, as applicable, held for distribution on account of such Claim shall become the property of the Reorganized Debtor, free

US-DOCS\135656265

and clear of any Claims or other rights of such Holder with respect thereto and notwithstanding any federal or state escheat laws to the contrary. Any such Cash, Plan Securities and Documents, or other property shall thereafter be distributed or allocated in accordance with the applicable terms and conditions of this Plan. Nothing contained in this Plan shall require the Debtor, the Reorganized Debtor, or any Distribution Agent to attempt to locate any Holder of an Allowed Claim.

(c)     Failure to Present Checks

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, no later than 120 days after the issuance of such checks, the Reorganized Debtor shall File with the Bankruptcy Court a list of the Holders of any un-negotiated checks. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Chapter 11 Case stays open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 90 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be forever barred, estopped and enjoined from asserting any such Claim against the Debtor or its Estate, the Reorganized Debtor or its assets or property. In such case, any Cash held for payment on account of such Claims shall be distributed to the applicable Distribution Agent for distribution or allocation in accordance with this Plan, free and clear of any Claims of such Holder with respect thereto and notwithstanding any federal or state escheat laws to the contrary.

E.     *Compliance with Tax Requirements*

In connection with this Plan and all distributions hereunder, the Reorganized Debtor or other applicable Distribution Agent shall comply with all requirements for the payment of taxes and with all withholding and reporting requirements, in each case imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such requirement to pay taxes or comply with withholding and reporting requirements, including without limitation, with respect to both employee and employer portions of employment tax. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor or other applicable Distribution Agent shall be authorized to take any and all actions that may be necessary or appropriate to pay all taxes with respect to the Class 7 Cash Pool and comply with such withholding and reporting requirements, including paying applicable employment taxes and effecting withholding of any applicable taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. All Persons or Entities holding Claims shall be required to provide any information necessary to determine any taxes that are required to be paid with respect to such distributions and effect information reporting and the withholding of such taxes (or establish eligibility for an exemption from the withholding of taxes). In particular, as a condition of making any distribution to any Holder of a Class 7 Claim under the Plan, such Holder is required to provide a duly completed and executed copy of IRS Form W-4 and IRS Form W-9 and other applicable documentation. Each Holder of an Allowed Claim shall have the sole and exclusive

responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. Any amounts withheld or reallocated pursuant to this <u>Article VII.E</u> shall be treated as if distributed to the Holder of the Allowed Claim or, as applicable, paid by the Reorganized Debtor or other applicable Distribution Agent in connection with applicable distributions as required by applicable law. For the avoidance of doubt, any and all taxes required to be paid, deducted or withheld in connection with the payment of Class 7 Claims (including, but not limited to, the employer portion of applicable employment taxes) shall be exclusively paid from the Class 7 Cash Pool pursuant to the Plan prior to any deduction or withholding, without any additional amounts whatsoever to be paid by the Debtor with respect to such Class 7 Claims.

F.      *Allocation of Plan Distributions Between Principal and Interest*

To the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for U.S. federal income tax purposes to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

G.      *Means of Cash Payment*

Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option of the Debtor or the Reorganized Debtor (as applicable), by checks drawn on, or wire transfer from, a domestic bank selected by the Debtor or the Reorganized Debtor. Cash payments to foreign creditors may be made, at the option of the Debtor or the Reorganized Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

H.      *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the "Treatment" sections in <u>Article III</u> hereof or as ordered by the Bankruptcy Court, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Claim shall receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable Class. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the applicable class treatment or in <u>Article VIII</u> hereof. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

I.      *Setoffs*

Without altering or limiting any of the rights and remedies of the Debtor and the Reorganized Debtor under section 502(d) of the Bankruptcy Code, all of which rights and remedies are hereby reserved, the Debtor and the Reorganized Debtor may, but shall not be required to, withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, Causes of Action and Litigation Claims of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim; *provided* that, at least ten (10) days prior to effectuating such

withholding, the Debtor or the Reorganized Debtor, as applicable, shall provide written notice thereof to the applicable Holder of such Claim, and all objections and defenses of such Holder to such withholding are preserved. In the event that any such claims, Causes of Action or Litigation Claims are adjudicated by Final Order or otherwise resolved against the applicable Holder, the Debtor and the Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of such adjudicated or resolved claims, Causes of Action or Litigation Claims. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, Causes of Action or Litigation Claims, all of which are reserved unless expressly released or compromised pursuant to this Plan or the Confirmation Order.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.     *Resolution of Disputed Claims*

1.    Allowance of Claims

After the Effective Date, and except as otherwise provided in this Plan, the Reorganized Debtor shall have and shall retain any and all available rights and defenses that the Debtor had with respect to any Claim, including, without limitation, the right to assert any objection to Claims based on the limitations imposed by sections 502 or 510 of the Bankruptcy Code. The Debtor and the Reorganized Debtor may contest the amount and validity of any Disputed Claim or contingent or unliquidated Claim in the ordinary course of business in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced.

2.    Prosecution of Objections to Claims

After the Confirmation Date but before the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor, shall have the authority to File objections to Claims (other than Claims that are Allowed under this Plan) and settle, compromise, withdraw or litigate to judgment objections to any and all such Claims, regardless of whether such Claims are in an Unimpaired Class or otherwise; *provided*, *however*, this provision shall not apply to Professional Fee Claims, which may be objected to by any party-in-interest in this Chapter 11 Case. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court. The Reorganized Debtor shall have the sole authority to administer and adjust the Claims Register and its books and records to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

3. <u>Claims Estimation</u>

After the Confirmation Date but before the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor, may at any time request that the Bankruptcy Court estimate any Disputed Claim or contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, whether for allowance or to determine the maximum amount of such Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation. Notwithstanding any provision otherwise in this Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under this Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

4. <u>No Filings of Proofs of Claim</u>

Except as otherwise provided in this Plan, including with respect to the Professional Fees Bar Date and Claims arising from the rejection of Executory Contracts or Unexpired Leases, Holders of Claims shall not be required to File a proof of Claim, and no such parties should File a proof of Claim. The Debtor does not intend to object in the Bankruptcy Court to the allowance of Claims Filed; provided, however, that the Debtor and the Reorganized Debtor, as applicable, reserve the right to object to any Claim that is entitled, or deemed to be entitled, to a distribution under this Plan or is rendered Unimpaired under this Plan. Instead, the Debtor intends to make distributions, as required by this Plan, in accordance with the Debtor's books and records and the Schedules. Unless disputed by a Holder of a Claim, the amount set forth in the Debtor's books and records or the Schedules shall constitute the amount of the Allowed Claim of such Holder. If any such Holder of a Claim disagrees with the Debtor's books and records or the Schedules with respect to the Allowed amount of such Holder's Claim, such Holder must so advise the Debtor in writing, in which event the Claim shall become a Disputed Claim. The Debtor and the Reorganized Debtor, as applicable, intend to attempt to resolve any such disputes consensually or through judicial means outside the Bankruptcy Court. Nevertheless, the Debtor and the Reorganized Debtor, as applicable, may, in their discretion, File with the Bankruptcy Court (or any other court of competent jurisdiction) an objection to the allowance of any Claim or other appropriate motion or adversary proceeding with respect thereto. All such objections shall be litigated to Final Order; provided, however, that the Debtor and the Reorganized Debtor, as applicable, may compromise, settle, withdraw, or resolve by any other method approved by the Bankruptcy Court any objections to Claims.

B.    *No Distributions Pending Allowance*

Notwithstanding any other provision of this Plan to the contrary, no payments or distributions of any kind or nature shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim has become an Allowed Claim pursuant to a Final Order.

C.    *Distributions on Account of Disputed Claims Once They Are Allowed*

The Reorganized Debtor or other applicable Distribution Agent shall make distributions on account of any Disputed Claim that has become Allowed after the Effective Date at such time that such Claim becomes Allowed (or as soon as reasonably practicable thereafter). Such distributions shall be made pursuant to the applicable provisions of Article VII of this Plan.

D.    *Reserve for Disputed Claims*

The Debtor, the Reorganized Debtor, and the Distribution Agent may, in their respective sole discretion, establish such appropriate reserves for Disputed Claims in the applicable Class(es) as they determine necessary and appropriate. Without limiting the foregoing, reserves (if any) for Disputed Claims shall equal, as applicable, an amount of Cash equal to 100% of distributions to which Holders of Disputed Claims in each applicable Class would otherwise be entitled under this Plan as of such date if such Disputed Claims were Allowed, based on the Debtor's books and records; *provided*, however, that the Debtor and the Reorganized Debtor, as applicable, shall have the right to file a motion seeking to estimate any Disputed Claims.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.    This Plan and the Restructuring Documents shall be in form and substance acceptable to the Debtor and the Parent; and

2.    The Confirmation Order, which shall be in form and substance acceptable to the Debtor and the Parent, shall have been entered by the Bankruptcy Court.

B.    *Conditions Precedent to Consummation*

It shall be a condition to Consummation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.  The Confirmation Order shall have become a Final Order and such order shall not have been amended, modified, vacated, stayed, or reversed;

2.  The Bankruptcy Court shall have entered one or more Final Orders (which may include the Confirmation Order) authorizing the assumption, assumption and assignment, and/or rejection of the Executory Contracts and Unexpired Leases by the Debtor as contemplated in this Plan and the Plan Supplement;

3.  This Plan and the Restructuring Documents shall not have been amended or modified other than in a manner in form and substance acceptable to the Debtor and the Parent;

4.  The Restructuring Documents shall have been filed, tendered for delivery, and been effectuated or executed by all Persons or Entities party thereto (as appropriate), and in each case in full force and effect. All conditions precedent to the effectiveness of such Restructuring Documents shall have been satisfied or waived pursuant to the terms of such applicable Restructuring Documents (or shall be satisfied concurrently with the occurrence of the Effective Date);

5.  All consents, actions, documents, certificates and agreements necessary to implement this Plan and the transactions contemplated by this Plan shall have been, as applicable, obtained and not otherwise subject to unfulfilled conditions, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws, and in each case in full force and effect;

6.  All governmental approvals and consents, including Bankruptcy Court approval, that are applicable and legally required for the consummation of this Plan shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect; and

7.  The Professional Fee Reserve shall have been funded in full in Cash by the Debtor in accordance with the terms and conditions of this Plan.

C.   *Waiver of Conditions*

Subject to section 1127 of the Bankruptcy Code, the conditions to Confirmation and Consummation of this Plan set forth in this Article IX may be waived by the Debtor, with the consent of the Parent, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan. The failure of the Debtor or Reorganized Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right shall be deemed an ongoing right that may be asserted at any time.

D.   *Effect of Non-Occurrence of Conditions to Confirmation or Consummation*

If the Confirmation or the Consummation of this Plan does not occur, then this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Person or Entity; (3) constitute an Allowance of any Claim or Equity Interest; or (4) constitute an

admission, acknowledgment, offer or undertaking by the Debtor, any Holders or any other Person or Entity in any respect.

**ARTICLE X.**

**RELEASE, DISCHARGE, INJUNCTION AND RELATED PROVISIONS**

A.    *General*

With respect to Class 7 Claims only, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of such Class 7 Claims.

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; *provided*, *however*, that nothing contained herein shall preclude any Person or Entity from exercising their rights pursuant to and consistent with the terms of this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan.

B.    **_Release by the Debtor and its Estate_**

**Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor, in its capacity as debtor-in-possession, and the Reorganized Debtor, on behalf of themselves and the Estate, including, without limitation, any successor to the Debtor or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "<u>Debtor Releasing Parties</u>") will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all Claims, Causes of Action, Litigation Claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole**

or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtor or its Affiliates, including, without limitation, (i) the Chapter 11 Case, the Disclosure Statement, this Plan, the Restructuring Documents, or the Prepetition Revolving Loan Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan, (iii) the business or contractual arrangements between the Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Plan Supplement, the Restructuring Documents, the Prepetition Revolving Loan Documents or related settlements, agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Case, (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtor or the Reorganized Debtor, and/or (vii) the Confirmation or Consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Person or Entity would have been legally entitled to assert for, or on behalf or in the name of, the Debtor, its Estate or the Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; *provided*, *however*, that the foregoing provisions of this Debtor Release shall not operate to waive or release the rights of such Debtor Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan (including, without limitation, the Exit Facility Credit Agreement) or assumed pursuant to this Plan or assumed pursuant to Final Order of the Bankruptcy Court.

The foregoing release will be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity and the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this <u>Article X.B</u> shall or shall be deemed to (i) prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person or Entity that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor and/or (ii) operate as a release or waiver of any Intercompany Claims, in each case unless otherwise expressly provided for in this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (iii) in the best interest of the Debtor and its Estate; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

C.    *Waiver of Statutory Limitations on Debtor Release*

Each of the Debtor Releasing Parties in each of the releases contained above expressly acknowledges that although ordinarily a general release may not extend to claims which the Debtor Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims.  Without limiting the generality of the foregoing, each Debtor Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the released party.  Except as otherwise provided in this Plan, the releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

D.    **Discharge of Claims and Equity Interests**

**To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan (including, without limitation, <u>Article V.E</u> and <u>Article V.F</u> of this Plan) or the Confirmation Order, effective as of the Effective Date, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Equity Interests and Causes of Action of any kind or nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims, Equity Interests or Causes of Action.**

**Except as otherwise expressly provided by this Plan (including, without limitation, <u>Article V.E</u> and <u>Article V.F</u> of this Plan) or the Confirmation Order, upon the Effective Date, the Debtor and its Estate shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Such discharge shall void any judgment obtained against the Debtor or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.**

**Except as otherwise expressly provided by this Plan (including, without limitation, <u>Article V.E</u> and <u>Article V.F</u> of this Plan) or the Confirmation Order, upon the Effective Date: (i) the rights afforded herein and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (ii) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely without further notice or action; and (iii) all Persons and Entities shall be precluded from asserting against the Debtor, the Estate, the Reorganized Debtor, each of their respective successors**

US-DOCS\135656265

and assigns, and each of their respective assets and properties, any such Claims or Equity Interests, whether based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or otherwise.

E.    *Exculpation*

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims, Causes of Action, or Released and Settled Claims for any act taken or omitted to be taken on or after the Petition Date and on or before the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of this Plan, the Disclosure Statement, the Restructuring Documents, or any contract, instrument, release or other settlement, agreement or document created or entered into in connection with this Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the approval of the Disclosure Statement or Confirmation or Consummation of this Plan; *provided*, *however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; *provided*, *further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity.  Notwithstanding the foregoing, nothing in this <u>Article X.E</u> shall or shall be deemed to prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person or Entity that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, in each case unless otherwise expressly provided for in this Plan.

F.    *Preservation of Causes of Action*

1.    <u>Maintenance of Causes of Action</u>

Except as otherwise provided in this <u>Article X</u> (including, without limitation, and for the avoidance of doubt, the Debtor Release contained in <u>Article X.B</u>, and Exculpation contained in <u>Article X.E</u> hereof) or elsewhere in this Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtor shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Litigation Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding

US-DOCS\135656265

Filed in the Chapter 11 Case. The Reorganized Debtor, as the successor-in-interest to the Debtor and the Estate, may, and shall have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of such Litigation Claims without notice to or approval from the Bankruptcy Court.

2. Preservation of All Causes of Action Not Expressly Settled or Released

Except as expressly set forth in this Plan, the Debtor expressly reserves all Causes of Action and Litigation Claims for later adjudication by the Debtor or the Reorganized Debtor (including, without limitation, Causes of Action and Litigation Claims not specifically identified or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action or Litigation Claims upon or after the Confirmation or Consummation of this Plan based on the Disclosure Statement, this Plan, or the Confirmation Order, except in each case where such Causes of Action or Litigation Claims have been expressly waived, relinquished, released, compromised or settled in this Plan (including, without limitation, and for the avoidance of doubt, the Debtor Release contained in Article X.B and Exculpation contained in Article X.E hereof) or any other Final Order (including, without limitation, the Confirmation Order). In addition, the Debtor and the Reorganized Debtor expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

No Person or Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action or Litigation Claim against them as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action or Litigation Claims against them. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action and Litigation Claims against any Person or Entity, except as otherwise expressly provided in this Plan or the Confirmation Order (including, without limitation, and for the avoidance of doubt, the Debtor Release contained in Article X.B and the Exculpation contained in Article X.E hereof).

G. *Injunction*

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING**

IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

H.     ***Binding Nature Of Plan***

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THIS PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTOR, THE REORGANIZED DEBTOR, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THIS PLAN, EACH PERSON AND ENTITY ACQUIRING PROPERTY UNDER THIS PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTOR AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THIS PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN, AFFIRMATIVELY VOTED TO REJECT THIS PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THIS PLAN.

I.     *Released and Settled Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, this Plan incorporates an integrated compromise, settlement, and release of the Released and Settled Claims, to achieve a beneficial and efficient resolution of this Chapter 11 Case for all parties in interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Released and Settled Claims and the Bankruptcy Court's determination that such compromises and settlements are in the best interests of the Debtor, its Estate, the Reorganized Debtor, creditors, and all other parties in interest, and are fair, equitable, and within the range of reasonableness. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of this Plan.

J.    *Protection Against Discriminatory Treatment*

To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons and Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against the Reorganized Debtor, or another Person or Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Case.

K.    *Integral Part of Plan*

Each of the provisions set forth in this Plan with respect to the settlement, release, discharge, exculpation, injunction, indemnification and insurance of, for or with respect to Claims and/or Causes of Action are an integral part of this Plan and essential to its implementation. Accordingly, each Person or Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Case and all Persons and Entities with respect to all matters related to the Chapter 11 Case, the Debtor, and this Plan as legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any such Claim or Equity Interest;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.    resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to this Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected (as applicable);

4.   resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5.   ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

6.   decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, *provided, however* that the Reorganized Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.   enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

8.   resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Person's or Entity's obligations incurred in connection with this Plan;

9.   hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10. issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of this Plan;

11. enforce the terms and conditions of this Plan, the Confirmation Order, and the Restructuring Documents;

12. resolve any cases, controversies, suits or disputes with respect to the Debtor Release, the Exculpation, the Indemnification and other provisions contained in Article X hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

13. hear and determine all Litigation Claims;

14. enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

15. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with this Plan; and

16. enter an order concluding or closing the Chapter 11 Case.

Notwithstanding the foregoing, (i) any dispute arising under or in connection with the Exit Facility shall be dealt with in accordance with the provisions of the applicable document and (ii) if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in this Article of this Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.    *Substantial Consummation*

"Substantial Consummation" of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

B.    *Payment of Statutory Fees; Post-Effective Date Fees and Expenses*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtor in full in cash on the Effective Date.  On and after the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable in full in cash, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee.  The Debtor shall remain obligated to pay quarterly fees to the Office of the United States Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  Notwithstanding anything else in this Plan to the contrary, the United States Trustee is not required to file any proof of claim or other request for payment of quarterly fees.  Interest, if any, on quarterly fees shall be paid pursuant to 31 U.S.C. § 3717.  Notwithstanding anything else in this Plan to the contrary, nothing in this Plan will release or discharge liability for quarterly fees.

The Reorganized Debtor shall pay the liabilities and charges that it incurs on or after the Effective Date for Professionals' fees, disbursements, expenses, or related support services (including reasonable fees, costs and expenses incurred by Professionals relating to the preparation of interim and final fee applications and obtaining Bankruptcy Court approval thereof) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court, including, without limitation, the reasonable fees, expenses, and disbursements of the Distribution Agents, and the fees, costs and expenses incurred by Professionals in connection with the implementation, enforcement and Consummation of this Plan and the Restructuring Documents.

C.    *Conflicts*

In the event that a provision of the Restructuring Documents or the Disclosure Statement (including any and all exhibits and attachments thereto) conflicts with a provision of this Plan or the Confirmation Order, the provision of this Plan and the Confirmation Order (as applicable) shall govern and control to the extent of such conflict.  In the event that a provision of this Plan conflicts with a provision of the Confirmation Order, the provision of the Confirmation Order shall govern and control to the extent of such conflict.

US-DOCS\135656265

D.    *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order in a manner acceptable to the Parent in accordance with section 1127(a) of the Bankruptcy Code; and (b) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify this Plan in a manner acceptable to the Parent in accordance with section 1127(b) of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

E.    *Revocation or Withdrawal of Plan*

The Debtor reserves the right to revoke or withdraw this Plan prior to the Effective Date and/or to File subsequent chapter 11 plans. If the Debtor revokes or withdraws this Plan, or if Confirmation or Consummation of this Plan does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including, without limitation, the Global Settlement), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Person or Entity; (b) prejudice in any manner the rights of the Debtor or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person or Entity.

F.    *Successors and Assigns*

This Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, all present and former Holders of Claims and Equity Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

G.    *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Person or Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Equity Interests or other Person or Entity; or (2) any Holder of a Claim or an Equity Interest or other Person or Entity prior to the Effective Date.

US-DOCS\135656265

H.     *Further Assurances*

The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions hereunder and all other Persons and Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

I.     *Severability*

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

US-DOCS\135656265

J.      *Service of Documents*

Any notice, direction or other communication given regarding the matters contemplated by this Plan (each, a "**Notice**") must be in writing, sent by personal delivery, electronic mail, courier or facsimile and addressed as follows:

AIG Financial Products Corp.
50 Danbury Road
Wilton, CT 06897
Attn:  Paul Stubbs
Telephone: 203.529.9494
Fax: 203.529.9994
Email: paul.stubbs@aig.com

*with a copy to*:

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Attn:  George A. Davis, Keith A. Simon, David A. Hammerman,
Annemarie V. Reilly and Madeleine C. Parish
Telephone:  212.906.1200
Fax:   212.751.4864
Emails: george.davis@lw.com, keith.simon@lw.com,
david.hammerman@lw.com, annemarie.reilly@lw.com and
madeleine.parish@lw.com

and

Young Conaway Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Attn: Michael R. Nestor, Kara Hammond Coyle, Shane M. Reil, and
Catherine C. Lyons
Telephone: 302.571.6600
Facsimile: 302.571.1253
Emails: mnestor@ycst.com, kcoyle@ycst.com, sreil@ycst.com, and
clyons@ycst.com

A Notice is deemed to be given and received (a) if sent by personal delivery or courier, on the date of delivery if it is a Business Day and the delivery was made prior to 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (b) if sent by facsimile, on the Business Day following the date of confirmation of transmission by the originating facsimile, or (c) if sent by electronic mail, when the sender receives an email from the recipient acknowledging

receipt, *provided, that,* an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this Section. Any party may change its address for service from time to time by providing a Notice in accordance with the foregoing. Any element of a party's address that is not specifically changed in a Notice will be assumed not to be changed. Sending a copy of a Notice to a party's legal counsel as contemplated above is for information purposes only and does not constitute delivery of the Notice to that party. The failure to send a copy of a Notice to legal counsel does not invalidate delivery of that Notice to a party.

K.      *Exemption from Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code*

Pursuant and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with this Plan or the Restructuring Documents shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States or by any other Governmental Unit, and the Confirmation Order shall direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment.

L.      *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that a Restructuring Document or an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

M.      *Tax Reporting and Compliance*

The Reorganized Debtor is hereby authorized, on behalf of the Debtor, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

N.      *Schedules*

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated herein and are a part of this Plan as if set forth in full herein.

O.      *No Strict Construction*

This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtor, the Parent, and their respective professionals. Each of the foregoing was represented by counsel of its choice who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, the Exhibits and the Plan Schedules, and the agreements and documents ancillary or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract

construction known as "contra proferentem" or other rule of strict construction shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, the Exhibits or the Plan Schedules, or the documents ancillary and related thereto.

P.      *Entire Agreement*

Except as otherwise provided herein or therein, this Plan and the Restructuring Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan and the Restructuring Documents.

Q.      *Closing of Chapter 11 Case*

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

R.      *2002 Notice Parties*

After the Effective Date, the Debtor and the Reorganized Debtor, as applicable, are authorized to limit the list of Persons and Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Persons and Entities who have Filed a renewed request after the Confirmation Hearing to receive documents pursuant to Bankruptcy Rule 2002; *provided*, *however*, that post-Effective Date notices and pleadings shall be served on all parties whose rights are affected by such notices or pleadings, even if such parties do not submit a renewed request for notice.

Dated: December 14, 2022

Respectfully submitted,

AIG FINANCIAL PRODUCTS CORP.

By:     _/s/ William C. Kosturos_

Title:     Chief Restructuring Officer

US-DOCS\135656265

**<u>Exhibit B</u>**

**Financial Projections**

# AIG Financial Products Corp.

## *Overview to Financial Projections*

As a condition to Confirmation, the Bankruptcy Code requires, among other things, the Bankruptcy Court to find that entry of a Confirmation Order is not likely to be followed by either a liquidation or the need to further reorganize the Debtor or any successor to the Debtor. In accordance with this condition and in order to assist each holder of a Claim in determining whether to vote to accept or reject the Debtor's Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"), the Debtor's management team ("Management"), with the assistance of its restructuring advisor, developed financial projections (the "Financial Projections") to support the feasibility of the Plan, which were prepared as of December 14 2022.

The Financial Projections were prepared in good faith by Management, with the assistance of its restructuring advisor, and are based on a number of assumptions made by Management, within the bounds of their knowledge of the Debtor's business and operations, with respect to the future performance of the Debtor's operations. In addition, the Financial Projections contain statements which constitute "forward-looking statements" within the meaning of the Securities Act and the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995. Forward-looking statements in these projections include the intent, belief, or current expectations of the Debtor and members of its Management with respect to the timing of, completion of, and scope of the current restructuring, the Plan, the Debtor's strategic business plan, and the Debtor's future liquidity, as well as the assumptions upon which such statements are based. Although Management has prepared the Financial Projections in good faith and believes the assumptions to be reasonable, it is important to note that the Debtor can provide no assurance that such assumptions will be realized. Because future events and circumstances may well differ from those assumed and unanticipated events or circumstances may occur, the Debtor expects that the actual and projected results will differ and the actual results may be materially greater or less than those contained in the Financial Projections and from those contemplated by such forward-looking statements. No representations can be made as to the accuracy of the Financial Projections or the Debtor's ability to achieve the projected results. Therefore, the Financial Projections may not be relied upon as a guarantee or as any other form of assurance as to the actual results that will occur. The inclusion of the Financial Projections herein should not be regarded as an indication that the Debtor considered or consider the Financial Projections to reliably predict future performance. Accordingly, in deciding whether to vote to accept or reject the Plan, creditors should review the Financial Projections in conjunction with a review of the risk factors set forth in the Disclosure Statement and the assumptions and risks described herein, including all relevant qualifications and footnotes.

**AS ILLUSTRATED BY THE FINANCIAL PROJECTIONS, THE DEBTOR BELIEVES IT WILL HAVE SUFFICIENT LIQUIDITY TO PAY ITS OBLIGATIONS AND TO OPERATE ITS BUSINESS. THE DEBTOR BELIEVES THAT CONFIRMATION AND CONSUMMATION ARE NOT LIKELY TO BE FOLLOWED BY THE LIQUIDATION OR FURTHER REORGANIZATION OF THE COMPANY. ACCORDINGLY, THE COMPANY BELIEVES THAT THE PLAN SATISFIES THE FEASIBILITY REQUIREMENT OF SECTION 1129(a)(11) OF THE BANKRUPTCY CODE.**

The Financial Projections were not prepared with a view toward compliance with published rules of the Securities and Exchange Commission or the American Institute of Certified Public Accountants regarding projections. The Debtor's independent auditor has not examined, compiled, or performed any procedures with respect to the prospective financial information contained in this exhibit and, accordingly, it does not express an opinion or any other form of assurance on such information or its achievability. The Debtor's independent auditor assumes no responsibility for and denies any association with the prospective financial information.

Accordingly, neither the Debtor nor the reorganized company intends to and disclaim any obligation to: (1) furnish updated Financial Projections to holders of Claims or Equity Interests prior to the Effective Date or to any other party after the Effective Date, except as required by the Plan; (2) include any such updated information in any documents that may be required to be filed with the Securities and Exchange Commission; or (3) otherwise make such updated information publicly available.

The Debtor does not intend to update or otherwise revise the Financial Projections to reflect circumstances that may occur after their preparation, or to reflect the occurrence of unanticipated events, even in the event that any or all of the underlying assumptions are shown to be in error.

Additional information relating to the principal assumptions used in preparing the Financial Projections are set forth below.

**THE FINANCIAL PROJECTIONS ARE BASED UPON A NUMBER OF SIGNIFICANT ASSUMPTIONS. ACTUAL OPERATING RESULTS AND VALUES MAY VARY SIGNIFICANTLY FROM THESE FINANCIAL PROJECTIONS.**

*Select Assumptions of the Financial Projections*

The Financial Projections are based on, but not limited to factors such as industry performance, general business, economic, competitive, regulatory, market, and financial conditions, as well as the assumptions detailed below. Many of these factors and assumptions are beyond the control of the Debtor and do not take into account the uncertainty and disruptions of business that may accompany an in-court restructuring. Accordingly, the assumptions should be reviewed in conjunction with a review of the risk factors set forth in the Disclosure Statement.

- **Methodology**: The Financial Projections were developed by Management with the assistance of its restructuring advisor and are presented solely for purposes set forth herein and in the Disclosure Statement to which the Financial Projections are attached as <u>Exhibit B</u>. No representation or warranty, express or implied, is provided in relation to the fairness, accuracy, correctness, completeness, or reliability of the information, opinions, or conclusions expressed herein.

- **Plan and Effective Date**: The Financial Projections assume that the Plan will be consummated in accordance with its terms and that all transactions contemplated by the Plan will be consummated by [April 30, 2023] (the "<u>Effective Date</u>"). Any significant delay in the Effective Date may have a significant negative effect on the operations and financial performance of the Debtor including the incurrence of higher reorganization expenses. Although the Financial Projections represent the Debtor's best estimates and good faith judgment of the results of future operations, financial position, and cash flows of the Debtor, they are only estimates and actual results may vary considerably from such Financial Projections. Consequently, the inclusion of the Financial Projections herein should not be regarded as a representation by the Debtor, the Debtor's advisors or any other person that the projected results of operations, financial position, and cash flows of the Debtor will be achieved.

- **Projection Period:** The Debtor prepared the Financial Projections based on, among other things, the anticipated future financial condition and results of operations of the Debtor using the business plan. Management developed and refined the business plan and prepared consolidated Financial Projections of the Debtor for the fiscal years ending December 2023 (fiscal year ("<u>FY</u>") 2023) through December 2026 (FY 2026) (the "<u>Projection Period</u>"). The end of the Projection Period coincides with the maturity of the Debtor's primary remaining asset, which will continue to provide economic value to The Debtor through maturity.

- **Operating Impacts:** The Financial Projections incorporate multiple operating considerations including, but not limited to:
  - Current and projected market conditions in which the Debtor operates;
  - No material changes to existing operations;
  - No new business undertakings, rather a continued winddown of existing operations;
  - The Financial Projections do not consider any potential impact of the application of "fresh start" accounting under Accounting Standards Codification 852, "Reorganizations" ("ASC 852") that may potentially apply upon the Effective Date. If the Debtor determines the need to fully implement fresh start accounting, differences from the depiction presented are anticipated and those differences may be material. If required to apply the provisions of

ASC 852, upon emergence, the Debtor will be required to determine the amount by which its reorganization value as of the Effective Date exceeds, or is less than, the fair value at the time, which may be based on, any event, such valuation, as well as the determination of the fair value of the Debtor's assets and liabilities, will be made as of the Effective Date. The differences between the amounts of any or all of the foregoing items as assumed in the Financial Projections and the actual amounts thereof as of the Effective Date may be material.

THE INDEPENDENT AUDITOR FOR THE DEBTOR HAS NOT EXAMINED, COMPILED OR OTHERWISE PERFORMED ANY PROCEDURES ON THE FOLLOWING PROSPECTIVE FINANCIAL INFORMATION, AND CONSEQUENTLY, DOES NOT EXPRESS AN OPINION OR ANY OTHER FORM OF ASSURANCE WITH RESPECT TO THE PROSPECTIVE FINANCIAL INFORMATION.

**AIG FINANCIAL PRODUCTS CORP.**
**PROJECTED STATEMENT OF OPERATIONS**
**(UNAUDITED)**

| STATEMENT OF OPERATIONS | Notes | 2023 [1] | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|
| *(USD MMs)* | | | | | |
| Interest Income | [1] | $ 0 | $ 0 | $ 0 | $ 0 |
| **Net Revenue** | | **$ 0** | **$ 0** | **$ 0** | **$ 0** |
| MTM Adjustments | [2] | - | - | - | - |
| **Gross Margin** | | **$ 0** | **$ 0** | **$ 0** | **$ 0** |
| SG&A | [3] | (5) | (7) | (7) | (7) |
| **Net Income Before Tax** | | **$ (5)** | **$ (7)** | **$ (7)** | **$ (7)** |
| Income Taxes | [4] | - | - | - | - |
| **Net Income** | | **$ (5)** | **$ (7)** | **$ (7)** | **$ (7)** |

1. Reflects the 8 month period following the confirmation date of 4/30/23

| BALANCE SHEET | Notes | Dec-23 | | Dec-24 | | Dec-25 | | Dec-26 |
|---|---|---|---|---|---|---|---|---|
| *(USD MMs)* | | | | | | | | |
| **Assets:** | | | | | | | | |
| Cash | [5] | $ | 18 | $ | 38 | $ | 56 | $ | 69 |
| Bonds | | | 0 | | 0 | | 0 | | 0 |
| Derivatives (Net of Cash Collateral) | | | - | | - | | - | | - |
| Excess Cash Collateral Posted | | | - | | - | | - | | - |
| Structured Leasing Transactions | | | - | | - | | - | | - |
| Intercompany Receivables | [6] | | 0 | | 0 | | 0 | | 0 |
| Intracompany Receivables | [7] | | 42 | | 42 | | 42 | | 42 |
| Other Assets | [8] | | 216 | | 189 | | 163 | | 143 |
| Investment in Subsidiaries | [9] | | 173 | | 173 | | 173 | | 173 |
| **Total Assets** | | **$** | **449** | **$** | **442** | **$** | **435** | **$** | **428** |
| **Liabilities:** | | | | | | | | |
| Guaranteed Investment Contracts | | | - | | - | | - | | - |
| Derivatives (Net of Cash Collateral) | | | - | | - | | - | | - |
| Excess Cash Collateral Held | | | - | | - | | - | | - |
| Structured Leasing Transactions | | | - | | - | | - | | - |
| Intercompany Payables | [10] | | 6 | | 6 | | 6 | | 6 |
| Intracompany Payables | [11] | | 264 | | 264 | | 264 | | 264 |
| AIG Inc. Revolver | | | - | | - | | - | | - |
| Other Issued Debt | | | - | | - | | - | | - |
| Other Liabilities | [12] | | 28 | | 28 | | 28 | | 28 |
| **Total Liabilities** | | **$** | **297** | **$** | **297** | **$** | **297** | **$** | **297** |
| Total Equity | [13] | | 152 | | 145 | | 138 | | 131 |
| **Total Liabilities + Equity** | | **$** | **449** | **$** | **442** | **$** | **435** | **$** | **428** |

# AIG FINANCIAL PRODUCTS CORP.
## PROJECTED CASH FLOWS
### (UNAUDITED)

| CASH FLOW | Notes | 2023 [1] | | 2024 | | 2025 | | 2026 |
|---|---|---|---|---|---|---|---|---|
| *(USD MMs)* | | | | | | | | |
| Inflows from Structured Leasing Transaction | [14] | $ | 14 | $ | 27 | $ | 26 | $ | 20 |
| Shared Service Payments | [15] | | (4) | | (6) | | (6) | | (6) |
| Direct Expenses | [16] | | (1) | | (1) | | (1) | | (1) |
| **Total Cash Flow** | | $ | 9 | $ | 20 | $ | 18 | $ | 13 |
| Beginning Cash Balance | | | 9 | | 18 | | 38 | | 56 |
| Net Cash Flow | | | 9 | | 20 | | 18 | | 13 |
| **Ending Cash Balance** | | $ | 18 | $ | 38 | $ | 56 | $ | 69 |

1. Reflects the 8 month period following the confirmation date of 4/30/23

<h1 style="text-align:center">NOTES TO FINANCIAL PROJECTIONS</h1>

**Note [1] – Interest Income**

Represents interest income on the cash balances held by the Debtor in its operating accounts.

**Note [2] – MTM Adjustments**

Represents mark-to-market adjustments to the Debtor's financial assets and liabilities. After Effective Date, no such MTM adjustments are assumed in the Financial Projections.

**Note [3] – SG&A**

Represents shared services and other payments on account of employee compensation, office rent, research tools, data management, and other miscellaneous operating expenses.

**Note [4] – Income Taxes**

The Financial Projections do not anticipate any taxable income after the Effective Date.

**Note [5] – Cash**

Represents the Debtor's projected cash balances.

**Note [6] – Intercompany Receivables**

Includes receivables from affiliate entities due to historical transactions. The Financial Projections do not anticipate any changes to this balance.

**Note [7] – Intracompany Receivables**

Receivables from the Debtor's subsidiaries in lieu of ordinary course transfers of cash and bonds prior to petition date. The Financial Projections do not anticipate any changes to this balance.

**Note [8] – Other Assets**

Other Assets consist of:

1) A receivable for a credit linked note of approximately $66 million at emergence. The analysis assumes the asset is held until maturity, but it is a financial instrument that could be sold at any time.

2) A long-dated receivable with a mark-to-market value of approximately $7 million at emergence resulting from a terminated derivative. The analysis assumes the asset is held until receipt, which is beyond the forecast period.

3) Deferred Tax Asset accruals of approximately $154 million at emergence. The Financial Projections do not anticipate any changes to this balance.

4) Other prepaid expenses of approximately $3 million. The Financial Projections do not anticipate any changes to this balance.

**Note [9] – Investment in Subsidiaries**

The Financial Projections do not forecast changes in the equity value of the Debtor's subsidiaries.

**Note [10] – Intercompany Payables**

The Financial Projections do not forecast changes in the Intercompany Payables, which represents balances with the Debtor's parent and other affiliates.

**Note [11] – Intracompany Payables**

The Financial Projections do not forecast changes in the Intracompany Payables, which represents balances with the Debtor's subsidiaries.

**Note [12] – Other Liabilities**

The Financial Projections do not forecast changes in Other Liabilities, which represents accrued expenses and certain balance sheet reserves.

**Note [13] – Equity**

Represents the Debtor's net book value of shareholders' equity.

**Note [14] – Inflows from Structured Leasing Transaction**

Represents the return of principal and interest from a credit linked note expiring in 2026.

**Note [15] – Shared Service Payments**

Includes payments for shared services provided by the Debtor's affiliates, including employee compensation, rent, and other miscellaneous operating expenses.

**Note [16] – Direct Expenses**

Represents payments made directly by the Debtor to third party professionals and vendors for miscellaneous operating expenses.

**<u>Exhibit C</u>**

**Liquidation Analysis**

<u>**LIQUIDATION ANALYSIS**</u>

AIG Financial Products Corp.

## I. INTRODUCTION

Section 1129(a)(7) of the Bankruptcy Code, often called the "best interests test," requires that a bankruptcy court find, as a condition of confirmation, that the Chapter 11 plan provides, with respect to each class, that each holder of an Allowed Claim either (i) has accepted the plan of reorganization, or (ii) will receive or retain under the plan property of a value, as of the plan's assumed effective date, that is not less than the value such non-accepting holders would receive or retain if the debtor were to be liquidated under chapter 7 of the Bankruptcy Code.

Accordingly, to demonstrate that the proposed Plan satisfies the "best interest" of creditors test, the Debtor, with assistance from its restructuring advisor, has prepared the following hypothetical liquidation analysis ("Liquidation Analysis"), in connection with the Plan and the Disclosure Statement.[1] The Liquidation Analysis indicates the estimated recoveries that may be obtained by Classes of Claims or Interests assuming a hypothetical liquidation under chapter 7 of the Bankruptcy Code upon disposition of the Debtor's assets as an alternative to the Plan. Accordingly, the values discussed in the Liquidation Analysis may be different from amounts referred to in the Plan. The Liquidation Analysis is based on certain assumptions in the Disclosure Statement and in the accompanying notes to the Liquidation Analysis.

## II. STATEMENT OF LIMITATIONS

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtor's assets in a chapter 7 case is an uncertain process involving the extensive use of significant estimates and assumptions that, although considered reasonable by the Debtor based upon its business judgment and input from certain of its advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtor, its management and advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtor's assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants.

NEITHER THE DEBTOR NOR ITS ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY. NOTHING CONTAINED IN THIS LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM BY THE DEBTOR. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THIS LIQUIDATION ANALYSIS. THE DEBTOR RESERVES ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE ANALYSIS SET FORTH HEREIN.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in *the Disclosure Statement for the Plan of Reorganization for AIG Financial Products Corp. Under Chapter 11 of the Bankruptcy Code.*

## III. OVERVIEW AND GENERAL ASSUMPTIONS

Hypothetical Chapter 7 recoveries set forth in this Liquidation Analysis were determined through multiple steps, as set forth below. The basis of the Liquidation Analysis is the Debtor's projected cash balance and assets as of December 14, 2023 (the "<u>Conversion Date</u>") and the net costs to execute the administration of the wind down of the Estate. The Liquidation Analysis assumes that the Debtor would commence a Chapter 7 liquidation on or about the Conversion Date under the supervision of a court appointed Chapter 7 trustee. The Liquidation Analysis reflects the wind down and liquidation of substantially all the Debtor's remaining assets and the distribution of available proceeds to holders of Allowed Claims during the period after the Conversion Date.

<u>Summary Notes to Liquidation Analysis</u>

1. **Dependence on Assumptions**. The Liquidation Analysis depends on a number of estimates and assumptions. Although developed and considered reasonable by the management and the restructuring advisor of the Debtor, the assumptions are inherently subject to significant economic, business, regulatory and competitive uncertainties, and contingencies beyond the control of the Debtor or its management. The Liquidation Analysis is also based on the Debtor's best judgment of how numerous decisions in the liquidation process would be resolved. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtor was, in fact, to undergo such a liquidation and actual results could vary materially and adversely from those contained herein.

2. **Dependence on a Forecast Balance Sheet**. This Liquidation Analysis contains numerous estimates that are subject to further legal and accounting analysis.

3. **No DIP facility assumed.** The Liquidation Analysis assumes no DIP facility. The chapter 7 case is assumed to be funded by cash on hand and liquidation of assets.

4. **Chapter 7 liquidation process**. The liquidation of the Debtor's assets is assumed to be completed over a 9-month period inside of a Chapter 7 case managed by the Chapter 7 trustee. The Chapter 7 trustee would manage the bankrupt estate to maximize recovery to creditors as expeditiously as possible and would appoint professionals to assist in the liquidation and wind down of the Estate. During this 9-month timeframe, the Debtor would complete a sale process to monetize its remaining financial assets and receivables, as well as administrative activities such as claims reconciliation, distributions to holders of various claims, and other activities necessary to wind down the estate.

5. **Claims Estimates**. In preparing this Liquidation Analysis, the Debtor has preliminarily estimated an amount of Allowed Claims for each Class based upon a review of the Debtor's estimated balance sheet. Administrative claims were estimated based on the company's financial projections as of the Conversion Date. Additional Claims were estimated to include certain Chapter 7 administrative obligations incurred after the Conversion Date. The estimate of all allowed claims in this Liquidation Analysis is based on the estimated book value of those claims, where applicable. No order or finding has been entered or made by the Bankruptcy Court estimating or otherwise fixing the amount of Claims at the estimated amounts of Allowed Claims set forth in this Liquidation Analysis. The estimate of the amount of Allowed Claims set forth in this Liquidation Analysis should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of Allowed Claims under the Plan. The actual amount of Allowed Claims could be materially different from the amount of Claims estimated in this Liquidation Analysis.

# IV. CONCLUSION

> **THE DEBTOR HAS DETERMINED, AS SUMMARIZED IN THE FOLLOWING ANALYSIS, THAT CONFIRMATION OF THE PLAN WILL PROVIDE CREDITORS WITH A RECOVERY THAT IS NOT LESS THAN WHAT THEY WOULD OTHERWISE RECEIVE IN CONNECTION WITH A LIQUIDATION OF THE DEBTOR UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.**

# V. LIQUIDATION ANALYSIS RESULTS

Presented below is a summary of asset recoveries and distributions to various classes of claims resulting from the hypothetical Liquidation Analysis.[2]

*$ in millions*

| | Notes | Pro Forma | Estimated Liquidation Recovery % | Estimated Liquidation Recovery $ |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash | [1] | $   9 | 100% | $   9 |
| Bonds | | 0 | 0% | - |
| Derivatives (Net of Cash Collateral) | | - | 0% | - |
| Excess Cash Collateral Posted | | - | 0% | - |
| Structured Leasing Transactions | | - | 0% | - |
| Intercompany Receivables | [2] | 0 | 0% | - |
| Intracompany Receivables | [3] | 42 | 100% | 42 |
| Other Assets | [4] | 75 | 32% | 24 |
| Investment in Subsidiaries | [5] | 173 | 0% | - |
| **Total Assets and Estimated Gross Proceeds** | | **$   300** | **25%** | **$   75** |

| **Chapter 7 Wind-down Costs** | | Estimated Expenses |
|---|---|---|
| Professional Fees | [6] | (9) |
| Operating Expenses | [7] | (6) |
| Trustee Fees | [8] | (2) |
| **Total Chapter 7 Wind-down Costs** | | **$   (17)** |

| **Net Proceeds Available** | | **$   58** |
|---|---|---|

**Claims & Recoveries**

| | Notes | BS Liability | Claim | Estimated Recovery % | Estimated Recovery $ |
|---|---|---|---|---|---|
| **General Unsecured Claims** | [9] | | | | |
| Revolving Loan Claims | | 37,438 | 37,438 | 0.15% | 58 |
| Intercompany Claims | | 269 | 269 | 0.15% | 0.4 |
| Other General Unsecured Claims | | 28 | 8 | 0.15% | 0.01 |
| **Total General Unsecured Claims** | | **$   37,735** | **$  37,715** | **0.15%** | **$   58** |

| **Remaining Distributable Value Before DCP Claims** | | | | | **$   -** |
|---|---|---|---|---|---|
| Subordinated DCP Litigation Claims | | [TBD] | [TBD] | 0.00% | - |
| **Total Claims / Recovery** | | **$   37,735** | **$  37,715** | **0.15%** | **$   58** |

---

[2] The estimated claim amounts reflected above may differ from the actual Allowed Claims, as this analysis is based on preliminary estimates for such claims.

## VI. NOTES FOR PROCEEDS AVAILABLE FOR DISTRIBUTION

### Note [1] – Cash and Cash Equivalents

The Liquidation Analysis assumes 100% recovery for all cash and cash equivalents.

### Note [2] – Intercompany Receivables

Intercompany Receivables primarily consist of accounting accruals from affiliate entities for historical transactions, assumed to have zero balance and assumed to have no recovery.

### Note [3] – Intracompany Receivables

Intracompany Receivables represent amounts owed to the Debtor by its subsidiaries. In the ordinary course of business, the Debtor transferred cash or bonds to certain of its subsidiaries to meet their financial obligations including the posting of collateral. Any such transfers were offset by a receivable from those subsidiaries. The obligations of FP and its subsidiaries are guaranteed by AIG Inc. thus the Liquidation Analysis assumes FP receives a full recovery from its receivables.

### Note [4] –Other Assets

Other Assets consists of:

1) A credit-linked note receivable from Gibraltar of approximately $66 million at emergence. For purposes of the Liquidation Analysis, three factors were taken into consideration that impact the estimated recovery from this asset: 1) discounting all future cash flows using presumed market rates for such products, 2) default risk on the underlying lease, and 3) fire sale discount to account for a quick Chapter 7 liquidation.

2) A long-dated receivable of with a mark-to-market value of approximately $7 million at emergence resulting from a terminated derivative. The value of the future receivable has been discounted to present value on the balance sheet and the analysis assumes a recovery of 50% of the reported value due to the difficulty of selling this asset in a liquidation.

3) Other prepaid expenses of approximately $2 million assumed to have no recovery in a Chapter 7 liquidation.

### Note [5] – Investment in Subsidiaries

The equity value of the Debtor's subsidiaries consists primarily of intracompany receivables from the Debtor and its other subsidiaries. Recoveries from these intracompany receivables by these subsidiaries of the debtor are expected to be minimal, and any such minimal recovery by the Debtor's subsidiaries is expected to pay off potential subrogation claims by the Debtor's parent AIG Inc. in lieu of AIG Inc.'s guarantee payments to the Debtor on account of its Intracompany Receivables from its subsidiaries (see Note 3 above). While AIG, Inc. has generally guaranteed all of the obligations of the Debtor, including those to its subsidiaries, we have not included the value of the payment of the AIG FP subsidiaries' intracompany claims as it would create an artificially inflated liquidation value of AIG FP as a result of the return of the guaranteed amount(s) paid by AIG Inc. to AIG Inc. As a result, no recovery value is projected from the Debtor's investment in subsidiaries in the event of a Chapter 7 liquidation.

## II. WIND-DOWN COSTS

### Note [6] – Professional Fees

Chapter 7 professional fees include costs for legal and financial advisors, and other professionals to assist in the sale of assets, distributions, and winddown of the estate.

**Note [7] – Operating Expenses**

Consist of shared service reimbursements and direct payments related to employee compensation, office rent, research tools, data management, and other miscellaneous operating expenses.

**Note [8] – Trustee Fees**

Consistent with statutory guidelines, the Chapter 7 Trustee fee is estimated at 3% of total net recovery (net of fees and expenses) to interested parties.

## III. UNSECURED CLAIMS

**Note [9] – General Unsecured Claims**

General Unsecured Claims include the AIG Inc. Revolver, intercompany claims and other unsecured claims. The Liquidation Analysis estimates [0.15]% recovery to holders of General Unsecured Claims.

- **Revolving Loan Claims** represent book value as of the Conversion Date.

- **Intercompany Claims** are asserted pari-passu with other general unsecured claims. Intercompany Claims represent estimated intercompany balances between affiliates and subsidiaries as of the Conversion Date.

- **Other General Unsecured Claims** represent the estimated amount of various accrued operating expenses and other payables as of the Conversion Date.

IT SHOULD BE NOTED THAT NO ORDER OR FINDING HAS BEEN ENTERED OR MADE BY THE BANKRUPTCY COURT ESTIMATING OR OTHERWISE FIXING THE AMOUNT OF CLAIMS AT THE ESTIMATED AMOUNTS OF ALLOWED CLAIMS SET FORTH IN THE LIQUIDATION ANALYSIS. THE ESTIMATE OF THE AMOUNT OF ALLOWED CLAIMS SET FORTH IN THIS LIQUIDATION ANALYSIS SHOULD NOT BE RELIED UPON FOR ANY OTHER PURPOSE, INCLUDING, WITHOUT LIMITATION, ANY DETERMINATION OF THE VALUE OF ANY DISTRIBUTION TO BE MADE ON ACCOUNT OF ALLOWED CLAIMS UNDER THE PLAN. THE ACTUAL AMOUNT OF ALLOWED CLAIMS COULD BE MATERIALLY DIFFERENT FROM THE AMOUNT OF CLAIMS ESTIMATED IN THIS LIQUIDATION ANALYSIS.